UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARRI FURK,

                    Plaintiff,

        -against-                                             No. 15-cv-6594 (NSR)

ORANGE-ULSTER BOCES and                                      OPINION & ORDER
UNITED PUBLIC SERVICE EMPLOYEES'
UNION ("UPSEU"),

                    Defendants.

NELSON S. ROMÁN, United States District Judge

        Plaintiff Marri Furk ("Plaintiff") brings this action against Defendants Orange-Ulster

BOCES ("BOCES") and United Public Service Employees' Union ("UPSEU"), collectively "the

Defendants," for the alleged discriminatory reduction of hours and *de facto* termination of

Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621 *et seq.*, for the nonpayment of wages and overtime, in violation of the Fair Labor Standards

Act of 1938 ("FLSA"), 29 U.S.C. § 207, and for relief under parallel state laws, including

equitable relief under New York Article 78.  Presently before the Court are Defendant BOCES'

partial motion to dismiss Plaintiff's claims for retaliation, time barred claims, and Article 78

claims, ECF No. 18, and Defendant UPSEU's related motion to dismiss Plaintiff's Article 78

claims, ECF No. 25.  For the following reasons, Defendant BOCES' motion is DENIED in part

and GRANTED in part.  Defendant UPSEU's motion is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 2 2016

## BACKGROUND

The following facts are derived from the Amended Complaint[1] unless otherwise noted, and are accepted as true for purposes of this motion.

Plaintiff is a woman who is approximately 55 years old.  She began working for BOCES on April 2, 2001, as a Civil Service Employee of BOCES, with the title of Computer Network Specialist (CNS).  At the time she brought this action, she was the only "older female" working in the "male dominated CNS title."  Plaintiff was also a union member of UPSEU.

On July 1, 2015, BOCES reduced Plaintiff from full-time to a part-time status.  As a full-time employee, Plaintiff worked 40 hours per week, and received health insurance and other benefits.  Upon her demotion, she began working 16 hours per week, and no longer received insurance or benefits.  BOCES told Plaintiff that her hours had to be reduced due to "economic reasons."

On August 4, 2015, a co-worker who held a full-time CNS position passed away.  In the wake of this death, Plaintiff inquired as to the possibility of returning to full time status.  BOCES told Plaintiff they would "look into" restoring her to the full time position.  (*See* Plaintiff's Opposition, at 5, ECF No. 24 [hereinafter "Pl.'s Opp."].)  Plaintiff filed her EEOC Charge and Complaint in this matter on August 20, 2015.  At some point, BOCES began to divide the additional work among other employees.  Plaintiff contends that she was not promoted into the new position as retaliation for her filings.

Although not directly relevant to the current motions before the Court, Plaintiff also contends that her demotion in July 2015 was due to gender and age discrimination, and for complaining to BOCES that she had not been compensated for overtime and work performed

---

[1] Plaintiff filed her initial Complaint on August 20, 2015, and filed an Amended Complaint on December 5, 2015. (ECF Nos. 1 and 16.)

during her scheduled lunch from 2012 to 2015.[2]

In connection with a prior reduction in Plaintiff's hours, which occurred in July 2012, Plaintiff also contends that there were male employees that ranked lower than Plaintiff, and should have been subject to demotion before her, in accordance with New York Civil Service Law. However, according to Plaintiff, BOCES and UPSEU worked together to protect the jobs of two younger males by manipulating the methodology used to determine seniority and rankings on a "CNS layoff roster," which ultimately placed Plaintiff at the lowest ranking position on the roster and subjected her to demotion before the two males.[3]

Additionally, Plaintiff also contends that her hours were reduced from 40 to 32 hours per week on another occasion, from July 1, 2014 through September 1, 2014, for complaining that she was not given the opportunity to compete for the position of Senior Network Specialist.[4]

Plaintiff also contends that BOCES was not promoting her job classification to school districts that utilize services from BOCES, in an attempt to eliminate her position. In fact, in October 2015, Plaintiff met with BOCES superintendents to discuss applying to another position, and reinstatement to a full-time position, and was told that school districts were not interested in her work, despite the fact that one of the districts in question had expressed satisfaction with Plaintiff's job performance as recently as the month prior to this meeting.

Furthermore, Plaintiff alleges that BOCES has engaged in a pattern of discrimination,

---

[2] Plaintiff alleges that she complained of these compensation issues to Defendants in October 2014, and again to BOCES in April 2015. Plaintiff was subsequently reprimanded for working unauthorized overtime.

[3] BOCES later promoted these two individuals so that they would not be subject to layoff or work hour reduction. Plaintiff alleges that, if not for Defendants' acts, she would not have become the lowest ranking technician, and would not have suffered any reduction in work hours or loss of benefits.

[4] This position became available in March 2014, while Plaintiff was on medical leave. Plaintiff alleges that BOCES intentionally failed to interview Plaintiff for this position, and did not publicize the vacancy. Instead, BOCES interviewed and promoted a younger male colleague to this position. This colleague was selected over a much more experienced, older technician who also interviewed for the position.

which includes limiting her to menial jobs, and refusing her requests to work on current technology.  This is so despite that fact that younger males with less background and experience are given such opportunities.  Similarly, when layoffs threatened a higher ranking technician, and the lowest ranking CNS level male technician, Plaintiff was demoted to a "help desk technician" role.  The male holding the lowest ranking CNS position, who was originally hired as a help desk technician, was subsequently given Plaintiff's position.

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678.  A complaint does not require "detailed factual allegations" to survive a motion to dismiss, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A court should accept non conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  Furthermore, a court should dismiss a claim when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.'"  *Powell v. Rios*, No. 14-CIV-6283-NSR, 2016 WL 828134, at *1 (S.D.N.Y. Feb. 25, 2016) (citing *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *DiFolco v.*

*MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

## DISCUSSION

### I.   Plaintiff's Title VII and ADEA Retaliation Claims Against BOCES

a.   Standard of Review for Retaliation Claims On a Motion to Dismiss

Under Title VII and the ADEA, employers are prohibited from retaliating against employees for opposing discriminatory employment practices.  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465-466 (2d Cir. 1997) (internal citations omitted).  Title VII and the ADEA are violated when a "retaliatory motive play[s] a part in the adverse employment action." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006); *see also Wanamaker*, 108 F.3d at 465 (retaliation claims brought under ADEA approached in the same way as claims under Title VII).

"To survive a motion to dismiss, a complaint alleging workplace … retaliation need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 9–10 (2d Cir. 2013).  "[I]n the initial phase of [retaliation] litigation … the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements."  *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir.2015) (internal citation omitted).  Accordingly, the "standard is one of flexible plausibility," requiring only that the pleader allege "sufficient factual allegations to nudge [her] claims across the line from conceivable to plausible."  *Gonzalez*, 520 F. App'x at 9–10.  Taking this reduced standard into consideration, federal courts look to the elements of a *prima facie* case for guidance as to what the plaintiff must allege to establish a presumption of retaliation sufficient to survive the initial

stage of a Title VII litigation.  *See Littlejohn*, 795 F.3d at 315–16 (2d Cir. 2015) (considering *prima facie* elements on review of motion to dismiss retaliation claim).

To establish a *prima facie* case of retaliation, a plaintiff must allege facts that show "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Moore v. Verizon,* No. 13-CV-6467 (RJS), 2016 WL 825001, at *4 (S.D.N.Y. Feb. 5, 2016) (internal quotation marks and citations omitted); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir.2015).  As to the fourth element of a *prima facie* retaliation case, a causal connection, Plaintiff must allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.  "At [this] stage, a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her protected activity and the materially adverse action that she allegedly suffered in retaliation for engaging in that activity." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016), *appeal dismissed* (July 08, 2016).  However, "if a plaintiff relies on temporal proximity alone, the temporal relationship between the protected activity and the adverse action must be very close." *Byrne v. Telesector Res. Grp., Inc.*, No. 04-CIV-0076, 2007 WL 962929, at *11 (W.D.N.Y. Mar. 29, 2007), *aff'd,* 339 F. App'x 13 (2d Cir. 2009).

b.   Application

Plaintiff's Title VII and ADEA retaliation claims are premised upon the following: on May 26, 2015, Plaintiff was notified that she would be demoted to a part-time position due to fiscal constraints; on July 1, 2015, Plaintiff assumed her new part-time position; on August 4, 2015 a co-worker who had held a full-time position in the same role died; on August 20, 2015,

6

Plaintiff filed her EEOC Charge and this lawsuit, and in response, BOCES retaliated against her by denying her the vacant position.  (Pl.'s Opp. at 5; Plaintiff's Amended Complaint Ex. 3 at 3, ECF No. 16 [hereinafter "Am. Compl."].)  Plaintiff alleges that she was not promoted as reprisal for her filings, despite being told that she had been demoted solely due to budgetary constraints, that these concerns were alleviated by the death of her co-worker, that she made "repeated requests" to be restored to a full-time position in the wake of her co-worker's death, and that BOCES indicated it would look into placing her into the open role.  (Am. Compl. ¶ ¶ 103, 104, 113; Pl.'s Opp. at 5.)  Instead, Plaintiff alleges that BOCES divided the work previously assigned to this full-time role among other technicians.  (Am. Compl. ¶ 106.)  In support, Plaintiff relies on a temporal connection between her filings and a subsequent "inaction," or lack of promotion, arguing that "the temporal connection was almost immediate."  (Pl.'s Opp. at 3, 5.)

BOCES does not contest that Plaintiff engaged in protected activity when she made her filings, that BOCES was aware of them, or that she experienced an adverse employment action in the form of a lack of promotion.  The parties only dispute whether Plaintiff has plausibly alleged the causal connection between Plaintiff's protected act and BOCES' failure to promote Plaintiff.

Defendant highlights that, before Plaintiff made her filings, the vacant full-time position had been available for approximately two weeks, and BOCES had not promoted Plaintiff during this time.  Given this fact, Defendant contends that Plaintiff's retaliation claim is premised upon the fact that her employment status remained unchanged after she filed her EEOC Charge and Complaint, and that the adverse employment action (the lack of promotion) predated the protected activity (Plaintiff's filings).  (*See e.g.*, Reply Memorandum in Support of Motion to Dismiss on Behalf of BOCES, at 3-4, ECF No. 22 [hereinafter "BOCES Reply Mem."].)  In

support of this argument BOCES posits, and is generally correct that, "to constitute retaliation, [t]he alleged protected activity must *predate* evidence of the alleged retaliatory animus." (*See* BOCES Reply Mem. at 4;) *see also Petyan v. N.Y. City Law Dep't*, No. 14-CIV-1434-GBD-JLC, 2015 WL 1855961, at *13 (S.D.N.Y. Apr. 23, 2015), *report and recommendation adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (internal quotation marks and citations omitted). Applied to this context, it follows that, "in the context of a failure-to-hire claim, a decision not to hire—if initially made before the relevant protected activity occurred—will not give rise to an inference of retaliation when the prospective employer persists in refusing to hire the prospective employee after the protected activity." *See Wang*, at 327–28.

Given the death of the employee, the brief period of time between the date of the employee's death and Plaintiff's filings, and BOCES' indication that it might have restored Plaintiff to a full-time position, it is *conceivable* that BOCES had not yet decided whether to give Plaintiff a full-time role when she made her filings, and that BOCES ultimately decided not to restore Plaintiff to the vacant full-time position as reprisal for her actions.  Moreover, it is *plausible* that Plaintiff's filings motivated BOCES' decision not to promote her, considering the difference between BOCES' initial indications that the demotion was driven solely by budgetary concerns and that it would look into restoring her role, and their final decision, following her filings, not to promote her.  Accordingly, accepting Plaintiff's allegations as true, and drawing all inferences in her favor, the Court finds that Plaintiff has met her burden of providing "plausible support to a minimal inference of discriminatory motivation."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).  Although a close question, at this stage, Plaintiff allegations are sufficient to support such a minimal inference.[5]

---

[5] Plaintiff's hours had been reduced on two occasions previously, from July 1, 2012 through June 30, 2013, and again from July 1, 2014 through September 1, 2014.  (Pl.'s Compl., Ex. 3 at 2.)  Although this may be due to

For these reasons, the Court will refrain from dismissing Plaintiff's federal retaliation claims at this time, and deny BOCES' motion to dismiss Plaintiff's Title VII and ADEA retaliation claims.

II.    Title VII and ADEA Claims Preceding Plaintiff's EEOC Charge By More Than 300 Days

As Defendant indicates, Plaintiff may not seek recovery under Title VII and ADEA for claims of discrimination or retaliation based solely upon discrete acts occurring more than 300 days before the date of her EEOC Charge. *See Hiralall v. Sentosacare, LLC*, No. 13-CIV-4437-GBD, 2016 WL 1126530, at *7 (S.D.N.Y. Mar. 18, 2016), *appeal dismissed* (May 12, 2016) ("Discrete discriminatory or retaliatory acts that occur prior to the three-hundred day period are not actionable under Title VII even if they relate to other timely filed charges…However, time-barred incidents may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue") (internal quotation marks and citations omitted).  Plaintiff concedes, and does not attempt to rebut this point.  (*see* Pl.'s Opp at 1-2) ("Plaintiff concedes that she cannot seek damages under <u>federal</u> law for discriminatory acts … preceding 300 days before Plaintiff filed her EEOC charge of discrimination… [but] Plaintiff <u>does</u> seek damages under the N.Y.S. Human Rights Law for discrimination occurring within 3 years of her filing this action.")[6]  Thus, these claims are deemed time-barred.  The Court dismisses these claims with prejudice.

---

unlawful discrimination, as Plaintiff contends, it undermines the plausibility of Plaintiff's claim that she would have received the vacant position absent reprisal for her EEOC Charge and Complaint.  Yet, to proceed at this stage, Plaintiff need only allege facts that "nudge [her] claims across the line from conceivable to plausible," *Gonzalez*, 520 F. App'x at 9–10, and although these points may weaken Plaintiff's claim, they do not undermine its overall plausibility enough to warrant dismissal.

[6] Although Plaintiff concedes that she cannot bring these claims, she makes very brief reference to the Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e–5(e)(3)(A), so as to presumably imply that the Act could preserve her claims of discrimination and/or retaliation based upon acts occurring more than 300 days prior to the filing of her EEOC Charge.  To the extent Plaintiff intended to insinuate that point, absent any effort by Plaintiff to expound upon this further, this Court finds the Act inapplicable to the circumstances of this suit.  *See Davis v. Bombardier Transp.*

III.     Plaintiff's Claim for Relief Under CPLR Article 78

District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.  *See DeJesus v. City of New York*, No. 10 Civ. 9400, 2012 WL 569176, at *4 (S.D.N.Y. 2012) ("Article 78 is not in and of itself a cause of action, but a procedure best suited for state courts. Recognizing state courts' exclusive jurisdiction over Article 78, courts within this circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.") (footnote omitted); *Cartagena v. City of New York,* 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The cases that have addressed the issue have consistently declined to exercise supplemental jurisdiction over Article 78 claims"); *Camacho v. Brandon*, 56 F.Supp.2d 370, 380 (S.D.N.Y.), *on reconsideration in part*, 69 F. Supp. 2d 546 (S.D.N.Y. 1999) ("[W]e see no reason to exercise [the court's] discretion [over Plaintiff's Article 78 claim] by adjudicating a purely state procedural remedy");  *Lucchese v. Carboni,* 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998) ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there. Because of the differences between an Article 78 claim and a civil claim typically brought in this Court, I find that the Article 78 proceeding[s] should be brought in the appropriate forum—state court.") (internal citations omitted); *Herrmann v. Brooklyn Law School*, 432 F.Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special proceeding designed to

_____

*Holdings (USA) Inc.*, 794 F.3d 266, 269 (2d Cir. 2015) ("the Ledbetter Act does not encompass a claim of a discriminatory demotion decision that results in lower wages where, as here, the plaintiff has not offered any proof that the compensation itself was set in a discriminatory manner. A plaintiff must plead and prove the elements of a pay-discrimination claim to benefit from the Ledbetter Act's accrual provisions."); *Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, 866 F. Supp. 2d 147, 167–68 (E.D.N.Y. 2011) ("[T]he Ledbetter Act … applies only to discriminatory employment decisions specifically related to pay, and not to other employment decisions, even where such decisions directly affect pay. That is, the Ledbetter Act applies where the plaintiff claims that she was paid less than other employees for similar work.") (internal citations omitted); *see also Noel v. The Boeing Co.,* 622 F.3d 266, 274 (3d Cir. 2010) (the Ledbetter Act covers claims where employees "were paid differently for performing equal work" and "not other discrete employment decisions").

accommodate … the state court system is best suited to that system."); *see also Beckwith v. Erie County Water Auth.*, 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006) ("This court has no original or supplemental subject matter jurisdiction over [plaintiff's] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court"); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (Article 78 claim "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims."). This has been the case even where there are surviving federal claims. *See Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims. Even where a plaintiff has one or more federal claims still alive … the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements."); *see also Camacho*, 56 F. Supp. 2d at 373-74, 380 (dismissing Article 78 claim despite pending federal claim); *Lucchese*, 22 F. Supp. 2d at 257-258 (same).

To the extent federal courts have the authority to exercise supplemental jurisdiction over an Article 78 claim, they have discretion to "decline to [do so]… [if there are] compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The prevailing position among New York federal district courts is that "[t]he very nature of an Article 78 proceeding presents such compelling reasons." *Flanagan v. N.Y. City Dep't of Educ.*, No. 13-CIV-8456-LAK-JCF, 2015 WL 11142630, at *17 (S.D.N.Y. Aug. 21, 2015). This is because "[a]n Article 78 proceeding is a novel and special creation of state law, [that] differs markedly from the typical civil action brought in federal district court in a number of ways …. [as a] purely state procedural remedy." *Morningside Supermarket Corp. v. N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 346-47

(S.D.N.Y. 2006) (internal quotation marks and citations omitted).[7]  For these reasons, Plaintiff's claims under Article 78 are dismissed from this action without prejudice.[8]

## CONCLUSION

For the foregoing reasons, BOCES' motion to dismiss is GRANTED in part and DENIED in part.  Defendant UPSEU's motion to dismiss is GRANTED.  To the extent Plaintiff's Title VII and ADEA claims are premised upon discrete acts preceding Plaintiff's EEOC Charge by more than 300 days, these claims are dismissed as time-barred.  Plaintiff's claims against Defendants BOCES and UPSEU under Article 78 are dismissed from this action without prejudice.  Defendants are instructed to file Answers to the Amended Complaint within thirty days of this Order.  Parties are ordered to appear for an initial pre-trial conference on December 16, 2016 at 10 a.m. and should provide a completed Case Management Plan to the

---

[7] Occasionally, under "exceptional" circumstances, New York district courts have assumed jurisdiction over claims arising under Article 78. *See Morningside*, 432 F. Supp. 2d at 346-347 (locating only two cases in which jurisdiction exercised over Article 78 claims and noting circumstances were "exceptional"); *see also Wiesner v. Nardelli*, 06-CIV-3533-HB, 2007 WL 211083, at *6 (S.D.N.Y. Jan. 24, 2007), *aff'd*, 307 F. App'x 484 (2d Cir. 2008) (noting Plaintiff failed to present "extraordinary circumstances" warranting federal jurisdiction over Article 78 claim, and refusing to exercise jurisdiction over the same).  However, Plaintiff has not presented exceptional circumstances warranting departure from well-established precedent in this Circuit.

[8] Because this Court dismisses Plaintiff's cause of action under Article 78, the Court does not need to address whether such a claim can be brought against UPSEU as a "non-governmental actor."  (*See* Pls.' Opp at 8.)  In Plaintiff's motion papers, she requests that the Court permit her challenge against UPSEU to proceed "whether as an Article 78 proceeding, or as a request for equitable relief under common law writs of prohibition, mandamus and/or *certiorari*."  *Id*.  However, Plaintiff cannot constructively amend her complaint via her motion papers.  Furthermore, equitable relief may be awarded under Title VII and the ADEA.  *See Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006) ("equitable relief lies at the core of Title VII"); *Johnson v. Al Tech Specialty Steel Corp.*, No. 81-CIV-817, 1983 WL 30338, at *4 (N.D.N.Y. June 13, 1983), *aff'd sub nom.*, *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143 (2d Cir. 1984) ("A victim of age discrimination is, under the ADEA, entitled to "such legal or equitable relief as will effectuate the purposes of this Act ....").

Court at this time.  The Court respectfully directs the Clerk to terminate the motions at ECF No.

18 and ECF No. 25.

Dated:   November 2ⁿ, 2016                                SO ORDERED:
              White Plains, New York


                                                                      _____
                                                                      NELSON S. ROMÁN
                                                                      United States District Judge