UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARRI FURK,

                         Plaintiff,                    HON. NELSON S. ROMAN

              -against-                     Case No.: 15-CIV-06594 (NSR)(PED)

ORANGE-ULSTER BOCES,

                         Defendant.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF ORANGE-ULSTER BOCES

Yours, etc.,

DRAKE LOEB, PLLC

*Attorneys for Defendant,*
*ORANGE-ULSTER BOCES*
555 Hudson Valley Avenue
Suite 100
New Windsor, New York 12553
Tel. No.: (845) 561-0550

# TABLE OF CONTENTS

Page

Table of Cases Authorities………………………………………………………………i-iv

ARGUMENT:

I.      INTRODUCTION…..…………………………………………………………2

II.     PROCEDURAL HISTORY………..…………………………………………..2

III.    OVERVIEW OF PLEADED ALLEGATIONS IN THIRD AMENDED
        COMPLAINT……………………………………………………………………..4

IV.     APPLICABLE SUMMARY JUDGMENT STANDARD……………………..6

V.      THE PLAINTIFF'S CLAIMS FOR UNPAID WAGES UNDER THE
        FLSA SHOULD BE DISMISSED (FIRST CAUSE OF ACTION)……………7

VI.     THE PLAINTIFF'S CLAIMS FOR UNPAID WAGES UNDER THE
        NEW YORK STATE LABOR LAW SHOULD BE DISMISSED
        (SECOND CAUSE OF ACTION)……………………………………………..9

VII.    THE PLAINTIFF'S CLAIMS BASED ON DISCRIMINATION,
        UNDER TITLE VII AND THE ADEA SHOULD BE DISMISSED
        (THIRD CAUSE OF ACTION)........................................................................10

VIII.   THE PLAINTIFF'S CLAIMS BASED ON DISCRIMINATION,
        UNDER THE NEW YORK HUMAN RIGHTS LAW SHOULD
        BE DISMISSED (FOURTH CAUSE OF ACTION)…………………………..18

IX.     THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE FLSA
        SHOULD BE DISMISSED (FIFTH CAUSE OF ACTION)…………………..18

X.      THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE NEW
        YORK LABOR LAW SHOULD BE DISMISSED (SIXTH CAUSE
        OF ACTION)……………………………………………………………..22

XI.     THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE FMLA
        SHOULD BE DISMISSED (SEVENTH CAUSE OF ACTION)……………..22

CONCLUSION………………………………………………………………………25

DRAKE LOEB<sup>PLLC</sup>
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

## TABLE OF CASES & AUTHORITIES

Cases:

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001)

Abdul-Hakeem v. Parkinson, 523 F. App'x 19, 21 (2d Cir. 2013)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, at 249-250, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)

Aneja v. Triborough Bridge & Tunnel Auth., 35 F. App'x 19 (2d Cir. 2002)

Bailey v. Vill. of Pittsford, 981 F. Supp. 2d 178, 182 (W.D.N.Y. 2013)

Bernstein v. The MONY Grp., Inc., 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002)

Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005)

Brodsky v. City Univ. of New York, 56 F.3d 8, 9 (2d Cir.1995)

Brown v. Coach Stores, Inc., 163 F.3d 706 (2d Cir. 1998)

Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012)

Brown v. Soc'y for Seaman's Children, 194 F. Supp. 2d 182 (E.D.N.Y. 2002)

Butler v. New York Health & Racquet Club, 768 F. Supp. 2d 516, 529 (S.D.N.Y. 2011)

Caddick v. Pers. Co. I LLC, , 2018 WL 3222520, at *9 (S.D.N.Y. 2018)

Castro v. City of New York, 24 F.Supp.3d 250, 264, 2014 WL 2582830, at *10 (E.D.N.Y. June 5, 2014)

Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 40 (2d Cir. 1994)

Dallow v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994)

Davis v. Food Lion, 792 F.2d 1274, 1277 (4th Cir. 1986)

Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014)

Dunn v. Sederakis, 143 F. Supp. 3d 102 (S.D.N.Y. 2015)

Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013)

DRAKE LOEB<sup>PLLC</sup>
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

Finkelshteyn v. Staten Island Univ. Hosp., 687 F. Supp. 2d 66, 84 (E.D.N.Y. 2009)

Fleming v. MaxMara USA, 644 F.Supp.2d 247, 266 (E.D.N.Y.2009), aff'd, 371 Fed.Appx. 115, 117–18 (2d Cir.2010)

Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981)

Gordon v. Kaleida Health, 2012 WL 171577, at *5 (W.D.N.Y. 2012)

Govori v. Goat Fifty, L.L.C., 519 Fed.Appx. 732, 734 (2d Cir.2013)

Henry v. Nannys for Grannys Inc., 86 F. Supp. 3d 155, 159-60 (E.D.N.Y. 2015)

Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014)

Hill v. Rayboy–Brauestein, 467 F. Supp.2d 336, 352 (S.D.N.Y. 2006)

Johnson v. Cty. of Nassau, 480 F. Supp. 2d 581 (E.D.N.Y. 2007)

Joza v. WW JFK LLC,  2010 WL 3619551  (E.D.N.Y.  2010)

Kalola v. Int'l Bus. Machines Corp., 2017 WL 3394115, at *10 (S.D.N.Y. 2017), report and recommendation adopted, 2017 WL 3381896 (S.D.N.Y. 2017), appeal dismissed, 2018 WL 894064 (2d Cir. 2018)

Lambert v. McCann Erickson, 543 F. Supp. 2d 265 (S.D.N.Y. 2008)

Lanier v. I.B.M. Corp., 319 F. Supp. 2d 374, 385 (S.D.N.Y. 2004)

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

Meyer v. State of New York Office of Mental Health, 174 F. Supp. 3d 673, 687 (E.D.N.Y. 2016)

Meyer v. New York State Office of Mental Health, 679 F. App'x 89 (2d Cir. 2017), cert. denied, 138 S. Ct. 143, 199 L. Ed. 2d 36 (2017)

Moccio v. Cornell Univ., 889 F. Supp. 2d 539 (S.D.N.Y. 2012), aff'd, 526 F. App'x 124 (2d Cir. 2013)

Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)

Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257 (S.D.N.Y. 2007)

Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995)

iii

Perez v. Commc'ns Workers of Am. Local 1109,  2005 WL 2149204, at *8 (E.D.N.Y. Sept. 6, 2005)

Perez v. Commc'ns Workers of Am., 210 F. App'x 27 (2d Cir. 2006)

Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004

Reiseck v. Universal Comm'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir.2010)

Roman v. Cornell Univ., 53 F. Supp. 2d 223, 241 (N.D.N.Y. 1999)

Ruiz v. Cty. of Rockland, 609 F.3d 486 (2d Cir. 2010)

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508, 113 S. Ct. 2742, 2748, 125 L. Ed. 2d 407 (1993)

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003)

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)

Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008).

Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996)

Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir. 1996)

White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012), cert. denied, 571 U.S. 886


Statutes:

FRCP 56(c)
FMLA (29 U.S.C. §2610 et seq.)
Fair Labor Standards Act (29 U.S.C. §207 et seq.)
ADEA (29 U.S.C. §621 et seq.)
Title VII (42 U.S.C. §2000e et seq.)

DRAKE LOEB<sup>PLLC</sup>
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

## I.    **INTRODUCTION**

The Plaintiff Marri Furk ("Plaintiff") is a 55 year old female employee of the defendant Orange Ulster BOCES ("BOCES").  The Plaintiff generally alleges that during the course of her employment she: was not paid for her hours worked in violation of the Fair Labor Standards Act (29 U.S.C. §207 et seq.) and the New York Labor Law (N.Y. Labor Law §198); was retaliated against for complaining of unpaid wages in violation of the Fair Labor Standards Act (29 U.S.C. §215) and the New York Labor Law (N.Y. Labor Law §215); was retaliated against by reason of her taking a medical leave in 2014 in violation of the Family Medical Leave Act or "FMLA" (29 U.S.C. §2610 et seq.); and was otherwise discriminated and/or retaliated against by reason of her gender and national origin  in violation of Title VII (42 U.S.C. §2000e et seq.), and by reason of her age in violation of the ADEA (29 U.S.C. §621 et seq.).

## II.    **PROCEDURAL HISTORY**

The plaintiff filed her initial Complaint with this Court on August 20, 2015.  Dkt. 1; Exhibit "B."[1]  The plaintiff's initial Complaint named both BOCES and her Union (the United Public Service Employees Union) as defendants, and asserted five (5) causes of action.  The first cause of action asserted a claim, under the FLSA, for unpaid wages.  The second cause of action asserted a retaliation claim, under the FMLA, and alleged that she was denied a promotional opportunity, and had her hours reduced, because she took a medical leave in March of 2014.  The third cause of action asserted a claim, under Article 78 of the CPLR, alleging that her reduction in hours was arbitrary and capricious.  The fourth cause of action asserted a "prospective" gender, race, ethnicity and national discrimination claim, under Title VII, pending receipt of an

---

[1] All Exhibits referred to are annexed to the document entitled "Exhibit List Submitted on Behalf of Orange-Ulster BOCES in Support of Motion for Summary Judgment," submitted herewith.

EEOC "right to sue" notice. The fifth cause of action asserted a "prospective" age discrimination claim, under the ADEA, pending receipt of an EEOC "right to sue" notice.

In response to the defendants' pre-motion letters which addressed deficiencies in the plaintiff's initial Complaint (Dkt. Nos. 11 and 12), a pre-motion conference was conducted, and the Plaintiff was directed to file an Amended Complaint. See, November 20, 2015 Minute Entry. The Plaintiff's Amended Complaint, which named both BOCES and the UPSEU, was filed on December 5, 2015. Dkt. 16; Exhibit "D." The Plaintiff's Amended Complaint contained five (5) causes of action. The first cause of action asserted a claim, under the FLSA, for unpaid wages. The second cause of action asserted a claim, under Title VII, for gender discrimination and retaliation. The third cause of action asserted a claim, under the ADEA, for age discrimination and retaliation. The fourth cause of action asserted claims under the New York State Human Rights Law (for gender and age discrimination) and the New York State Labor Law (for unpaid wages). The fifth cause of action asserted a claim under Article 78 of the CPLR alleging that her reduction in hours was arbitrary and capricious.

The defendants moved to dismiss the plaintiff's Amended Complaint. Dkt. Nos. 18 to 27. On November 2, 2016, the Court issued its Opinon and Order on the motions to dismiss. Dkt. 28; Exhibit "E." With respect to Court's Opinion and Order, the Court ruled, in pertinent part, that all Title VII and ADEA claims sounding in discrimination or retaliation which occurred more than 300 days prior to the plaintiff's August 20, 2015 EEOC filing were time-barred, and dismissed with prejudice. Exhibit "E," at p. 9. Thus, all Title VII and ADEA claims of discrimination or retaliation, predating October 24, 2014 (i.e. the date predating the EEOC filing date by 300 days) are not actionable. Further, the Court dismissed the plaintiff's Article 78 claims. Exhibit "E," at p. 12.

Following the issuance of this Court's November 2, 2016 Opinion and Order, the
Plaintiff filed a Second Amended Complaint (Dkt. 39; Exhibit "F"), and subsequently, on July
19, 2017, filed a Third Amended Complaint (Dkt. 52; Exhibit "G").[2]  BOCES filed its Answer to
the Plaintiff's Third Amended Complaint on August 24, 2017 (Dkt. 56; Exhibit "H").

## III.    OVERVIEW OF PLEADED ALLEGATIONS IN THIRD AMENDED COMPLAINT

The Plaintiff commenced working as a Computer Network Specialist ("CNS") at BOCES
on April 2, 2001, and is a member of the United Public Service Employees Union ("UPSEU").
Exhibit "G," ¶¶ 7 – 8.

The Plaintiff alleges that while she was on a medical leave in March/April of 2014, a
promotional position became available for a Senior Network Specialist. Exhibit "G," ¶¶ 12 and
12B.  The Plaintiff claims that her supervisor, Bhargav Vyas, who is of Indian descent, did not
interview her for the SNS position, and that same was given to a younger male of Indian descent
– Apurva Engineer – on April 4, 2014. Exhibit "G," ¶¶ 12A and 12B.  The plaintiff alleges that
Mr. Engineer's promotion from CNS to SNS was not necessary, since he performs only CNS
level work.  Exhibit "G," ¶ 12D.  The plaintiff also alleges that other employees, outside of the
CNS title, perform CNS level work, and had this particular work been allocated to her as a CNS,
she would not have incurred work hour reductions.  Exhibit "G," ¶ 22A. She also alleges that Mr.
Apurva's promotion indirectly harmed her because, with the removal of Mr. Engineer from the
list of employees in the CNS position, the plaintiff's ranking on that list made her more
vulnerable to being laid off.  Exhibit "G," ¶¶ 12C and 23.

---

[2] The Plaintiff's Third Amended Complaint removed the co-defendant UPSEU as a party in this litigation.

The Plaintiff alleges that her hours were reduced from 40 to 32 per week from July 1, 2014 to September 1, 2014, and she claims that these hours were reduced at that time due to her complaints about not being asked to interview while out on medical leave earlier that year. Exhibit "G," ¶¶ 13 and 14.

On May 26, 2015, the Plaintiff alleges that during a meeting with supervisory personnel at BOCES and her Union representative she was advised that her hours would be reduced from a full-time level ("1.0" or 40 hours per week) to a part-time level (".4" or 16 hours per week), with an effective date of July 1, 2015. Exhibit "G," ¶ 9. The plaintiff asserts that the reduction in hours occurred because of discrimination on account of the plaintiff's age, gender and national origin, and/or for retaliatory reasons – on account of her complaints about the non-payment of wages and/or overtime. Exhibit "G," ¶ 10 and 21.

Later, on August 4, 2015, while the plaintiff remained on part-time hours, another CNS employee passed away. Exhibit "G," ¶ 11. The Plaintiff asked supervisory personnel at BOCES to return to full-time status due to the passing of her co-employee, but alleges that she was not returned to full-time status at that time. Exhibit "G," ¶ 11.

With respect to the plaintiff's wage claims she asserts that she was not paid for straight time hours worked, as well as overtime hours worked, from August of 2009 to December 31, 2015. Exhibit "G," ¶ 16. The plaintiff alleges that she complained about not being paid for wages due her to Pamela Rourke (n/k/a Pamela Fisk) on October 2, 2014, and to Mr. Vyas "on several occasions." Exhibit "G," ¶ 19.

The plaintiff's Third Amended Complaint contains seven (7) causes of action. The plaintiff's first cause of action seeks damages for unpaid straight time and overtime wages under the FLSA. Exhibit "G," ¶¶ 24 to 30. The plaintiff's second cause of action seeks damages for

unpaid wages under the New York Labor Law. Exhibit "G," ¶¶ 31 to 36. The Plaintiff's third cause of action alleges that her hours were reduced, and she was denied promotional opportunities, on account of her age, gender and national origin, pursuant to Title VII and the ADEA. Exhibit "G," ¶¶ 37 to 41. The Plaintiff's fourth cause of action alleges that her hours were reduced, and she was denied promotional opportunities, due to her age, gender and national origin under the Human Rights Law. Exhibit "G," ¶¶ 42 to 45. The Plaintiff's fifth cause of action, brought pursuant to the FLSA, alleges that her hours were reduced, and she was discriminated against, because she complained about not being paid for her hours worked and overtime. Exhibit "G," ¶¶ 46 to 49. The Plaintiff's sixth cause of action, brought pursuant to the New York Labor Law, alleges that her hours were reduced, and she was discriminated against, because she complained about not being paid for all hours worked and overtime. Exhibit "G," ¶¶ 50 to 49 (sic). The Plaintiff's seventh cause of action alleges that the plaintiff was retaliated against, in violation of the FMLA, by reason of not being interviewed for and promoted to an available SNS position while out on medical leave in 2014. Exhibit "G," ¶¶ 50 to 55.

## IV.    **APPLICABLE SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Dallow v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994). Once the moving party establishes its prima facie showing of entitlement to summary judgment, the burden shifts to the non-movant to come forward with specific facts showing that there are genuine issues of fact for trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986).  In this regard, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient for purposes of defeating a motion for summary judgment, as there must be evidence on which the jury could reasonably find for the non-movant. Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir. 1996).  Further, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, at 249-250, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  Finally, and as stated by the Second Circuit, "(t)hough caution must be exercised in granting summary judgment where intent is genuinely in issue... summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact."  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 40 (2d Cir. 1994).

## V.    **THE PLAINTIFF'S CLAIMS FOR UNPAID WAGES UNDER THE FLSA SHOULD BE DISMISSED (FIRST CAUSE OF ACTION)**

As set forth in the accompanying submissions on this motion, at all relevant times it was the policy of BOCES to pay any employee for his or her additional straight-time or overtime hours worked upon an employee's written request indicating the particular hours worked.  Vyas Affidavit, ¶ 3; Heppes Affidavit, ¶ 5; Exhibits "K," "L," "M" and "N."  In this case, there is no dispute that the plaintiff was both fully aware of the procedure for obtaining pay for her additional straight-time and overtime hours worked.  Specifically, on May 9, 2013, pursuant to BOCES's promulgated procedure, the plaintiff submitted her request for additional straight-time hours worked, and she was duly approved and paid for same.  Exhibit "O"; Vyas Affidavit, ¶ 7; Heppes Affidavit, ¶ 10.  Likewise, on February 28, 2014, pursuant to BOCES's promulgated procedure, the plaintiff submitted her request for overtime hours worked, and she again was duly approved and  paid for same.  Exhibit "P"; Vyas Affidavit, ¶ 8;  Heppes Affidavit, ¶ 11.

Based on the non-disputed facts that: (a) BOCES provided to the plaintiff a mechanism and procedure for obtaining payment of any additional straight-time or overtime hours worked, (b) the plaintiff knew of and availed herself of these procedures; (c) the plaintiff was paid for additional straight-time hours worked, and overtime hours worked, on every occasion when she requested the same; and (d) the plaintiff's entire wage claim is based on claims for wages which *she never sought or asked for* prior to the commencement of this lawsuit, the plaintiff's wage claims should be dismissed.

The case of <u>Joza v. WW JFK LLC</u>, 2010 WL 3619551 (E.D.N.Y. 2010) is squarely on point. In <u>Joza,</u> as in the case at bar, it was established that the employer promulgated a mechanism and procedure for its employees to follow in order to receive payment for overtime hours worked - to wit, the employee's completion of an overtime slip for submission to her employer. Further, and just as in the case at bar, it was established that the employee knew of and followed the employer's procedure for obtaining payment for the extra hours worked, and was so paid when this mechanism and procedure was followed. Under these circumstances - which are identical to those presented here - the Court held that an employer could not be found liable under the FLSA for not paying for alleged worked hours which the plaintiff, by her own admission, never reported. In so holding, the Court explained that where the plaintiff's alleged lack of pay was "directly attributable to plaintiff's determination not to comply with the established overtime reporting and compensation procedure," her employer could not be found liable for its employee's failure abide by these procedures. The Court in <u>Joza</u> followed and approved the leading decision on this particular issue issued by the Ninth Circuit in <u>Forrester v. Roth's I. G. A. Foodliner, Inc.</u>, 646 F.2d 413, 414 (9th Cir. 1981), and noted that "most authorities in the Second Circuit consider…. Forrester to be seminal." In <u>Forrester</u>, the Ninth

Circuit held that:

> "An employer must have an opportunity to comply with the
> provisions of the FLSA. This is not to say that an employer may
> escape responsibility by negligently maintaining records required
> by the FLSA, or by deliberately turning its back on a situation.
> However, where the acts of an employee prevent an employer from
> acquiring knowledge, here of alleged uncompensated overtime
> hours, the employer cannot be said to have suffered or permitted
> the employee to work in violation of (the FLSA)."

Based on the holding in Joza, following the rule in Forrester, the plaintiff's wage claims

should be summarily dismissed.[3] Pursuant to Joza, an employee, like the plaintiff, who wholly

fails to abide by an employer's promulgated procedure for obtaining payment of overtime or

extra hours worked, and who does not otherwise show that the employer was placed on notice of

specific hours worked for which payment was to be made, cannot establish a violation of the

statutory wage laws where, as here, the undisputed sole reason for the alleged lack of pay is

attributable to the plaintiff's admitted failure to even ask for or seek payment for hours allegedly

worked. Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012)("… where the

employee fails to notify the employer through the established overtime record-keeping system,

the failure to pay overtime is not a FLSA violation"). As stated in White v. Baptist Mem'l

Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012), cert. denied, 571 U.S. 886:

> " Under the FLSA, if an employer establishes a reasonable process
> for an employee to report uncompensated work time the employer
> is not liable for non-payment if the employee fails to follow the
> established process. See Hertz, 566 F.3d at 781–82; Newton, 47

---

[3] Parenthetically, to the extent that the plaintiff seeks to recover for unpaid "straight-time" hours, this claim is barred under the FLSA since the plaintiff does not allege, and cannot prove, that her hourly wage was less than the minimum federal hourly wage. Exhibit "G" at ¶¶ 18 and 25. See, Gordon v. Kaleida Health, 2012 WL 171577, at *5 (W.D.N.Y. 2012)("…the FLSA provides for recovery of straight-time wages only to the extent the amount of compensation received by an employee results in an hourly rate that is less than the applicable federal minimum wage").

> F.3d at 749–50; Forrester, 646 F.2d at 414–15. When the employee
> fails to follow reasonable time reporting procedures she prevents
> the employer from knowing its obligation to compensate the
> employee and thwarts the employer's ability to comply with the
> FLSA. See Hertz, 566 F.3d at 781–82; Newton, 47 F.3d at 749–50;
> Forrester, 646 F.2d at 414–15. See also Raczkowski, 8 F.3d 29."

## VI.    THE PLAINTIFF'S CLAIMS FOR UNPAID WAGES UNDER THE NEW YORK STATE LABOR LAW SHOULD BE DISMISSED (SECOND CAUSE OF ACTION)

The plaintiff's claims for unpaid wages under the New York Labor Law ("NYLL")

should be dismissed for the same reasons that the plaintiff's claims lack merit under the FLSA.

That is, the Courts in this Circuit have recognized that whereas the measure of the recovery

under the NYLL and the FLSA differ, the facts necessary to establish liability for the alleged

failure to pay required wages do not.  See, Joza v. WW JFK LLC, 2010 WL 3619551, at *6

(E.D.N.Y. Sept. 10, 2010)("[w]hile the measure of recovery in cases dually successful under

these wage and hour laws will per force vary, the facts necessary to establish that a covered

employee performed overtime work for which the employee has not received statutory overtime

compensation will not"); see also, Reiseck v. Universal Comm'ns of Miami, Inc., 591 F.3d 101,

105 (2d Cir.2010) (noting that NYLL mandates overtime pay in same manner as FLSA).  Here,

inasmuch as the plaintiff's claims for unpaid wages are non-viable based upon:  (a) the plaintiff's

failure to ever request of BOCES, prior to the commencement of this lawsuit, the payment of the

specified extra hours she "now" claims she allegedly worked, and (b) her inability to show that

BOCES should have known of the specified extra-hours worked and the non-payment of same,

her NYLL claims, like her FLSA claims, should be dismissed.  See, Joza, supra.; Newton v. City

of Henderson, 47 F.3d 746, 748 (5th Cir. 1995) (affirming judgment to City-employer where

employee failed to comply with overtime approval requirements); Davis v. Food Lion, 792 F.2d

1274, 1277 (4th Cir. 1986) (affirming trial court finding that employer did not have actual or

constructive knowledge of overtime work where employee "deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated overtime hours").

## VII. THE PLAINTIFF'S CLAIMS BASED ON DISCRIMINATION UNDER TITLE VII AND THE ADEA SHOULD BE DISMISSED (THIRD CAUSE OF ACTION)

The plaintiff's third cause of action asserts a claim for discrimination under Title VII as well as the ADEA. The plaintiff's cause of action in this regard is wholly without merit, and should be dismissed.

As a preliminary matter, in the Court's November 2, 2015 Opinion and Order, the Court held that any discrimination claims under Title VII or the ADEA arising from acts that occurred more than 300 days prior to the plaintiff's EEOC filing were time-barred. Dkt. 28, at p. 9. Here, as the plaintiff filed her EEOC Charge on August 20, 2015 (see Timeline attached to Amended Complaint, annexed hereto as Exhibit "D") , any acts of discrimination or retaliation which occurred more than 300 days before her filing (i.e. October 24, 2014) are time-barred. With this in mind, the plaintiff's allegations that BOCES failed to promote her to an SNS position in the first part of 2014, and reduced her hours from July 1, 2014 to September 1, 2014, are time-barred to the extent they arise under Title VII or the ADEA. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996)(only events that occurred during 300–day period prior to EEOC filing are actionable under Title VII); Brodsky v. City Univ. of New York, 56 F.3d 8, 9 (2d Cir.1995)(a charge of age discrimination must be filed with the EEOC within 300 days of the alleged discriminatory conduct).[4]

---

[4] In point of fact, the plaintiff does not allege that the July to September 2014 reduction in hours was due to her age, gender or national origin. Instead, she expressly pleads that this reduction occurred in retaliation for taking a medical leave earlier that year. Exhibit "G," ¶¶ 13 and 14. The non-viability of the plaintiff's FMLA retaliation claim is addressed in Point XI, below.

The only timely claim of discrimination asserted by the plaintiff (purportedly motivated by animus towards the plaintiff's gender, national origin and/or age) relates to the plaintiff's claim of having her hours reduced, from full-time (40 hours per week) to part-time (16 hours per week) effective on July 1, 2015.  However, there is not a scintilla of evidence demonstrating that this reduction in hours occurred for discriminatory reasons based on the plaintiff's asserted protected class.

Claims asserted under Title VII and the ADEA are analyzed under the McDonnell Douglas burden shifting formula.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001)(ADEA claims are analyzed under the same burden shifting framework as claims brought pursuant to Title VII).  At the first stage, in order to establish an actionable claim for discrimination, a plaintiff must plead and prove:  (1) that the employee is a member of a protected class, (2) that the employee was qualified for her position, (3) that she suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

At the second stage, if the plaintiff successfully pleads and proves a prima facie case of discrimination, the burden of production shifts to the employer to set forth a legitimate, non-discriminatory reason for the adverse action taken.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Once the employer sets forth a legitimate, non-discriminatory reason for the adverse action complained of by the plaintiff, the presumption of discrimination is dropped from the case, and, at the third stage, the burden shifts back to the plaintiff to establish that the employer's reasons were a pretext for intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S.

502, 508, 113 S. Ct. 2742, 2748, 125 L. Ed. 2d 407 (1993). Critically, to show pretext, the plaintiff must show *both* that the employer's reasons for the adverse employment action were false, and that discriminatory motives constituted the real reasons for the challenged actions. Id. at 515. ("....a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

Here, the plaintiff cannot show a prima facie case of discrimination on account of her age, gender or national origin as the plaintiff cannot show any facts raising an inference that the July 1, 2015 reduction in her hours occurred due to her protected class. In order to raise an inference of discrimination, a plaintiff must ordinarily show that she was treated less favorably than other similarly situated individuals outside of her protected classification. See, Ruiz v. Cty. of Rockland, 609 F.3d 486 (2d Cir. 2010)(a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group is a recognized method of raising an inference of discrimination). In order to make this showing, a plaintiff must show that she was similarly situated to other more favorably treated individuals *in all material respects*. Abdul-Hakeem v. Parkinson, 523 F. App'x 19, 21 (2d Cir. 2013).

In this case, the plaintiff's own pleadings utterly fail to allege that others outside of her protected class, who were similarly situated to her in all material respects, were treated more favorably than she was in connection with the July, 2015 reduction in hours, nor could she. As indicated in the moving submissions by BOCES, the plaintiff's hours were reduced in 2015 due to the documented decreased need for the CNS position, and the fact that the plaintiff was first on the CNS layoff list promulgated by the Orange County Civil Service Department. Exhibits "BB," "CC" and "X"; Heppes Affidavit, ¶¶ 28 and 29; Vyas Affidavit, ¶¶ 26 and 27. Here, the plaintiff has not identified any other BOCES employee or employees, outside of her protected

class, who were ranked first on a layoff list, but did not have his or her hours reduced when required for budgetary reasons. Indeed, and as indicated in the moving submissions of BOCES, numerous other employees by BOCES were laid off *outright* for budgeting reasons (unlike the plaintiff, who simply had her hours reduced), and none of these employees engaged in "protected activities." Heppes Affidavit, ¶ 32. Inasmuch as the plaintiff has not identified other similarly situated employees who were treated less favorably than she was with respect to the reduction in hours complained of, no inference of discrimination arises. See, Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014)(general and conclusory allegations of disparate treatment of similarly situated individuals outside of plaintiff's protected class insufficient to establish inference of discrimination). Moreover, because Deborah Heppes, who was responsible for deciding upon the alleged adverse employment actions at issue in this lawsuit, was and is in the same exact protected class as the plaintiff herself (i.e. a female of non-Indian descent who is over 40), no inference of discrimination arises. See, Meyer v. State of New York Office of Mental Health, 174 F. Supp. 3d 673, 687 (E.D.N.Y. 2016), aff'd sub nom. Meyer v. New York State Office of Mental Health, 679 F. App'x 89 (2d Cir. 2017), cert. denied, 138 S. Ct. 143, 199 L. Ed. 2d 36 (2017)("[i]t is a well-settled, albeit not dispositive, principle that where the alleged discriminator is a member of the same protected class as Plaintiff, an inference against discrimination exists and claims of discrimination become less plausible").

Even assuming, arguendo, that the plaintiff could raise an inference that the 2015 reduction in hours was based on her protected class (and she cannot), the plaintiff plainly cannot show that the challenged reduction in hours represented a pretext for intentional discrimination. Here, and as set forth in the instant moving submissions, the decision to reduce the hours of the plaintiff in 2015 was based on the non-disputed facts that: (a) there was a projected decreased

need for the CNS position, and (b) the plaintiff was on the top of the County-promulgated CNS layoff list. Exhibits "BB," "CC" and "X"; Heppes Affidavit, ¶¶ 28 and 29; Vyas Affidavit, ¶¶ 26 and 27. The courts have repeatedly held that the need to reduce an employee's hours, or to terminate a job position outright for budgetary reasons, is a clearly legitimate and non-discriminatory basis for this employment action. See, Bailey v. Vill. of Pittsford, 981 F. Supp. 2d 178, 182 (W.D.N.Y. 2013)("[i]t is well settled that an employer is free to adjust its workforce for budgetary reasons, and [a] reduction in force is a legitimate nondiscriminatory reason for termination.")(internal quotations and citations omitted); Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014)(same).

With this in mind, the claim that the plaintiff had her hours reduced because of her gender, national origin or age - as opposed to the non-disputed and documented facts that there was a decreased need for this position *and* that she was the first employee to be subjected to a reduction in hours pursuant to the CNS layoff list - is entirely baseless. To the extent the plaintiff might claim that her reduction in hours was unwise or should have been handled differently, this argument, as a matter of law, is insufficient to show pretext. See, Fleming v. MaxMara USA, Inc., 371 Fed.Appx. 115, 118 (2d Cir.2010) ("Only when an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual")(citing Dister, 859 F.2d at 1116); see also, Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005)("[i]t is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory").

Apart from the plaintiff's claims about her July, 2015 reduction in hours, the plaintiff also alleges that she was subjected to discrimination by being given less desirable jobs, or denied

tasks that she preferred to do.  However, the law provides that even crediting the plaintiff's

general and non-specific allegations as true, this does not rise to level of an adverse employment

action - which is necessary to establish a prima facie case.  See, <u>Castro v. City of New York</u>, 24

F.Supp.3d 250, 264, 2014 WL 2582830, at *10 (E.D.N.Y. June 5, 2014)("simply being assigned

undesirable work duties ... [is] insufficient to establish adverse employment action, since [it

does] not have a material impact on the terms and conditions of plaintiff's employment")

(alterations in original) (quotations and citation omitted).

      On the issue of reduced hours, the plaintiff's Third Amended Complaint asserts that she

was somehow discriminated against by reason of the fact that another SNS employee was not

transferred by BOCES to a supposed vacancy for that position in 2016, and that "if" this

hypothetical action was taken, the plaintiff could have increased her hours.  Exhibit "G", ¶¶ 12

(E) and (F).  This allegation – to the extent the plaintiff claims it amounted to actionable

discrimination - is meritless.  First, the plaintiff never asserted any such act of discrimination in

her EEOC Charge (Exhibit "A"), and as such, she is precluded from raising this allegation in this

proceeding.  <u>Perez v. Commc'ns Workers of Am. Local 1109</u>,  2005 WL 2149204, at *8

(E.D.N.Y. Sept. 6, 2005), aff'd sub nom. <u>Perez v. Commc'ns Workers of Am.</u>, 210 F. App'x 27

(2d Cir. 2006) ("A district court generally has no jurisdiction to hear claims not alleged in an

employee's EEOC charge").  Second, to the extent the Court might consider this claim (and it

should not), the claim wholly lacks merit.  As indicated in the attached Affidavit of Forrest

Addor, the Director of Technology at BOCES, there was no SNS vacancy in 2016, and thus the

factual predicate for her claim is baseless.  Addor Affidavit, ¶¶ 2 to 3; see also, <u>Bernstein v. The</u>

<u>MONY Grp., Inc.</u>, 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002)(failure to establish existence of

vacant or open position is fatal to failure to promote or hire claim).  Further, even if there was a

factual predicate for the plaintiff's claim in this regard, an employer's decision to staff positions in a particular manner based on its own business judgment cannot form the basis of a viable discrimination or retaliation claim. See, Johnson v. Cty. of Nassau, 480 F. Supp. 2d 581 (E.D.N.Y. 2007)(federal courts do not have a roving commission to review business judgments and may not sit as super personnel departments, assessing the merits, or even the rationality, of employers' nondiscriminatory business decisions).

Similarly, the plaintiff's allegation relating to not being transferred to work in BOCES' Special Education Department is equally meritless. Exhibit "G" at ¶ 22(A). For example, the plaintiff asserts that BOCES "should have" rearranged the existing staffing in that particular Department, and speculates that had that been done, it would have created more hours of work for her to perform. However, Mr. Addor, the BOCES Director of Technology, saw no legitimate business reason or justification to change the staffing at that Department, and the plaintiff's speculative assertions about why the staffing arrangements *should have* been changed to her liking such that it might have resulted in a hypothetical increase in her hours is legally insufficient to establish a viable discrimination claim. See, Roman v. Cornell Univ., 53 F. Supp. 2d 223, 241 (N.D.N.Y. 1999)("[a]bsent evidence of discriminatory motivation, this Court does not sit as a super-personnel department that reexamines an entity's business decisions, and therefore, a court may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.")(internal quotations and citations omitted). In this regard, there is not an iota of evidence that the Special Education Department was staffed as it was to discriminate or retaliate against the plaintiff, and the plaintiff's own personal belief that particular actions were done or not done for discriminatory or retaliatory purposes is insufficient to establish a viable claim. See, Kalola v. Int'l Bus. Machines Corp., 2017 WL 3394115, at *10 (S.D.N.Y. 2017),

report and recommendation adopted, 2017 WL 3381896 (S.D.N.Y. 2017), appeal dismissed, 2018 WL 894064 (2d Cir. 2018) ("[p]laintiff's subjective belief that he was discriminated against is insufficient to raise an inference of discrimination").

The plaintiff alleges, in her TAC, that she was discriminated against by reason of her underutilization of her skills in providing computer support services on a particular program known as "School Dude." Exhibit "G" at ¶ 22 (B). This allegation fails to establish a viable claim. First, the plaintiff's claim in this regard is not contained in her EEOC Charge, and may not be pursued in this litigation. See, Perez v. Commc'ns Workers of Am., supra. Second, there is not any evidence that the decision not to provide further staffing for this program was based on discriminatory reasons, and the plaintiff's subjective belief that this decision was based on improper motives is insufficient to show unlawful intent. See, Kalola v. Int'l Bus. Machines Corp., 2017 WL 3394115, at *10 (S.D.N.Y. 2017). Third, the claim that BOCES under-utilized the plaintiff's skills is simply not an adverse employment action, and is legally insufficient to establish a prima facie case. See, Hill v. Rayboy–Brauestein, 467 F. Supp.2d 336, 352 (S.D.N.Y. 2006) ("[A] change in job responsibilities is not necessarily an adverse employment action. ... Neither is underutilization of a Plaintiff's skills.") (internal citations omitted). Finally, even if the plaintiff could make out a prima facie claim of discrimination based on not being given specified work assignments, BOCES established that that there was simply zero business need to increase any staffing or hours to service this particular computer program. Addor Affidavit, ¶ 6. With this in mind, there is no basis to find that the challenged actions were a pretext for age, gender or national origin discrimination. See, Brown v. Soc'y for Seaman's Children, 194 F. Supp. 2d 182 (E.D.N.Y. 2002)(Title VII may not be used as a vehicle for second-guessing an employer's business judgment, since the employer is permitted to make bad business judgments and

misjudge the work of employees as long as its evaluations and decisions are not made for prohibited discriminatory reasons such as race or gender).

Finally, to the extent that the plaintiff claims that she was retaliated against by reason of not being returned to full-time status upon the August, 2015 passing another CNS employee (Mr. Kox), this claim clearly fails.  In order to establish a claim for retaliation, the plaintiff must show: [1] participation in protected activity known to employer; [2] employment action disadvantaging employee; and [3] causal connection between protected activity and adverse employment action. Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003).  In this case, the plaintiff asserts that she was not reinstated to a full-time position upon Mr. Kox's passing because of her recent August 20, 2015 EEOC filing.  However, Mr. Kox's passing simply did not result in the need to fill his position, or increase another employee's hours, because the school district that used his services (the Monticello Central School District) chose not to replace his services with another BOCES employee upon his passing. Vyas Affidavit, ¶ 28; Rossitto Affirmation, ¶ 2.  As such, because there simply was no vacant position to be filled by the plaintiff, or any other BOCES employee, her claim based upon the failure to reinstate her to full-time status necessarily fails. Finkelshteyn v. Staten Island Univ. Hosp., 687 F. Supp. 2d 66, 84 (E.D.N.Y. 2009)(employee's claim of unjust denial of request to be reinstated to full-time status dismissed where employee failed to show actual availability of open position).

## VIII.    THE PLAINTIFF'S CLAIMS BASED ON DISCRIMINATION, UNDER THE NEW YORK HUMAN RIGHTS LAW, SHOULD BE DISMISSED (FOURTH CAUSE OF ACTION)

The standards for evaluating an employer's liability under Title VII, as well as under the ADEA, apply to claims of discrimination under the New York State Human Rights Law ("NYSHRL").  See, Butler v. New York Health & Racquet Club, 768 F. Supp. 2d 516, 529

(S.D.N.Y. 2011)("[t]he framework for analyzing NYSHRL...discrimination claims is essentially the same as under Title VII and the ADEA"). With this in mind, for the same reasons why the plaintiff's claims of discrimination relating to the July, 2015 reduction in hours fail under Title VII and the ADEA, these same claims - to the extent brought under the NYSHRL - should be dismissed as well. See, Lambert v. McCann Erickson, 543 F. Supp. 2d 265 (S.D.N.Y. 2008) (claims brought under the NYSHRL are generally evaluated under the same standards as federal anti-discrimination statutes).

## IX.   THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE FLSA SHOULD BE DISMISSED (FIFTH CAUSE OF ACTION)

In the case at bar, the plaintiff claims that her hours were reduced, from 40 hours per week to 16 hours per week, in July of 2015, for allegedly retaliatory reasons based on her alleged prior complaints to supervisory personnel at BOCES about the non-payment of wages. There is no merit as a matter of law to this claim.

FLSA retaliation claims are subject to the three-step burden-shifting framework established by the *McDonnell Douglas* formula. Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010). In order to establish a prima facie case of retaliation under the FLSA, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008). The plaintiff cannot establish a viable FLSA retaliation claim in this case.

Initially, the plaintiff cannot show the requisite protected activity known to the defendant. Prior to the commencement of the instant lawsuit, the plaintiff never filed any formal or written complaints with BOCES ever alleging that she was not paid either her straight-time or overtime hours worked, nor has the plaintiff even alleged that she has done so in her pleadings. Vyas

Affidavit, ¶ 4; Fisk Affidavit, ¶¶ 4 to 7; Heppes Affidavit, ¶¶ 6 and 7.  The plaintiff cannot,

therefore, base any FLSA retaliation claims on any such complaints.  See, Aneja v. Triborough

Bridge & Tunnel Auth., 35 F. App'x 19 (2d Cir. 2002)(worker who never filed formal complaint

for violations of the Fair Labor Standards Act [FLSA] before his termination was precluded from

bringing retaliation claim against employer under FLSA).  Further, to the extent that the plaintiff

claims that she made an oral complaint about unpaid wages on October 2, 2014 to Pamela

Rourke (n/k/a Pamela Fisk) and/or to Mr. Vyas in April of 2015, any such claims fail to establish

a viable retaliation claim.

     First, the plaintiff does not allege that she informed either Ms. Heppes, Ms. Rourke or

Mr. Vyas that BOCES engaged in any sort of illegal activity by reason of the manner in which it

paid the plaintiff her wages, nor does she allege that she advised either individual that the

conduct of BOCES violated the FLSA or the NYLL.  Absent such allegations, a viable

retaliation claim cannot be established by reason of her alleged oral complaints regarding her

wage payments.  See, Caddick v. Pers. Co. I LLC, , 2018 WL 3222520, at *9 (S.D.N.Y.

2018)(absent allegation that employee's complaints with respect to overtime invoked the FLSA

or accused defendants of illegality, no protected activity within the meaning of the FSLA was

established, thus warranting dismissal of FLSA retaliation claim); Dunn v. Sederakis, 143 F.

Supp. 3d 102 (S.D.N.Y. 2015)(City college employee's oral complaints to human resources

personnel and her supervisor about unpaid compensation for overtime work hours were not

sufficient to put college employer on notice that she was asserting a violation of her rights under

the FLSA, and thus, did not amount to "protected activity," as required to support FLSA

retaliation claim; the overtime complaints were generalized and were part of a litany of

complaints by employee that concerned alleged violation of employer's internal policies and other non-FLSA rights ).

Apart from the fact that the plaintiff's complaints, as alleged, did not amount to "protected activity" sufficient to establish a prima facie case of retaliation under the FLSA, the plaintiff clearly cannot show a causal connection between her complaints and the adverse action complained of. First, with respect to the alleged complaints made to Pamela Rourke (n/k/a Pamela Fisk) in October of 2014, there is a gap of approximately nine (9) months between this complaint and the July, 2015 reduction in hours (or perhaps a seven [7] month gap, if the gap is measured between this complaint and the time when the plaintiff was *advised* of the plan to reduce her hours, in May of 2015). Whether 7 or 9 months, the rule is that a gap of time of this length is clearly far too attenuated to support a retaliation claim. See, Moccio v. Cornell Univ., 889 F. Supp. 2d 539 (S.D.N.Y. 2012), aff'd, 526 F. App'x 124 (2d Cir. 2013)(noting that although the Second Circuit has not drawn bright line to define outer limits beyond which temporal relationship between protected activity and adverse employment action is too attenuated to establish causal relationship needed to establish prima facie case of retaliation, the passage of more than two months between protected activity and adverse employment action does not allow for inference of causation).

Second, although the plaintiff alleges that she complained about working overtime in April of 2015, there is clearly no causal connection between this complaint and her July, 2015 reduction in hours. As an initial matter, the mere existence of temporal proximity between a protected activity and an alleged adverse employment action is not alone sufficient to establish a viable retaliation claim. Govori v. Goat Fifty, L.L.C., 519 Fed.Appx. 732, 734 (2d Cir.2013) (temporal proximity is not alone sufficient to show that a challenged action a pretext for

unlawful retaliation). As referenced in the Affidavit of Deborah Heppes, she was the individual who made the determination to reduce the plaintiff's hours and, at the time she made this determination, she was wholly unaware of any wage complaints made by the plaintiff. Heppes Affidavit, ¶¶ 6 and 7. As such, a claim of a causal relationship between the plaintiff's wage complaints and the later reduction in wages is negated. See, <u>Murray v. Visiting Nurse Servs. of N.Y.</u>, 528 F. Supp. 2d 257 (S.D.N.Y. 2007)(prima facie case of retaliation not established where actual decision-maker lacked knowledge of protected activities).

Further, even assuming, arguendo, that the plaintiff could show a prima facie case of FLSA retaliation (and she cannot), the plaintiff's claim is wholly without merit since the decision to reduce the plaintiff's hours in July of 2015 was solely based on the documented decreased need for the CNS services, and the fact that the plaintiff was (according to a County-generated layoff list) the CNS employee to be subjected to any reduction in hours. Heppes Affidavit, ¶¶ 28 and 29; Vyas Affidavit, ¶¶ 26 and 27; Fisk Affidavit, ¶ 11; Exhibits "BB," "CC" and "X." As noted above, these documented facts represent a clearly legitimate and non-retaliatory basis for the reduction in hours, and the mere fact that the plaintiff believes that the plan to reduce her hours was unwarranted, unwise or otherwise unjustified is beside the point and insufficient to sustain her retaliation claim. See, <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163 (2d Cir. 2014) (holding that the court does not sit as a super-personnel department that reexamines an employer's business decisions). In any event, it is more than telling that when the plaintiff complained to her Union representatives about her reduction in hours at the time she was notified of this decision, the plaintiff said *nothing* about BOCES reducing her hours for "retaliatory" or even "discriminatory" reasons. Exhibit "FF." Instead, the plaintiff's objection to the reduction in hours, "in real time," was based simply on her disagreement with her ranked position on the

County-generated layoff list. Exhibit "FF." With this mind, the plaintiff's belated attempt to recast her claim as one based on "retaliation" on account of her alleged prior complaints about the non-payment of wages should be summarily rejected.

## X.    THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE NEW YORK LABOR LAW SHOULD BE DISMISSED (SIXTH CAUSE OF ACTION)

The case law recognizes that the elements of a viable retaliation claim under the New York Labor Law are essentially identical to the elements under the FLSA. See, Henry v. Nannys for Grannys Inc., 86 F. Supp. 3d 155, 159-60 (E.D.N.Y. 2015) (noting that the same standard governs FLSA and NYLL retaliation claims); Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013)("...the familiar "burden-shifting" framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which is used by courts to analyze FLSA retaliation claims at the summary judgment stage, is also appropriately used to analyze claims under NYLL § 215"). For the reasons set forth in more detail in Point IX, above, the plaintiff's retaliation claims, based on alleged complaints about unpaid wages, are non-viable under the New York Labor Law for the same reasons they are non-viable under the FLSA.

## XI.    THE PLAINTIFF'S RETALIATION CLAIMS UNDER THE FMLA SHOULD BE DISMISSED (SEVENTH CAUSE OF ACTION)

The plaintiff alleges that in retaliation for her taking a medical leave in the early part of 2014, she was purportedly not considered for and then promoted to the position of Senior Computer Network Specialist ("SNS"), which said position was given to another employee. In order to establish a prima facie case of retaliation under the FMLA, an employee must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Potenza v. City of New

York, 365 F.3d 165, 168 (2d Cir. 2004). When analyzing claims of retaliation under the FMLA, the familiar McDonnell-Douglas burden shifting formula applies. Id., at 168.

With respect to a failure to promote claim, as alleged by the plaintiff here, an employee must show that: (1) she applied for an available position; (2) she was qualified for the position; and (3) even though qualified, she was rejected under circumstances which give rise to an inference of discrimination. Lanier v. I.B.M. Corp., 319 F. Supp. 2d 374, 385 (S.D.N.Y. 2004).

In this case, the plaintiff plainly cannot demonstrate a prima facie case of retaliation under the FMLA based on the fact that she was not promoted to an SNS position in 2014. Here, BOCES posted the SNS vacancy on March 10, 2014, and the plaintiff was specifically emailed notice of this vacancy on the same March 10, 2014 date. Exhibits "Z" and "AA." However, the plaintiff *conceded* that she did not even apply for this position. Exhibit "I" at p. 34, lines 21 to 23, and p. 47, lines 22 to 24. The law is emphatically clear that where, as here, the plaintiff cannot show she applied for a vacant position, any failure to promote claim is non-viable. See, Brown v. Coach Stores, Inc., 163 F.3d 706 (2d Cir. 1998)(employee bringing failure-to-promote claim must allege that she or he applied for a specific position or positions and was rejected therefrom).

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the instant motion, made on behalf of BOCES, for summary judgment dismissing all claims interposed by the plaintiff pursuant to FRCP 56, be granted in its entirety.

Dated: New Windsor, New York
       July 13, 2018

Yours, etc.,

DRAKE·LOEB, PLLC

By: _____

ADAM L. RODD (AR-3484)
*Attorneys for Defendant*
555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553
Tel. No.: (845) 561-0550