USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARRI FURK,

                Plaintiff,

  -against-

ORANGE-ULSTER BOCES,

                Defendant.

No. 15-cv-6594 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Marri Furk ("Plaintiff") brings this action against Defendant Orange-Ulster BOCES ("BOCES" or "Defendant") asserting claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, New York Labor Law ("NYLL"), and New York State Human Rights Law ("NYSHRL").[1] (Third Am. Compl., ECF No. 39.)

Presently before the Court is Defendant's Motion for Summary Judgment (the "Motion"). (ECF No. 65.) Upon the conclusions set forth below, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are drawn from the parties' Rule 56.1 statements, declarations, and affidavits, and are not in dispute unless otherwise noted.

Plaintiff is a white female of non-Indian descent and is approximately 58 years old. (Def.'s

---

[1] Plaintiff's Amended Complaint asserted claims under Title VII, the ADEA, FLSA, and parallel state laws against BOCES and a second defendant, the United Public Service Employees' Union ("UPSEU"). (ECF No. 16.) On November 2, 2016, this Court granted BOCES' and UPSEU's motions to dismiss all Title VII and ADEA claims preceding Plaintiff's August 20, 2015 EEOC filing by more than 300 days, as well as Plaintiff's Article 78 claims, and dismissed all of Plaintiff's claims against UPSEU. (ECF No. 28.) Plaintiff subsequently filed a Second Amended Complaint (ECF No. 39), and then a Third Amended Complaint (ECF No. 52), the latter of which removed UPSEU as a defendant in this action.

56.1 Statement ¶ 1, ECF No. 75; Def.'s Ex. I at 9:22-23, ECF No. 73-9.) On April 2, 2001, Plaintiff began working as a Computer Network Specialist ("CNS") at BOCES. (Def.'s 56.1 Statement ¶¶ 3-4; Def.'s Ex. I at 13:8-13.) This CNS position is a civil service position in the competitive class in accordance with the Orange County Civil Service Rules. (Def.'s Statement ¶ 26; Fisk Aff. ¶ 8.) Layoff lists for civil service positions in Orange County are determined and promulgated by the Orange County Department of Human Resources. (Def.'s Statement ¶ 25; Heppes Aff. ¶ 22; Vyas Aff. ¶ 20.) Upon commencing her employment at BOCES, Plaintiff worked full-time; her regular hours were from 8 a.m. to 4 p.m., including a one-hour lunch break that could be taken at any time. (Def.'s 56.1 Statement ¶¶ 5-7; Def.'s Ex. I at 13:14-14:3; Heppes Aff. ¶ 13, ECF No. 68; Vyas Aff. ¶ 11, ECF No. 72.) Plaintiff has consistently asserted that, at all times, her hourly wage was approximately $41.52, which exceeds any applicable minimum wage requirements. (Def.'s Statement ¶ 77; Def.'s Ex. G.)

Plaintiff's claims in this action arise from three categories of incidents: Defendant's failure to promote Plaintiff on two occasions; Defendant's reduction of Plaintiff's hours; and Defendant's failure to compensate Plaintiff for time she spent working during lunch or otherwise above her regular hours. Each category is described in more detail below.

**1. Failure to Compensate Plaintiff for Lunchtime or Overtime Work**

On May 9, 2013, Plaintiff submitted a written request to be paid for straight hours worked on April 17, 2013 beyond her scheduled hours. (Def.'s Statement ¶ 53; Def.'s Ex. I at 96:16-97:23; Def.'s Ex. O, ECF No. 73-11 at 9-10; Vyas Aff. ¶ 7; Heppes Aff. ¶ 10.) Plaintiff was paid for this extra straight-time as requested. (Def.'s Statement ¶ 54; Def.'s Ex. I at 98:4-8; Vyas Aff. ¶ 7; Heppes Aff. ¶ 10.) Plaintiff did not submit any other requests for extra straight-time hours worked.[2]

---

[2] Plaintiff states that she lacks sufficient knowledge or information about this statement. (Pl.'s Resp. Def.'s Statement ¶ 55.)

(Def.'s Statement ¶ 55; Heppes Aff. ¶ 10; Vyas Aff. ¶ 7.) According to Plaintiff, her supervisor, Burghav Vyas ("Vyas"), was aware that Plaintiff's workload was such that it required working through lunch periods and beyond normal work hours to complete, and was continuously aware that Plaintiff was working those additional hours. (Furk Aff. ¶ 7.)

On February 28, 2014, Plaintiff submitted a request to be paid for two hours of overtime work that she performed on January 31, 2014. (Def.'s Statement ¶ 46; Def.'s Ex. I at 83:8-84:8; Def.'s Ex. P, ECF No. 73-11 at 11-12.) Vyas approved this request and Plaintiff was paid accordingly. (Def.'s Statement ¶ 47; Def.'s Ex. I at 84:18-85:3; Def.'s Ex. P; Heppes Aff. ¶ 11; Vyas Aff. ¶ 8.) Plaintiff could not recall at her deposition whether she requested overtime pay on any other occasions. (Def.'s Statement ¶ 48; Def.'s Ex. I at 99:3-12.) According to Defendants, she did not. (Def.'s Statement ¶ 49; Vyas Aff. ¶ 8; Heppes Aff. ¶ 11.)

Plaintiff was aware that she was required to submit a written request for payment to BOCES whenever she worked beyond her regularly scheduled hours and/or overtime. (Def.'s Statement ¶¶ 50, 56; Def.'s Ex. I at 85:4-86:4; *id.* 98:9-13.) According to Defendant, Plaintiff did not submit any requests to BOCES seeking payment for extra hours worked other than the request relating to extra straight time hours worked on April 17, 2013 and the request relating to overtime hours worked on January 31, 2014. (Def.'s Statement ¶ 60; Def.'s Ex. J at 197:21-198:3.) Plaintiff denies this statement, noting that all she testified to at her deposition was that she did not have in her possession other time sheets or Federal activity logs that she submitted to BOCES. (Pl.'s Resp. Def.'s Statement ¶ 60.) Plaintiff testified that she could not recall whether she submitted any documentation to BOCES advising that she had worked during her lunch between 2009 and 2013 or that she was not paid for overtime hours worked between 2009 and 2014. (Def.'s Statement ¶ 67; Def.'s Ex. J at 138:10-20.) She also testified, however, that she had

3

conversations with people at BOCES on the topic and thus verbally informed them about nonpayment for overtime.[3] (Pl.'s Resp. Def.'s Statement ¶ 67; Def.'s Ex. J at 138:21-139:17.)

Plaintiff likewise asserts that she made a complaint to Vyas and Deborah Heppes, who oversees payroll matters at BOCES, on April 17, 2015 in connection with overtime work she had performed for an event on April 16, 2015. (Furk Aff. ¶ 7.) Plaintiff asserts that Vyas and Heppes subsequently had her "counseled" by a Union representative about working unauthorized overtime, notwithstanding the fact that Vyas knew that Plaintiff could not have completed her work at that event without working overtime. (*Id.*)

Plaintiff testified at her deposition that she knew of no other employees at BOCES who complained to the company about lack of payment for straight time or overtime hours. (Def.'s Statement ¶¶ 57-58; Def.'s Ex. J at 143:17-144:2.) In her Response to Defendant's 56.1 Statement, however, Plaintiff states that she has learned since her deposition that two employees complained about needing to work through lunchtime without compensation. (Pl.'s Resp. Def.'s 56.1 Statement ¶¶ 57-58; Furk Aff. ¶ 10; Pl.'s Ex. A.)

**2. Failure to Promote**

In March 2014 a position became available for a Senior Computer Network Specialist ("SNS") at BOCES. (Def.'s Statement ¶ 23.) Plaintiff was out on medical leave at the time and never informed anyone at BOCES that she did not have access to her e-mail during this period.[4] (Def.'s 56.1 Statement ¶ 20; Def.'s Ex. I at 51:6-9.) Plaintiff never applied for this position and it was eventually filled by Plaintiff's colleague, Apurva Engineer ("Engineer"). (Def.'s Statement ¶¶

---

[3] *Plaintiff never informed BOCES in writing that she had worked certain overtime hours without pay, nor did she ever file any grievance through her Union relating to nonpayment of overtime. (Def.'s Statement ¶¶ 51-52; Def.'s Ex. I at 86:18-19; id. 96:5-9.)*

[4] Plaintiff was out on medical leave from March 6, 2014 until approximately May 8 or May 10, 2014. (Def.'s 56.1 Statement ¶ 19; Def.'s Ex. I at 51:10-18.)

21-23; Def.'s Ex. I at 34:21-23; *id.* 47:22-24; *id.* 55:15-18; Heppes Aff. ¶ 18; Vyas Aff. ¶16.) According to Plaintiff, Engineer is a younger male of Indian descent who was less qualified than Plaintiff and two older CNS employees who interviewed for the position. (Affidavit of Marri Furk ("Furk Aff.") ¶ 15, ECF No. 79.) Plaintiff asserts that Vyas, who is also a male of Indian descent, promoted Engineer in order to remove him from the CNS position, where he would have remained the first employee to suffer a work hour reduction or layoff according to the civil layoff list. (*Id.* ¶ 17.) She further asserts that, even after Engineer was promoted to the SNS level, he continued to perform only CNS level work, which indicated that his promotion served no purpose for BOCES. (*Id.* ¶ 18.)

On August 4, 2015, while Plaintiff was working 16 hours per week, a co-worker named Steven Kox ("Kox"), who held a CNS position, passed away. (Def.'s Statement ¶ 73; Rossitto Aff. ¶ 2, ECF No. 70; Heppes Aff. ¶ 31; Vyas Aff. ¶ 28.) In the wake of this death, the school at which Kox was assigned to work informed BOCES that it did not wish to replace him with another BOCES employee and was instead planning to hire its own employee to perform those functions.[5] (Def.'s Statement ¶ 74; Rossitto Aff. ¶ 2; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.) As there was thus no need to replace Kox's hours, the CNS position previously held by him was not filled by any BOCES employee.[6] (Def.'s Statement ¶ 75; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.)

Plaintiff likewise raises an incident that occurred in 2016, after she commenced this action. Specifically, she asserts that, when SNS vacancies opened at various school districts in 2016, Engineer was not transferred to any of those positions and that had Engineer filled those vacancies for even three days per week, Plaintiff could have returned to full-time status by taking over the

---

[5] Plaintiff states that she lacks knowledge or information regarding this statement. (Pl.'s Resp. Def.'s Statement ¶ 74.)
[6] Plaintiff states that she lacks knowledge or information regarding this statement. (Pl.'s Resp. Def.'s Statement ¶ 75.)

5

CNS work that had been performed by Engineer until then. (Furk Aff. ¶ 20.)

Plaintiff has no documentation of any complaints she made to anyone at BOCES concerning the company's failure to interview her for the position or promoting Engineer. (Def.'s Statement ¶ 29; Def.'s Ex. J at 146:7-11.) During her deposition, Plaintiff did not recall complaining to anyone at BOCES that Engineer's promotion to the SNS position was due to discrimination based on Plaintiff's age, gender, or national origin. (Def.'s Statement ¶ 71; Def.'s Ex. J at 141:16-23.) Plaintiff likewise had no recollection of complaining to anyone from BOCES that her position or change in position on the civil service layoff roster was undertaken on account of her age, gender, or national origin. (Def.'s Statement ¶¶ 30, 71; 141:4-9; *id.* at 192:21-193:1; Def.'s Ex. FF.)

Vyas never made any derogatory comments about Plaintiff's age, and Plaintiff could not recall at her deposition whether she heard him make derogatory comments about her gender or national origin. (Def.'s Statement ¶¶ 63-64; Pl.'s Resp. Def.'s Statement ¶ 64; Def.'s Ex. J at 128:1-4; *id.* at 130:19-24.) Plaintiff similarly testified at her deposition that she could not recall whether Heppes or Pamela Rourke ("Rourke"), who worked in Human Resources, ever made any derogatory comments about her age, gender, or national origin. (Def.'s Statement ¶¶ 65-66; Def.'s Ex. J at 131:11-18.)

Plaintiff contends that BOCES failed to promote her on these occasions because of her age, gender, and national origin, and in retaliation for her complaints regarding the nonpayment of wages, as discussed *infra*.

### 3. Reduction of Plaintiff's Hours

On July 12, 2012, Plaintiff's hours were reduced from full-time (40 hours per week) to part-time (32 hours per week). (Def.'s 56.1 Statement ¶ 14; Def.'s Ex. J at 161:15-20.) Other

BOCES employees in the CNS position likewise had their hours reduced at this time.[7] (Def.'s 56.1 Statement ¶ 17; Vyas Aff. ¶ 22; Heppes Aff. ¶24.) Following the 2012 Reduction, BOCES received complaints from several employees.[8] (*Id.*) Based on these complaints, layoffs and reductions in hours were applied to the highest ranking member on the CNS layoff list, which was promulgated by Orange County Civil Service, in order to minimize the disruption of services to several of the users of the CNS position.[9] (Def.'s 56.1 Statement ¶ 18; Vyas Aff. ¶ 22; Heppes Aff. ¶ 24.)

From July 1, 2014 to September 1, 2014, Plaintiff's hours were again reduced from full-time to part-time status. (Def.'s Statement ¶ 31; Pl.'s Resp. Def.'s Statement ¶ 31.) According to Defendant, this reduction was implemented for budgetary reasons. (Def.'s 56.1 Statement ¶ 31; Def.'s Ex. I at 35:3-6; Fisk Aff. ¶ 10; Heppes Aff. ¶ 24; Vyas Aff. ¶ 22.) Plaintiff disputes this characterization, and asserts that her hours were in fact reduced during this period because she complained that she had not been given the opportunity to interview for the SNS position while on medical leave. (Pl.'s Resp. Def.'s Statement ¶ 31; Def.'s 56.1 Statement ¶ 32; Def.'s Ex. G ¶ 14.) On September 1, 2014, Plaintiff was restored to full-time status. (Def.'s Statement ¶ 37; Def.'s Ex. I at 37:9-11.)

On May 26, 2015, Plaintiff was advised that her hours were going to be reduced again, this time to 16 hours per week. (Def.'s Statement ¶ 40; Def.'s Ex. I at 67:24-68:2.) On May 28, 2015, Plaintiff e-mailed her Union representatives complaining about this reduction. (Def.'s Statement ¶ 43; Def.'s Ex. FF.) The e-mail stated Plaintiff's belief that she was not the lowest-ranking

---

[7] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 17, ECF No. 83.)
[8] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 17.)
[9] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 18.)

technician in her title, but e- made no reference to discrimination or retaliation. (Def.'s Statement ¶¶ 44-45; Def.'s Ex. FF.)

In May 2016, Plaintiff's hours were increased from 16 hours per week to 21 hours per week. (Def.'s Statement ¶ 61; Def.'s Ex. J at 125:20-126:10.) On July 1, 2017, Plaintiff's hours were increased to 40 hours per week (full time), but they were reduced to 21 hours again on September 1, 2017. (Def.'s Statement ¶ 62; Pl.'s Resp. Def.'s Statement ¶ 62; Def.'s Ex. J at 126:21-127:13.)

Plaintiff testified at her deposition that she did not recall submitting any complaints to BOCES suggesting that this temporary reduction in hours was based on discriminatory reasons or in retaliation for any complaints she made regarding non-payment of wages. (Def.'s 56.1 Statement ¶¶ 35-36; Pl.'s Resp. Def.'s 56.1 Statement ¶¶ 35-36; Def.'s Ex. J at 160:14-161:14.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment will not lie where there is a "dispute[] over facts that might affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter[.]'" *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Moreover, in deciding a motion

for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotation marks omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v*, 477 U.S. at 252.

## DISCUSSION

I. **Discrimination and Retaliation Claims**

   a. **Applicable Law**

Plaintiff's Title VII, the ADEA, and NYSHRL discrimination claims are analyzed at the summary judgment stage according to the burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 529 (S.D.N.Y. 2011) ("The framework for analyzing NYSHRL . . . discrimination claims is essentially the same as under Title VII and the ADEA.") Under this framework, Plaintiff "bears the initial burden of establishing a prima facie case of discrimination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). This requires Plaintiff to adduce sufficient evidence for a reasonable juror to conclude that (1) she is a member of a protected class; (2) she was qualified for the job at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (citation omitted).

Plaintiff's retaliation claims under FLSA, NYLL, and FMLA are analyzed according to the same burden-shifting framework as her discrimination claims. *See, e.g.*, *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013); *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010); *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). To make out a prima facie case of retaliation sufficient to withstand summary judgment, she must adduce evidence that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Summa v. Hofstra Univ.*, 708 F. 3d 115, 125 (2d Cir. 2013) (citation omitted).

If Plaintiff makes a prima facie showing of either discrimination or retaliation, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *See, e.g.*, *McDonnell*, 411 U.S. at 802; *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). If Defendant points to such a rationale, the burden returns to Plaintiff to show that the employer's proffered

reason was pretextual, *i.e.*, that discrimination was the real reason. *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

   **b. Application**

Plaintiff's discrimination and retaliation claims are premised upon: (i) BOCES' failure to promote her to the SNS position in 2014; (ii) BOCES' reduction of her hours in July 2014; (iii) BOCES' reduction of her hours in July 2015; and (iv) BOCES' failure to elevate her to a full-time position upon the death of Kox, another CNS, in August 2015.

As for BOCES' failure to promote Plaintiff in 2014,[10] Plaintiff has not proffered sufficient evidence to infer discriminatory intent. Plaintiff has conceded that Vyas never made any derogatory comments about Plaintiff's age, and Plaintiff could not recall at her deposition whether she heard him make derogatory comments about her gender or national origin. (Def.'s Statement ¶¶ 63-64; Pl.'s Resp. Def.'s Statement ¶ 64; Def.'s Ex. J at 128:1-4; *id.* at 130:19-24.) Plaintiff contends that a reasonable juror could nonetheless find that the discriminatory intent may be inferred by the fact that Vyas and Engineer were both Indian; Vyas was in a position to promote Engineer; Engineer was higher on the civil layoff roster than Plaintiff at the time that he was promoted, meaning that his promotion saved him from being fired; and Engineer was promoted, even though he was much more junior than Plaintiff. (Pl.'s Mem. Opp. at 15 (citing Pl.'s Ex. B at 32:18-25; 40:14-45:22.) However, Plaintiff has conceded that she was notified of the SNS vacancy

---

[10] As noted in this Court's prior Opinion, any of Plaintiff's federal discrimination claims arising from actions that occurred more than 300 days prior to her filing of the EEOC charge on August 20, 2015 are time-barred. (Op., Nov. 2, 2015, at 9, ECF No. 28.) Here, that necessarily includes BOCES' failure to promote Plaintiff to the SNS position in the spring of 2014 and its reduction of her hours in the summer of 2014. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996); *Brodsky v. City Univ. of N.Y.*, 56 F.3d 8, 9 (2d Cir. 1995). Accordingly, to the extent her Title VII or ADEA claims are based upon these events, those claims are dismissed. However, because the timeliness of claims under the NYSHRL is not determined by the date on which Plaintiff filed her EEOC charge, but rather by a three-year statute of limitations, the Court still discusses BOCES' failure to promote Plaintiff to the SNS position in 2014 and its reduction of her hours in 2014.

but never even applied for the position. (*See* Heppes Aff. ¶ 17; Vyas Aff. ¶ 15; Def.'s Ex. Z; Def.'s Ex. AA; Def.'s Ex. I at 34:21-23; *id.* 47:22-24; Def.'s 56.1 Statement ¶¶ 21-22.) As a result, her discrimination and/or retaliation claims based on BOCES' promotion of Engineer in 2014 fails. *See, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (noting that employee bringing failure-to-promote claim must allege that she applied for a specific position and was rejected therefrom) (citations omitted).

Similarly unsuccessful are Plaintiff's claims arising from BOCES' reduction of her hours and its failure to elevate her to full-time status in August 2015 after Kox's passing. According to Plaintiff, these actions were taken in retaliation for complaints she made about BOCES' failure to promote her to the SNS position in 2014 and various complaints she made regarding BOCES' nonpayment of wages. However, assuming *arguendo* that Plaintiff could establish a prima facie case of discrimination or retaliation in connection with these events, her claims fail because she has failed to adduce sufficient evidence to suggest that Defendant's actions were taken for unlawful reasons. Here, Defendant has proffered legitimate, non-discriminatory reasons for its actions. Specifically, Defendant has submitted evidence that (i) it reduced Plaintiff's hours in 2014 and 2015 because there was a decreased need for CNS services in the summer and Plaintiff was the highest-ranking CNS employee on the layoff list (Heppes Aff. ¶¶ 28-29; Vyas Aff. ¶¶ 26-27; Fisk Aff. ¶ 11; Def.'s Exs. BB, CC, X); and (ii) it did not elevate Plaintiff to full-time status in 2015 because the client for which Kox worked prior to his death decided to stop using BOCES' services at that time, meaning there was no need to fill Kox's position Def.'s Statement ¶ 75; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.) *Cf. Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) (accepting budgetary concerns as legitimate business reason for terminating employee).

Plaintiff has not cited specific facts that could raise a genuine dispute as to whether these reasons are pretextual. Instead, she merely asserts her belief that these actions were taken for discriminatory or retaliatory reasons (Furk Aff. ¶¶ 8, 12), and states that "in light of the many negative actions taken against Plaintiff by BOCES . . . there is no reason for the Court to . . . accept BOCES' explanation for its [actions] as being the truth." (Pl.'s Mem. Opp. at 17.) But Plaintiff's personal disagreements with Defendant's staffing decisions, or personal beliefs surrounding the motive, are insufficient to rebut Defendant's legitimate, non-discriminatory reasons for reducing Plaintiff's hours and maintaining her part-time status after Kox's death. *See, e.g.*, *Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("[A plaintiff's] feelings and perceptions of being discriminated against are not evidence of discrimination.") (internal quotation marks and citation omitted); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("[Courts] do not sit as a super-personnel department that reexamines an entities business decisions.") (citations omitted).

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiffs' discrimination and retaliation claims is granted.

## II. Plaintiff's Claims for Unpaid Straight-Time Wages Under FLSA[11]

### a. Applicable Law

"[T]he text of FLSA requires only payment of minimum wages and overtime wages." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) (citing 29 U.S.C. §§ 201-19)). Accordingly, this Circuit has held that, "[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Id.*

### b. Application

Here, Plaintiff has conceded that her average hourly wage was greater than the federal minimum wage. (Def.'s 56.1 ¶ 77.) Defendant is therefore entitled to summary judgment on Plaintiff's FLSA claims for straight-time wages.

## III. Plaintiff's Claims for Unpaid Overtime Wages Under FLSA and NYLL

FLSA and NYLL mandate that an employee must be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2.

To establish liability under FLSA on a claim for unpaid overtime, a plaintiff "must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker*, 643 F.3d 352, 361 (2d Cir. 2011). Because FLSA requires employers to maintain records of their employees' wages and

---

[11] Defendant's papers address only the viability of Plaintiff's claim for straight-time wages under FLSA, without mention of Plaintiff's parallel claims under state law. (*See* Def.'s Mem. Supp. at 9 n.3 ("[T]o the extent that [Plaintiff] seeks to recover for unpaid 'straight-time' hours, this claim is barred *under the FLSA* since the plaintiff does not allege, and cannot prove, that her hourly wage was less than the minimum *federal* hourly wage.") (emphasis added); Def.'s Reply Mem. at 8 ("[T]o the extent that [Plaintiff] asserts that she was not paid for certain "straight time," as opposed to overtime hours, worked . . . any such claims are not viable *under the FLSA*.") (emphasis added).) The Court therefore concludes that Defendant has not moved for summary judgment with respect to Plaintiff's straight-time claim under NYLL.

hours, *see* 29 U.S.C. § 211(c), the easiest way for an employee to satisfy this burden is to secure the production of such records from the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). If, however, the employer's records are not accurate, an employee satisfies her burden if she presents "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* "[A]n employee's burden in this regard is not high" and a plaintiff may meet this burden "through estimates based on his own recollection." *Kuebel*, 643 F.3d at 362. "A similar standard to *Anderson* is applied in deciding overtime claims under New York law." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012)

   a.  **Application**

In *Keubel*, the Second Circuit held that the *Anderson* standard applied even where the employee was responsible for the inaccuracy of his timesheets records because "the employee's falsifications were carried out at the instruction of the employer or the employer's agents." 643 F.3d at 363. A comparable situation is presented here. Plaintiff has testified that she did not seek pre-approval to work through lunch because she was told it would be denied (Def.'s Ex. I at 114:4-17), and that she did not follow the formal procedure for requesting overtime compensation because it was apparent to her that any such request would be denied (Def.'s Ex. I at 155:1-10). Plaintiff also testified that there were times when she verbally requested payment for overtime for specified hours but those requests were denied. (Pl.'s Ex. B at 98:17-21; *id.* at 107:7-9.) This testimony is echoed in Plaintiff's affirmation, in which she notes an incident in 2015 when Vyas and Heppes called her into a meeting during which she was "counseled" by a Union representative about working "unauthorized" overtime. (Furk Aff. ¶¶ 7, 9.) "While ultimately a factfinder might or might not credit this testimony, that is a determination for trial,

15

not summary judgment." *Kuebel*, 643 F.3d at 363. Plaintiff is therefore entitled to the benefit of *Anderson*'s "just and reasonable inference" standard.

Plaintiff has demonstrated the amount of her uncompensated work as a matter of just and reasonable inference. Plaintiff testified that she worked through lunch most days over the years. (Pl.'s Ex. B at 111:17-22.) In her affidavit, she delineates the precise number of hours of straight time and overtime work she performed without compensation from August 2012-December 2015, with those estimates broken down by year. (Furk Aff. ¶ 4.) While Defendant may be correct that Plaintiff has failed to identify the specific days or weeks during which she worked more than forty hours, or the number of hours she worked during such weeks, the *Anderson* standard does not erect a high hurdle. *Kuebel*, 643 F.3d at 362 (noting that "the dispute as to the precise amount of [a plaintiff's] uncompensated work is one of fact for trial" and that "[t]he *Anderson* test simply addresses whether there is a reasonable basis for calculating damages"). Based on Plaintiff's evidence, a reasonable jury could conclude that Plaintiff has met her burden of proof under *Anderson*, thus shifting the burden to BOCES to present evidence that clarifies the precise amount of work she performed or refutes the reasonable inference created by Plaintiff's evidence.[12] *See, e.g.*, *Sherald v. Embrace Tech., Inc.*, No. 11 Civ. 939 (TPG), 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (plaintiff specified with reasonable particularly the amount of off-the-clock work he performed where he claimed that he was not paid for thirty minutes of pre-shift work on the majority of days he was employed; various lunchtime meetings that allegedly occurred about ten times per year; and interruptions in his lunch calls of variable duration);

---

[12] To the extent Defendant argues that the existence of its policies requiring formal requests for straight time/overtime compensation negates the inference that Plaintiff worked beyond her regularly scheduled hours, such evidence does not entitle Defendant to summary judgment. *See Kuebel*, 643 F.3d at 365 (holding that evidence of employer's policies requiring accurate timekeeping "raises factual and credibility questions for trial, but it does not afford a basis for summary judgment" in light of plaintiff's testimony that he was encouraged by his managers not to record all of his hours).

*Shang Shing Chang v. Wang*, No. 15 Civ. 4385 (FB), 2018 WL 1258801, at *2 (E.D.N.Y. Mar. 12, 2018) (plaintiffs' averments in depositions and declarations were "sufficient to both trigger and satisfy" *Anderson*'s standard where they asserted "that they worked somewhere between fifty and sixty hours per week, but received no overtime payments . . . [and] that they were required to record breaks . . . even if they worked during that time"); *Aponte v. Modern Furniture Mfg. Co., LLC*, No. 14 Civ. 4813 (ADS), 2016 WL 5372799, at *11 (E.D.N.Y. Sep. 26, 2016) (recognizing that "it is well settled that a general estimate based on an employee's recollection gives rise to a just and reasonable inference of uncompensated work" sufficient to satisfy plaintiff's burden under *Anderson*); *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 426-27 (E.D.N.Y. 2017) (denying motion for summary judgment even though plaintiff's allegations "lack[ed] specificity as to certain weeks during her employment when she did not work Saturdays, or certain weeks when she worked fewer than 57 hours").

Second, Plaintiff has raised a genuine dispute of material fact as to whether BOCES had actual or constructive knowledge that she was working beyond her regularly scheduled hours. Defendant asserts that an employee such as Plaintiff "who wholly fails to abide by an employer's promulgated procedure for obtaining payment of overtime or extra hours worked, and who does not otherwise show that the employer was placed on notice of specific [uncompensated] hours worked" cannot establish a claim for unpaid wages. (Def.'s Mem. Supp. at 8-9.) This argument is unavailing, however.

For one, Plaintiff is not required at this stage to demonstrate that she placed Defendant on notice of specific hours worked. *See Kuebel*, 643 F.3d at 365 ("At summary judgment, [a plaintiff] need not demonstrate exactly how much off-the-clock work was performed with [the employer's] knowledge"). Plaintiff testified that she met with Rourke in October 2014 to inform

17

her that she had "worked overtime throughout the years on some occasions and that she had worked through many lunch hours and hadn't gotten paid[.]" (Pl.'s Ex. B at 80:2-6.) She likewise testified that the specific context of this meeting was to "notify them that [she] had been working through lunch hours and working passed her clock-out time." (Pl.'s Ex. B at 110:6-22.) In her affirmation, Plaintiff states that she complained to Vyas on "several occasions." (Furk Aff. ¶ 6.) This is enough to successfully oppose Defendant's Motion. *See, e.g.*, *Kuebel*, 643 F.3d at 365 (triable issue of fact as to whether employer knew plaintiff was working overtime existed where plaintiff testified that, on several occasions, he complained to his supervisor that he was working more than forty hours per week but recording only forty).

Moreover, the Second Circuit has stated that, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Id.* at 363. As just discussed, Plaintiff has proffered sufficient evidence to suggest that Defendant knew or should have known about her uncompensated work. Thus, her failure to utilize BOCES' established process for reporting and seeking compensation for overtime hours does not entitle Defendant to summary judgment on the unpaid wages claims.[13] *See, e.g.*, *Sherald,* 2013 WL 126355, at *6 (concluding that "the fact that plaintiff never sought compensation for the unpaid work is not dispositive" where defendants' actual or constructive knowledge that plaintiff was working overtime could be inferred in the circumstances); *Perry v. City of N.Y.*, No. 13 Civ. 1015 (VSB), 2018 WL 1474401 (S.D.N.Y. Mar. 26, 2018) (finding evidence that plaintiffs failed to report overtime pursuant to

---

[13] Defendant appears to rely on cases such as *Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y. Sep. 10, 2010), and *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), for the proposition that an employer is not liable for unpaid wages where a plaintiff declined to avail herself of the employer's established overtime reporting process—even if the employer learned about the uncompensated work through other means. (*See* Def.'s Mem. at 8-10.) That argument is, however, foreclosed by the binding Second Circuit case law discussed herein.

defendant's established policy insufficient to warrant summary judgment in light of evidence suggesting employer knew that plaintiffs were working overtime); *Seward v. Int'l Bus. Machines Corp.*, No. 08 Civ. 3976 (VSB), 2013 WL 142006, at *3 (S.D.N.Y. Jan. 2, 2013) (stating that the "key issue" in FLSA unpaid wages claim—"regardless of whether plaintiff followed [defendant's] policy about recording overtime"—was whether the evidence demonstrated defendant had actual or constructive knowledge that plaintiff engaged in uncompensated overtime work).

In sum, Plaintiff's has presented triable issues of fact with respect to her claim for overtime under FLSA and NYLL.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 65. The parties are directed to appear in court on October 17, 2019 at 11:30 a.m. for a pre-trial conference.

Dated: September 27, 2019　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge