## <u>List of exhibits</u>:

Exhibit "1" Weinreb emails July 12, 2021 and attachment (settlement terms)

Exhibit "2" Weinreb – Diederich emails of July 1, 2021

Exhibit "3" Diederich letter to Ms. Furk 4-26-2017

Exhibit "4" Diederich "TimeSlips" itemization/invoice, 3-1-2017

Exhibit "5" Second Amended & Supplemental Complaint filed 3-1-2017

Exhibit "6" Amended Complaint 12-5-2015 (portions omitted)

Exhibit "7" Weinreb's Third Am. Complaint & MoL in Opposing Summary judgment

Exhibit "8" Court's Opinion & Order filed 9-27-2019

Exhibit "9" Retainer Agreement dated July 29, 2015

Exhibit "10" Furk email to Diederich January 30, 2017 re: invoice

Exhibit "11" Diederich emails to Ms. Furk re: invoice, March 1, 2017

Exhibit "12" Diederich "Notice of Right to Arbitrate" mailed April 26, 2017

Exhibit "13" Diederich email to Mr. Weinreb and cc'd to Ms. Furk on May 19, 2017

EXHIBIT "1"

**Mike Diederich, Esq.**

**From:** boruchw@cs.com
**Sent:** Monday, July 12, 2021 4:37 PM
**To:** mike@diederichlaw.com
**Subject:** Furk v. BOCES     Terms of Settlement Agreement
**Attachments:** File0001.PDF

Mike:

I hope all is well with you.

I am getting back to you about the terms of the settlement agreement.  I did not want to disclose the compensation terms of the agreement before getting consent from my client, Marri Furk.  She gave me such consent and, therefore, I am disclosing to you the compensation terms.  See such compensation terms attached.

Essentially, under the agreement, BOCES agreed to consider Marri to be a retiree for certain purposes as set forth on the attached page.  As such, she became entitled to retiree incentive pay in the amount of $20,000 to which she would otherwise not be entitled.  In addition, BOCEs will pay the employer contribution of her health benefits until she reaches age 65 on February 5, 2025.

The rest of the items on the list are essentially moneys BOCEs anyways owed her on account of her work for them:  accumulated sick days, vacation pay, and longetivity pay.

Although I put in about 175 hours in this matter, in light of the modest recovery I received in this case and that Ms. Furk is not unemployed and needs the funds recovered in this settlement, I agreed to accept a total of $10,000 as my attorneys fee for my work in this case.

In light of the fact that you already received an attorneys fees for your work at the beginning of this case, I hope you will not seek a portion of the modest attorney's fee that I am taking for all my work in this case after you took over.  Thank you for your understanding.

Sincerely,


Bernard Weinreb, Attorney at Law
2 Perlman Drive - Suite 310
Spring Valley, NY 10977
Phone: **845-369-1019**

2.   <u>Settlement Compensation and Release.</u>

The Defendant agrees to pay and provide the Plaintiff with the following the following amounts and benefits under the terms set forth herein:

(A)   The Plaintiff shall cease employment with the Defendant on June 30, 2021, and the Defendant shall designate her status upon ceasing employment as a retiree;

(B)   The Defendant shall, within 21 days of the Effective Date of this Agreement as set forth in ¶ 5 herein, pay the Plaintiff the sum of $20,000.00, representing retirement incentive pay (20 years x $1000.00 per year);

(C)   The Defendant shall, within 21 days of the Effective Date of this Agreement as set forth in ¶ 5 herein, pay the Plaintiff the sum of $7350.00, representing accumulated sick days (122.5 days x $60 per day);

(D)   The Defendant shall, within 21 days of the Effective Date of this Agreement as set forth in ¶ 5 herein, pay the Plaintiff the sum of $540.00, representing vacation excess days (9 days x $60 per day);

(E)   The Defendant shall, within 21 days of the Effective Date of this Agreement as set forth in ¶ 5 herein, pay the Plaintiff the sum of $9140.50, representing vacation days (25 days x $365.62 per day); and

(F)   The Defendant, subsequent to the Plaintiff's June 30, 2021 cessation of employment with the Defendant, shall pay the employer contribution for Individual retirement health benefits for the Plaintiff up until the Plaintiff reaches the age of 65 on February 5, 2025, at which time Defendant's obligation to pay for retirement health benefits shall terminate. During the time period of the Defendant's obligation to pay the Individual retirement health benefits set forth herein, the Plaintiff shall pay her annual contribution for Individual retirement health benefits.

(G)   The Defendant shall, within 21 days of the Effective Date of this Agreement as set forth in ¶ 5 herein, pay the Plaintiff the sum of $262.55 representing longevity pay.

For and in consideration of the payments provided for in this Paragraph 2, subject to the terms and provisions of this Settlement Agreement, the Plaintiff fully, finally, irrevocably and forever releases and discharges the Defendant, its administrators, officers, employees, agents, heirs, administrators, executors, representatives, attorneys, successors and assigns, from any and all claims, which Plaintiff has or may have had against the Defendant, whether asserted in this action or not.

The Plaintiff shall be solely responsible for the payment of all taxes that may be assessed in connection with the settlement payments received herein.  The Plaintiff further

2

# EXHIBIT "2"

**Mike Diederich, Esq.**

| | |
|---|---|
| **From:** | boruchw@cs.com |
| **Sent:** | Thursday, July 1, 2021 4:27 PM |
| **To:** | Mike@DiederichLaw.com |
| **Subject:** | Re: Furk v. OCBOCES-- Diederich lien |

It is possible that I will be getting no fee.  But lets say I get $5,000 (this is a hypothetical number, as I may be getting a very small amount, and perhaps even nothing), how much of that $5,000 do you want?

Bernie


-----Original Message-----
From: Mike Diederich, Esq. <Mike@DiederichLaw.com>
To: boruchw@cs.com
Sent: Thu, Jul 1, 2021 4:18 pm
Subject: Furk v. OCBOCES-- Diederich lien

Yes, I am asserting a lien.  Why don't we agree on a fee split?
And in that regard, if you are only getting "a few thousand dollars," then why did you even take over the case in the first place?  To get the same recovery/settlement that I would have gotten?  Did you have any basis for thinking I was not doing a good job?
(And yes, if I sound annoyed I am, as we all have had difficult clients, and I think you should have simply told Furk that I was doing a good job, etc. etc.).
    Mike

**Michael Diederich, Jr., Esq.**
**Diederich Law Office**
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795/0796(fax)**
**www.DiederichLaw.com**


**From:** boruchw@cs.com [mailto:boruchw@cs.com]
**Sent:** Thursday, July 1, 2021 3:51 PM
**To:** mike@diederichlaw.com
**Subject:** Fwd: Furk v. OCBOCES

Mike:

The case has been  settled.  If I get attorneys fees, it will be limited to just a few thousand dollars.    With this knowledge, if you believe you

have any claims, you can promptly act accordingly.

Sincerely,

Bernard Weinreb, Attorney at Law
2 Perlman Drive - Suite 310
Spring Valley, NY 10977
 Phone: 845-369-1019

1

EXHIBIT "3"

**MICHAEL D. DIEDERICH, JR.**
*Attorney at Law*
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795**
**(845) 942-0796 (fax)**
**Mike@DiederichLaw.com**

*Practice concentrating in employment law,*
*civil rights, environmental and military law*

*CERTIFIED MAIL, RRR*

April 26, 2017

Ms. Marri Furk
1892 Route 211 East
Middletown, NY 10941

Re: Marri Furk vs. Orange-Ulster BOCES—Diederich attorney's fee

Dear Ms. Furk:

Over the past weeks, I sent you several emails attempting to discuss your fee obligation to me, after discharging me as your attorney in the above matter.  You have not responded to my emails or telephone calls (other than to inform me not to contact you).

Enclosed please find the itemization of my time expended on your behalf, which itemization I previously emailed to you.  As I have indicated via email, in the interest of amicable resolution and compromise, I am willing to reduce the $28,925 amount to $20,000 if you can pay this amount within a reasonable period of time.

I have previously asked you whether you are locating a new attorney to represent you in the *Furk v Orange-Ulster BOCES* federal court litigation.   If not, are you going to proceed *pro se* or is it your intention to abandon the lawsuit?  As I have mentioned before, if you wish to reconsider your discharging me, we can discuss my possible return to the case (which will, of course, be on the condition that you cooperate with me and seek reasonable and achievable goals).  This is, of course, your choice.

In the event that you dispute what you owe me, you have the right to fee arbitration.  In this regard, I have attached the following materials:

➢ Notice of Client's Right to Arbitrate a Dispute Over Attorneys Fees (UCS 137-1);
➢ Standard Written Instructions and Procedures to Clients for the Resolution of Fee Disputes Pursuant to Part 137 of the Rules of the Chief Administrator (Form UCS 137-3);
➢ Local Program Rules and Procedures for the Ninth Judicial District Attorney-Client Fee Dispute Resolution Program; and
➢ Client Request for Fee Arbitration (Form UCS 137-4a)

If you wish to dispute my fee, you can send your fee dispute request to:

> Administrative Judge, N.Y.S. Supreme Court
> Westchester County Courthouse
> 111 Dr. Martin Luther King Blvd
> White Plains, NY 10601

I hope that we can reach a mutually agreeable resolution.  Otherwise, I will need to protect my financial interests in this case to the full extent that the law and professional ethics allow.

Sincerely yours,

Michael D. Diederich, Jr.

EXHIBIT "4"

## Michael Diederich, Jr.
*Attorney at Law*
*361 Route 210*
*Stony Point, NY  10980*

Invoice submitted to:

Ms. Marri  Furk
1892 Rte 211 East
Middletown, NY 10941

March 1, 2017

In Reference To:   BOCES of Orange-Ulster
Invoice #10064

Professional Services

|  | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/21/2015 | Initial Telephone conversation. | 0.75<br>100.00/hr | NO CHARGE |
| 7/29/2015 | Consultation and review case w/ client.  Review email from client and Review CBA.  email client.  Discuss with client whether she should retain me.   Client paid for consultation.   Client thereafter retains my services on partial-fee/contingency basis. | 2.75<br>100.00/hr | 275.00 |
| 7/30/2015 | OCR & review docs.  Look at client emails | 0.50<br>100.00/hr | 50.00 |
| 8/1/2015 | Telephone conversation with client.  Review email from client | 0.50<br>100.00/hr | 50.00 |
| 8/6/2015 | Begin review of many emails from client, and begin drafting federal FLSA complaint. | 3.00<br>100.00/hr | 300.00 |
| 8/8/2015 | Work on EEOC Charge and draft federal complaint.  Telephone conversation with client.  email drafts to client for her review/editing/comment. | 3.50<br>100.00/hr | 350.00 |
| 8/10/2015 | Review and substially edit client's draft EEOC charge and email back to client.  Telephone call to client. | 1.75<br>100.00/hr | 175.00 |
|  | Review and substially edit client's draft EEOC charge and email back to client.  Telephone call to client. | 1.75<br>100.00/hr | 175.00 |
|  | Discuss draft EEOC charge with client. | 0.50<br>100.00/hr | 50.00 |

Ms. Marri  Furk                                                                          Page     2

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 8/11/2015 | Discuss more issues with client. | 0.42<br>100.00/hr | 42.00 |
|  | Telephone conversation with client re: death and possible FT hours.  client will request FT. | 0.50<br>100.00/hr | 50.00 |
| 8/12/2015 | Telephone conversation with client.  Discuss union email, her emails (which I will read at one time) and EEOC & FLSA courses of action. (Suggested to client the we keep telephone conversations short so as not to run up my time. | 0.33<br>100.00/hr | 33.00 |
| 8/20/2015 | Finalize EEOC Charge and federal lawsuit.  Prepare civil cover sheet and finalize federal complaint for filing.  File federal complaint. | 2.00<br>100.00/hr | 200.00 |
| 8/21/2015 | Telephone conversations and emails with client.  Put papers/waiver to BOCES in US Mail. | 0.33<br>100.00/hr | 33.00 |
| 9/4/2015 | Telephone conversation with client re: Workers' Comp issue (and my email response of yesterday) and also labor law issue. | 0.33<br>100.00/hr | 33.00 |
| 9/16/2015 | emails of past 2 days, and sign Stip re: federal case | 0.25<br>100.00/hr | 25.00 |
| 9/19/2015 | Review emails from client + some documents.  Write email to client. | 0.50<br>100.00/hr | 50.00 |
| 9/22/2015 | Telephone conversation with client re: Mr. Vargas potential destruction of documents on laptop. Telephone call to Mr. Rocco.  Obtain Opposing Counsel's contact info. Review client emails.   Prepare draft letter and send to client for review. | 1.75<br>100.00/hr | 175.00 |
|  | Review my draft letter with client. | 0.25<br>100.00/hr | 25.00 |
| 9/23/2015 | Review email from client and Telephone conversation with client.  Prepare & send supplemntal letter. | 0.50<br>100.00/hr | 50.00 |
| 9/29/2015 | Telephone conversation with client.  She will try to speak to Superintendent about new job offerings at BOCES. | 0.25<br>100.00/hr | 25.00 |
| 9/30/2015 | Telephone conversation with client.  email Orange HR. | 0.50<br>100.00/hr | 50.00 |
| 10/7/2015 | Telephone conversation with client. | 0.50<br>100.00/hr | 50.00 |
| 10/21/2015 | Telephone conversation with client. .5 hr.  Prepare template for client--new EEOC submission.  .25 hr. | 0.75<br>100.00/hr | 75.00 |

Ms. Marri Furk                                                                                          Page      3

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 10/21/2015 | further Telephone conversation with client (after sending draft). | 0.25<br>100.00/hr | 25.00 |
| 10/30/2015 | Review letters from Opposing Counsel re pre-motion conference, & propose settlement. | 0.33<br>100.00/hr | 33.00 |
|  | Review Opposing Counsels' letters.  Prepare draft response re: their desire for pre-motion conference and to move to dismiss.  My letter seeking mediation.  Request EEOC RTS letter.  email client. | 1.50<br>100.00/hr | 150.00 |
| 10/31/2015 | Review email of client. | 0.25<br>100.00/hr | 25.00 |
| 11/1/2015 | Telephone conversation with client.  .75 hr.  Prepare & fax/email letter to EEOC.  .25 hr.  Begin preparing Amended Complaint--email to client for her input.  .5 hr. | 1.50<br>100.00/hr | 150.00 |
| 11/2/2015 | Telephone conversation with Opposing Counsel Adam Rodd, Esq. | 0.25<br>100.00/hr | 25.00 |
| 11/3/2015 | Telephone conversation with client. | 0.25<br>100.00/hr | 25.00 |
|  | Finalize pre-motion letter to Court.  Fax & ECF-file. | 0.50<br>100.00/hr | 50.00 |
| 11/4/2015 | Review client's emails.  respond.    Look over email w/ "transcripts".   and email re FT position at BOCES. | 0.33<br>100.00/hr | 33.00 |
| 11/10/2015 | Review client's 3 emails. | 0.25<br>100.00/hr | 25.00 |
| 11/11/2015 | Review client's emails.  skim her returned Amended Complaint draft. | 0.50<br>100.00/hr | 50.00 |
|  | Telephone conversation with client. | 0.50<br>100.00/hr | 50.00 |
| 11/18/2015 | Telephone conversation with client re: info for amended complaint and Friday's upcoming court conference. | 0.50<br>100.00/hr | 50.00 |
| 11/20/2015 | Attend court conference. | 2.00<br>100.00/hr | 200.00 |
| 11/23/2015 | Telephone conversation with client.  Prepare draft email to Opposing Counsel and slight edits to draft Amended Complaint.  email Amended Complaint to client. Telephone conversation with client. | 0.50<br>100.00/hr | 50.00 |

Ms. Marri  Furk                                                                                    Page     4

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 11/24/2015 | Telephone conversation with client.  Revise Amended Complaint. email client. further revisions. email to Opposing Counsel. Telephone conversation with client re: version 6 of Amended Complaint for her further edit. | 2.75 100.00/hr | 275.00 |
| 11/27/2015 | Telephone conversation with client.  Receive her edits, and further revise those. | 1.75 100.00/hr | 175.00 |
| 11/28/2015 | Telephone conversations with client --long conversation re: amended complaint. | 0.75 100.00/hr | 75.00 |
| 12/4/2015 | Telephone conversation with client.  Revise and finalize Amended Complaint. ECF-file | 3.75 100.00/hr | 375.00 |
| 12/22/2015 | Telephone conversation with client x4 and her emails. Re-review her union letter.  1.5 hr.   Prepare emailed settlement proposal to Opposing Counsel. .25 hr. | 1.75 100.00/hr | 175.00 |
| 12/23/2015 | Telephone conversation with client (x4). | 0.75 100.00/hr | 75.00 |
| 12/27/2015 | Telephone conversation with client (early Sunday morning). Discuss FOIL and possible settlement proposal. | 0.50 100.00/hr | 50.00 |
| 1/4/2016 | Review client email re: CS exam.  Prepare draft response for client to sent. | 0.25 100.00/hr | 25.00 |
| 1/5/2016 | Revise client's letter re: ineligibility for civil service exam.  Review client's other emails. | 0.50 100.00/hr | 50.00 |
| 1/6/2016 | Review and respond to 2 emails from client. | 0.25 100.00/hr | 25.00 |
| 1/7/2016 | Review email from client re: Civil Service exam.  Prepare email to client. | 0.25 100.00/hr | 25.00 |
|  | Prepare Timeslips invoice and long email to client. | 0.50 100.00/hr | NO CHARGE |
| 1/13/2016 | Telephone conversation with client re: making a settlement demand, etc. | 0.50 100.00/hr | 50.00 |
|  | Additional telephone conversations with client re: FOIL and union.  Prepare email to Opposing Counsel.  Respond to Union's email (after discussing sanctions threat with client).  Telephone conversation to Union's attorney Matt Rocco. | 0.50 100.00/hr | 50.00 |
| 1/14/2016 | Telephone conversation with client  .25 hr.  Telephone conversation again with client.   Email Mr. Rocco for Union, and then exchange email w/ him.  .25 hr. | 0.50 100.00/hr | 50.00 |

Ms. Marri  Furk                                                                                            Page     5

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 1/19/2016 | Telephone conversation with client. | 0.25<br>100.00/hr | 25.00 |
| 1/30/2016 | Review Motion to Dismiss.  Begin opposition Memorandum of Law. | 2.50<br>100.00/hr | 250.00 |
| 1/31/2016 | Review client emails w/ attachemts.  create PDF file.  email client. | 2.50<br>100.00/hr | 250.00 |
|  | Continue working on Motion to Dismiss opposition.  Legal Research. | 3.00<br>100.00/hr | 300.00 |
| 2/2/2016 | Prepare email to client regarding my representation. | 0.25<br>100.00/hr | NO CHARGE |
|  | Read and respond to client's several emails of today.  0.75 hr. | 0.75<br>100.00/hr | 75.00 |
|  | Continue work on Memorandum of Law opposing Motion to Dismiss. Legal Research.  Email to client. | 7.00<br>100.00/hr | 700.00 |
| 6/20/2016 | Review email from client.   Prepare long email to client.  Review 2d email. Prepare response. | 0.50<br>100.00/hr | 50.00 |
| 11/3/2016 | Review Decision on Motion to Dismiss.  email same to client. | 0.50<br>100.00/hr | 50.00 |
| 12/2/2016 | Legal Research re: mediation standing order. Telephone conversation with Opposing Counsel for BOCES discussing case & mandatory mediation. Review Defendants' answers. | 0.75<br>100.00/hr | 75.00 |
| 12/9/2016 | Telephone conversation with court re: adjournment.  email Opposing Counsel. review draft sch. order. Give counter-proposal and mention supplemental pleading and RTS.  Emails to client. | 0.75<br>100.00/hr | 75.00 |
| 12/14/2016 | Telephone conversation w + email Opposing Counsel .  Download judge's form, and Prepare proposed Scheduleing order.  Email to Opposing Counsel. | 0.75<br>100.00/hr | 75.00 |
| 12/15/2016 | Telephone conversation w Opposing Counsel Matt, and discuss possiblilties re: union support for an arbitrration.  email client x4, and Telephone call to her. | 0.67<br>100.00/hr | 67.00 |
|  | Additional telephone calls and emails to client (no phone response). | 0.25<br>100.00/hr | 25.00 |
|  | Closely review District Court's decision and otherwise prepare for tomorrow's court conference. | 1.00<br>100.00/hr | 100.00 |

Ms. Marri  Furk                                                                                          Page      6

|            |                                                                                                                        | Hrs/Rate      | Amount    |
|------------|------------------------------------------------------------------------------------------------------------------------|---------------|-----------|
| 12/15/2016 | Telephone conversation with client re: strategy, 2d Amended Complaint and possible union arbitration of seniority.       | 1.50 100.00/hr | 150.00 |
| 12/16/2016 | Anticipated time attending District Court court conference (12/16/2016).                                                | 3.00 100.00/hr | 300.00 |
| 12/21/2016 | Review emails from Union. Place telephone call to Union.  Email client                                                  | 0.50 100.00/hr | 50.00 |
| 1/17/2017  | Prepare email to Opposing Counsel re: possible arbitration, and also email to client.                                    | 0.50 100.00/hr | 50.00 |
| 1/23/2017  | Prepare for conference call to Magistrate Judge Davison.  Conference call. .75 hr.  Emails and calls to client (yesterday and today).   .5  hr. | 1.25 100.00/hr | 125.00 |
| 1/24/2017  | Telephone call to and email to client-- still no response.                                                              | 0.25 100.00/hr | 25.00 |
| 1/28/2017  | Telephone calls and emails to to client each day for today and the last 6 days.  Still no response from client.  .5 hr.  -- 1/2 gratis. | 0.25 100.00/hr | 25.00 |
| 1/30/2017  | Finally receive email from client, requesting that I forward various documents to Mr. DiNardo.  Prepare email to him w/ various relevant documents. | 0.50 100.00/hr | 50.00 |
| 2/28/2017  | Continued emails/phone messages to client.  No response.  .5 hr.  Prepare Amended Complaint.  1 .5 hr.                    | 1.50 100.00/hr | 150.00 |
| 3/1/2017   | Review defect notice.  Re-file Amended Complaint w/ court order.   email to client.  .5 hr.                               | 0.50 100.00/hr | 50.00 |

|            |                              | Hrs/Rate | Amount |
|------------|------------------------------|----------|--------|
|            | For professional services rendered | 79.99 | ~~$7,849.00~~ ~~XXXXXXX~~ |
|            | Additional Charges :         | x $400/hour =$32,000 | |
| 8/20/2015  | Federal Court -- filing fee. |          | 400.00 |
| 11/20/2015 | Attend court conference.     |          | 25.00 |
|            | Total additional charges     |          | $425.00 |
|            | Total amount of this bill    |          | ~~$8,274.00~~ ~~XXXXXXX~~ |
|            | Accounts receivable transactions |      | $32,425 |
| 11/5/2015  | Payment - thank you.. Check No. 1072 |  | ($500.00) |
| 1/4/2016   | Check dated Dec 28, 2015.  Payment - thank you . Check No. 1078 |  | ($1,000.00) |

Ms. Marri  Furk                                                        Page      7

|  | Amount |
|---|---|
| 2/5/2016  Payment - thank you. Check No. 1083 | ($2,000.00) |
| Total payments and adjustments | ($3,500.00) |
| Balance due | ~~$6,774.00~~ |

Balance due:  $28,925

EXHIBIT "5"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MARRI FURK,

                            Plaintiff,

                                                    SECOND AMENDED &
                                                    SUPPLEMENTAL COMPLAINT

                                                    15 Civ. 6594

            -against-

ORANGE-ULSTER BOCES, and
UNITED PUBLIC SERVICE EMPLOYEES'
UNION ("UPSEU"),
                            Defendants.
-----------------------------------------------------------------

        Plaintiff Marri Furk, through the undersigned counsel Michael D. Diederich, Jr.,

complains of the Defendant as follows:

## Prefatory Statement

        1.   This is an action for damages and injunctive relief against defendant Orange-Ulster

BOCES ("Defendant"), for its discriminatory reduction of hours and *de facto* termination of

plaintiff's employment, in violation of, *inter alia,* Title VII of the Civil Rights Act of 1964, the

Age Discrimination in Employment Act ("ADEA"), and the nonpayment of wages and overtime,

in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207("FLSA"), and parallel

state law.


## THE PARTIES

        2.   Plaintiff Marri Furk is, and was at all times relevant herein, citizen of the United

States and a resident of the City of Middletown, County of Orange, State of New York.

        3.   Defendant Orange-Ulster BOCES (hereinafter "Defendant" or "BOCES"), upon

information and belief, is and at all times relevant herein was a business corporation organized

and existing under the laws of the State of New York, with headquarters in Goshen, New York.

4. Defendant United Public Service Employees' Union ("UPSEU" or "Union"), upon information and belief, is a union organized and existing under the laws of the State of New York, with headquarters located at 3555 Veterans Highway, Suite H, Ronkonkoma, NY 11779 .

5. Defendant is an employer within the meaning of 42 U.S.C. § 2000e-(b).

6. Upon information and belief, Defendant has, at all times herein relevant, been authorized to conduct business in New York State.

## JURISDICTION AND VENUE ALLEGATIONS

7. This court has jurisdiction over this action under 29 U.S.C. § 207, 42 U.S.C. § 2000e-5(f), 29 U.S.C. § 207 *et seq*., and under 28 U.S.C. § 1331 and § 1343(4).

8. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

### Overview as to non- wage claims

9. Plaintiff became an employee of the BOCES in 2001. Plaintiff has been an employee of BOCES for over 14 years.

10. Plaintiff's date of hire by BOCES was April 2, 2001.

11. Plaintiff is a 55 year old woman.

12. Plaintiff is a union member, namely, a member of the United Public Service Employees' Union ("UPSEU" or "Union").

13. Plaintiff had an exemplary and unblemished employment record during the whole period of time of her employment, to the present.

14. Yet Plaintiff has been treated adversely, and on July 1, 2015, changed by BOCES from a full-time employee (40 hours per week plus health insurance and other benefits) to a part-time employee (16 hours per week with no health insurance or benefits).

15. Upon information and belief, this demotion was based upon unlawfully discriminatory and retaliatory motivations and actions by BOCES and the Union.

16. As relevant in this complaint, Plaintiff was also retaliated against by BOCES for complaining of unlawful non-payment of wage and overtime compensation, in violation of the FLSA and NYS Labor Law.

17. This retaliation resulted in a reduction in hours amounting to a *de facto* job termination, and a constructive discharge.

**Unpaid wages and overtime (FLSA facts)**

18. In the past 3 years of Plaintiff's employment, Plaintiff's hourly rate of pay was $41.53.

19. Specifically, as a full-time employee in 2012 and 2013, Plaintiff earned $78,083 per year, for 47 weeks of work (40 hours per week).

20. During the 3 years preceding the filing of this Complaint, Plaintiff was not paid for her work (straight time, and overtime) for Defendant BOCES as set forth below.

21. Beginning in August 2012, Plaintiff was not paid for working through lunch, and working beyond her normal work day, as follows:

    a.  Unpaid regular time:

| Dates | # of unpaid hours |
|---|---|
| August 2012 – December 31, 2012 | 272.2 hours |

Total unpaid "straight time" hours in 2012 = **272.2 hours**

22. In 2013, Plaintiff was not paid for working through lunch, and working beyond her normal work day, as follows:

    b.  Unpaid regular time:

| Dates | # of unpaid hours |
|---|---|

3

January 1, 2013 – December 31, 2013     258.4 hours

    c.   Unpaid overtime:

<u>Dates</u>                    <u># of unpaid overtime hours</u>

January 1, 2013 – December 31, 2013     6.67 hours

Total unpaid "straight time" hours in 2013 = **258.4 hours**.

Total unpaid "overtime" hours in 2013 = **6.67 hours**.

23. In 2014, Plaintiff was not paid for working through lunch, and working beyond her normal work day, as follows:

      a.   Unpaid regular time:

<u>Dates</u>                       <u># of unpaid hours</u>

January 1, 2014 – December 31, 2014     238.82 hours

      b.   Unpaid overtime:

<u>Dates</u>                    <u># of unpaid overtime hours</u>

January 1, 2014 – December 31. 2014     23.68 hour

Total unpaid "straight time" hours in 2014 = **238.82 hours**

Total unpaid "overtime" hours in 2014 = **23.68 hours.**

24. In 2015, Plaintiff was not paid for working through lunch, and working beyond her normal work day, as follows:

      a.   Unpaid regular time:

<u>Dates</u>                       <u># of unpaid hours</u>

January 1, 2015 – December 31, 2015     127.72 hour

      b.   Unpaid overtime:

<u>Dates</u>                    <u># of unpaid overtime hours</u>

January 1, 2015 – December 31, 2015     17.32 hour

Total unpaid "straight time" hours in 2015 = **127.72 hours.**

Total unpaid "overtime" hours in 2015 = **17.32 hours.**

25. In sum, the total unpaid "straight time" hours between August 2012 and present are: 897.14 hours, and the total unpaid "overtime" hours between August 15, 2012 and present, 47.67 hours. Plaintiff is therefore owed:

4

$37,258.22 (straight time)

$ 2,969.61 (overtime at 1.5x straight time rate), and

$40,227.83 (liquidated damages, equal to above unpaid wages),

for a total of **$80,455.64 due Plaintiff.**

26. Because BOCES failed and refused to pay Plaintiff for the above hours worked, Plaintiff complained to BOCES.

27. Specifically, on October 2, 2014, Plaintiff complained to Pam Rourke, Assistant Superintendent for Human Resources and Michael Wilson, UPSEU (Union) representative, in regard to working overtime throughout the following years: 2011, 2012, 2013 and 2014, and constantly working through her lunch hours without being compensated.

28. Plaintiff gave examples of working past her scheduled 2:30 pm clock out time, while working for Operations and Maintenance during 2012-2013.

29. Plaintiff's schedule had been reduced to a 32 hour work week in 2012-2013. Plaintiff also complained to her Director of Technology, Mr. Vyas, regarding working this overtime and not being compensated. Mr. Vyas was aware of the overtime worked by Plaintiff, as he consistently checked each of his employees' time sheets every day. Mr. Vyas' secretary also checked the time sheets as well.

30. Plaintiff also complained to Mr. Vyas again around April 17, 2015 in regard to working overtime for an event on April 16, 2015 for which she was not compensated.

31. This resulted in Plaintiff being required to meet with Mr. Vyas, Debra Heppes, (Mr. Vyas' superior) and Michael Wilson, UPSEU representative on April 22, 2015. At that time, Plaintiff was reprimanded for staying after hours for this event and was accused of owing BOCES 10 ½ hours of time.

32. Debra Heppes then offered her office to Mr. Wilson to "counsel" Plaintiff about

5

working "unauthorized" overtime.

33. Approximately 4 weeks thereafter, BOCES demoted Plaintiff from full-time to part-time employment.

34. Upon information and belief, this demotion was in reprisal for Plaintiff complaining about not being paid the wages and overtime due her.

35. Upon information and belief, the reprisal was also the result of gender and age discrimination, as described further below.

**<u>Overview of Plaintiff's gender and age discrimination claims</u>**

36. Plaintiff is a Civil Service Employee of BOCES with a competitive class title of Computer Network Specialist (CNS).

37. Other Civil Service titles referenced in this complaint are: Senior Network Specialist (SNS), Technical Support Assistant (TSA), and Technical Assistant (TA)

38. Upon information and belief, Plaintiff and another CNS level technician (Mr. Hargadon) were not selected for a promotional opportunity, based on age discrimination.

39. Mr. Engineer, a much younger Indian male (late 30's), was promoted instead to Senior Network Specialist.

40. Plaintiff is the only older female working in a male dominated CNS title.

**<u>Gender and Age Discrimination</u>**

41. On May 26, 2015 Plaintiff was notified that her work schedule would be reduced to 16 hours from 40 hours per week, all health insurance benefits terminated, vacation and sick time benefits reduced as well as NYS retirement system contributions reduced.

42. Those present at this meeting were Debra Heppes, Assistant Superintendent for

Finance/BOCES, Pam Rourke, Assistant Superintendent for Human Resources/BOCES, Bhargav Vyas, Director of Technology/BOCES, and Michael Wilson, UPSEU representative.

43. Plaintiff questioned Pam Rourke, Assistant Superintendent for Human Resources as to why any other technicians' hours were not be reduced simultaneously, as was done with three CNS title technicians in 2012-2013, namely, Apurva Engineer, Perry Walsh, and Marri Furk.

44. Both Mr. Engineer and Mr. Walsh (early 40s) were ranked lower on the CNS Layoff/Work Reduction Roster than Plaintiff.

45. Pam Rourke's immediate response was that this was not permitted under Civil Service Law.

46. UPSEU's labor relations/civil service attorney, Michael Wilson did not disagree.

47. Upon information and belief, Civil Service law does not allow work hour reduction for higher ranking members (Competitive Class titles) in a layoff unit until the lowest ranking member is laid off first and then a year must pass before the next lowest ranking member in the unit can experience work hour reduction or layoff.

48. However, Plaintiff was not the lowest ranking member in 2012, as reported on an Orange County Civil Service CNS Layoff/Work Reduction Roster, obtained from Gary Hickey, UPSEU.

49. Yet in 2012-2013, and again in 2014, UPSEU, through both Gary Hickey and Michael Wilson, aided and abetted BOCES in this discriminatory action against Plaintiff.

50. This is evidenced in Gary Hickey's response to Plaintiff's complaint in a 2014 email: "just as you experienced this reduction 2 years ago, under the Taylor Law, an employer has the right to determine an employee's hours, to increase/decrease same and to determine the level of service and the size of the workforce".

51. In 2012, UPSEU permitted BOCES to reduce work hours of Plaintiff while two other (much younger male) CNS members (namely, Apurva Engineer and Perry Walsh) were ranking lower than Plaintiff, as reported on an Orange County Civil Service CNS layoff/work reduction roster obtained from Gary Hickey of UPSEU.

52. Upon information and belief, this demonstrates UPSEU's and BOCES' bias toward saving younger males' jobs by unlawfully manipulating Plaintiff's standing on the Civil Service CNS layoff roster.

53. BOCES, through its Director of Technology, Mr. Vyas, later promoted these two CNS level technicians (Mr. Engineer and Mr. Walsh).

54. Upon information and belief, Mr. Vyas did this in order to remove them from a title where they would be subject to layoff and work hour reduction.

55. The lowest ranking member was Mr. Apurva Engineer, a much younger Indian male. Mr. Engineer was promoted provisionally to a SNS level position in March or April 2014 while Plaintiff was out on a medical leave.

56. Since Mr. Engineer's promotion, he has not been assigned to any component school districts where he would earn more revenue for the BOCES Technology department.

57. Mr. Engineer has remained in his current position on campus performing only desktop level work and not SNS level work.

58. Mr. Vyas has kept Mr. Engineer in this position, upon information and belief, because he knows that Mr. Engineer does not have the skill to perform SNS level work.

59. Instead, Mr. Vyas hired another SNS level technician, Mr. Zuckrow, who was #2 on a senior civil service eligibility list with a score of 100% (as well as all 14 other candidates higher than Mr. Engineer with scores of 100%). Mr. Engineer ranked #15 on this list with a score of

8

90%. Mr. Zuckrow was assigned to a component school district on July 1, 2015, to perform SNS level work instead of Mr. Engineer.

60. BOCES had 6 CNS technicians with the same appointment dates to permanent status (7/1/2004) for the following: Ralph Roda, Bevan Molina, William Wiand, Marri Furk, Steven (Scott) Kox and John Swendsen.

61. For layoff/work reduction decisions, precedent has been set at BOCES to use employee's "hire date" for seniority purposes in case of a "tie" in the appointment dates.

62. Where appointment dates are not used, the "hire date" is utilized to determine ranking on a unit's layoff roster.

63. This has always been prior and present practice in the Clerical/Tech bargaining unit as well as all other bargaining units within BOCES.

64. In Plaintiff's case, BOCES, namely, Marguerite Flood, former Assistant Superintendent for Human Resources, and Bhargav Vyas, Directory of Technology, changed the prior practice methodology, and instead used a "test score" to determine ranking between Plaintiff and one other younger male (John Swendsen) on the CNS layoff roster.

65. This favored this younger male (Mr. Swendsen - hire date of 1/6/03), and ultimately placed Plaintiff (hire date of 4/2/01) at lowest ranking position on CNS layoff roster.

66. If BOCES properly used the "hire date" of John Swendsen (1/6/03) ,which was the proper method to be used and was used for the other two CNS technician's with the same appointment dates, then John Swendsen (hire date of 1/6/03) is actually the lowest ranking CNS technician.

67. Therefore, Plaintiff should never have suffered any work hour reduction from July 1, 2012 to present.

68. The above manipulation was done by BOCES and the Union, upon information and belief, in response to BOCES receiving an email from Orange County Civil Service indicating that Mr. Swendsen did not qualify for veteran's status.

69. Upon information and belief, Civil Service Law gives Veteran's credit of 2 to 5 years for seniority purposes (to backdate a member's standing on a layoff/work reduction roster).

70. Two other technicians (Steven "Scott" Kox and William Wiand) also had the same appointment dates as Plaintiff and the other younger male (John Swendsen, approx.. 45 years old). They were given seniority purportedly based on Veteran's status and not "test score."

71. Upon information and belief, Civil Service Law defines Veteran's status is given only to wartime veterans.

72. One technician, Mr. Wiand, likely qualified for such Veteran's status.

73. However, the other younger male technician given Veteran's status (Mr. Kox - hire date of 4/23/01) was <u>not</u>, upon information and belief, a qualified wartime veteran.

74. Mr. Kox's date of birth (October 1960) and military service dates indicate that he did not serve in any wartime conflicts. Mr. Kox's employment with BOCES began on April 23, 2001.

75. In addition, two other younger male CNS technicians (Ralph Roda and Bevan Molina) had the same appointment dates as Plaintiff, but were given seniority based on their "hire date", as evidenced by UPSEU's written response to Plaintiff: "Other members in your title have an earlier hire date than you and are senior to you."

76. This is further evidence of BOCES discrimination towards Plaintiff and UPSEU's aiding in this discrimination.

77. Thus, Plaintiff experienced a reduction of hours while younger males ranked lower in

CNS title did not suffer such reduction.

78. Upon information and belief, these younger males did not complain about not being paid wages and overtime.

79. UPSEU discriminated against Plaintiff as evidenced in UPSEU's written response to Plaintiff that "seniority does not affect [BOCES'] management authority."

80. Seniority in fact does affect BOCES management authority by requiring BOCES to follow Civil Service Law in reducing work hours or laying off the actual lowest ranking member in the layoff unit, not the member that BOCES manipulated to be the lowest ranking member (Plaintiff).

81. Seniority was improperly given to younger, male CNS technicians over Plaintiff.

82. Particularly discriminatory towards Plaintiff is UPSEU's written response to Plaintiff that "Other members in your title have an earlier hire date than you and are senior to you."

83. This is contradicted in UPSEU's statement "Your provisional hire date does not affect your permanent hire date and does not count for your calculation for seniority purposes.

84. BOCES gave seniority (over Plaintiff) to two other younger males (Ralph Roda and Bevan Molina) in the CNS title "due to their provisional or earlier hire date".

85. This is evidenced by UPSEU's statement as well as the reported ranking on an Orange County Civil Service CNS layoff roster obtained from Gary Hickey, UPSEU. Plaintiff's hire date DOES count for her seniority over two CNS technicians.

86. Moreover, seniority was in fact a primary consideration based upon "prior practice" in union-member decision-making as evidenced by this UPSEU statement:  "Other members in your title have an earlier hire date than you and are senior to you".

**Medical Leave under FMLA**

87. On March 6, 2014, Plaintiff took eight weeks medical leave under the Family Medical Leave Act (FMLA), to which she was entitled.

88. This leave was for a right shoulder and elbow injury.

89. This ailment did not create an obstacle to Plaintiff being considered for, or interviewed for, a promotional opportunity. Yet Plaintiff was not interviewed or considered.

90. Specifically, while Plaintiff was on FMLA leave, Defendant BOCES, through its Director of Technology, Mr. Bhargav Vyas (Indian male, approximately 40 years old) interviewed and promoted a much younger Indian male, namely Apurva Engineer, to a Senior Network Specialist technician (SNS).

91. Defendant BOCES failed to provide Plaintiff with an opportunity to compete for this position, by intentionally failing to interview her for this position.

92. Upon information and belief, the fact that Plaintiff was on a medical leave is not a *bona fide* reason for a) not interviewing Plaintiff of the job opportunity and b) not affording Plaintiff an opportunity to compete for the position, especially as competition is required under the N.Y.S. civil service law.

93. Upon information and belief, BOCES did post this job opportunity, although posting was required. Posting would have put Plaintiff on notice that the position was available.

94. As a result of her complaint (that Mr. Engineer was promoted without Plaintiff's knowledge of an interview being held for such job opportunity), within 2 months of Plaintiff returning from FMLA leave, BOCES reduced Plaintiff's hours to 32 hours per week, beginning July 1, 2014.

95. In contrast, no such work hour reduction was forced upon the much younger, Indian

male co-worker, Mr. Engineer.

96. Moreover, Mr. Engineer had not yet even taken the promotional exam and had not been appointed to permanent status until November 2014.

97. Yet Mr. Engineer became the *de facto* selectee, and, upon information and belief, this was obvious to all.

98. This is evidenced by his selection over a much more experienced, skilled and qualified older CNS technician (Mr. Jim Hargadon**),** who also interviewed for this promotion while Plaintiff was out on medical leave.

99. This technician was also working in two school districts and would have earned more revenue than Mr. Engineer for the Technology department if he were promoted to "SNS", as Mr. Engineer has not been contracted to any school districts since his promotion (or ever, for that matter).

100.    Notwithstanding BOCES reduction in Plaintiff's hours, BOCES Director of Technology, Mr. Vyas, complained about not having enough technical staff available to accommodate work requests from school districts (even though he reduced Plaintiff's hours). The school districts are BOCES customers.

101.    These work requests were typical of work performed by Plaintiff, and work which Plaintiff should have been allowed to do.

**Pretextual excuse for de facto termination**

102.    On August 4, 2015, another full time CNS title position opened within the Technology department due to the passing of one of the staff members.

103.    Plaintiff later inquired of BOCES, namely Debra Heppes and Bhargav Vyas, the possibility of returning to full time status (40 hours per week).

104.    BOCES official reason for reducing Plaintiff to part time status was due to "economic reasons".

105.    BOCES refusal to reinstate Plaintiff to full time status, even though this full-time position is now vacant is continued reprisal.

106.    BOCES continues to give extra work (to cover work that had been performed by Plaintiff alone) to six to seven other technicians and pays overtime to younger males.

107.    Three component school districts have been utilizing BOCES' CNS title technical support.

108.    In an email response from Pam Rourke (HR) to Plaintiff, "If they get more school districts requesting services pursuant to your job specification your hours could be increased."

109.    BOCES, however, is only promoting the services of SNS and TSA level support technicians to the school districts, so as to eliminate a BOCES CNS title technical position, specifically Plaintiff's CNS position.

110.    BOCES claims that it offered a list of CNS technicians to two school districts for consideration, but said school districts refused. One school district actually said that they did not "know" these technicians. BOCES has never offered names of the technicians to the districts in the past, but has just enlisted CNS technicians to cover the requests from the school districts.

111.    As further evidence, in September 2015, Mr. Vyas sent Plaintiff and another CNS technician to one of the school districts that "didn't want Plaintiff or 'CNS' technicians".

112.    This district was very pleased and appreciative of Plaintiff's work.  This was expressed by the district Technology Director, Sarah Hadden.

113.    October 7, 2015, Plaintiff met with Debra Heppes, Assistant Superintendent for Finance, and William Hecht, Superintendent of BOCES, to discuss applying for a technical

position posted within BOCES and to discuss being reinstated to full time status (40 hours per week).

114.    Debra Heppes' response was that, "two school districts don't want you."

115.    Plaintiff has not worked in the school districts for about 6 years, with the exception of two districts.

116.    Since that time, most Technology Directors in the school districts are new hires and do not know Plaintiff to "not want her" to work for their district.

117.    Plaintiff recently worked for one school district that Debra Heppes had said "didn't want you".

118.    This district had sent an email praising Plaintiff two years ago.

119.    As recently as September 4, 2015, same district was very pleased with Plaintiff's job performance.

120.    As a matter of fact, Plaintiff's supervisor continued to send Plaintiff to this district this past September 2015, as referenced in a recent email.

121.    Mr. Hecht said he was concerned about "districts not wanting a technician" and would investigate.

122.    Plaintiff asked Mr. Hecht to inform her of the results of his investigation. To date, he has not contacted Plaintiff.

123.    Plaintiff has experience and skill in areas of work that two or three other CNS technicians and one SNS technician do not have.

124.    The other male CNS technicians' skill sets similar to Plaintiff, have not been an issue. However, for Plaintiff, as an older female, it appears to be an issue.

125.    As a matter of fact, three CNS technicians and one SNS technician, namely Mr.

15

Engineer, perform similar duties as Plaintiff and do not have other significant skill sets.  Yet
BOCES assigns other CNS technicians with work for the school districts.

### Pattern and Practice of unlawful discrimination

126.    For many years, Plaintiff's supervisors have had a practice of giving her low
level, menial jobs.

127.    When Plaintiff asked to work on current technology, she was often refused (by
her former and present supervisors', including Mr. Vyas).

128.    Plaintiff specifically asked to work with the VOIP phone system at BOCES many
times.  Plaintiff was always refused, even though she had the qualification to work on the VOIP
phone system.

129.    Only two higher level technicians work on this system and now are starting to
control access to a VOIP phone system in one of the school districts as well.

130.    Plaintiff has years of experience programming/configuring phones on large scale
phone systems, as well as completing the cross-connects to the frames (IDF's and MDF's).

131.    Plaintiff also expressed interest in working with database systems.  Plaintiff has a
computer programming background (an associate's degree) and therefore this is an area of work
which she should have been allowed to perform.  However, Plaintiff was only given access to
reset passwords, and as a consequence, was evaluated by Mr. Vyas as only having "basic help
desk skills".

132.    However, CNS technicians who are younger males are given such opportunity
with database systems, even though they had less background and experience in this than did
Plaintiff.

133.    Moreover, the young male technicians (and not Plaintiff, the older woman) were

given access to work on the surveillance camera systems, servers, and internet content filtering systems.

134.    Thereafter, Plaintiff was told that her skill set needed improvement (even though BOCES management was deliberately depriving her of the opportunity for skill set improvement), and, ostensibly, that she cannot be utilized in the school districts because of her skill set.

135.    Thus, the younger male technicians kept a strangle hold on who had access to all systems in BOCES and to the work needed by the school districts.

136.    When proposed layoffs in the Technology department threatened one higher level technician's and the lowest ranking CNS level technician's (Mr. Engineer) positions, Plaintiff was demoted from her position on campus in Special Education where she was performing very well.

137.    She was then transferred to working as a "help desk technician" in another location.

138.    Mr. Engineer who was hired as BOCES "help desk technician" (TA-Technical Assistant title) was given Plaintiff's position in Special Ed.

139.    BOCES, namely Mr. Vyas, since that time, has continued to give Plaintiff almost only low level, menial and physically exhausting, labor intensive work.

**EEOC Right to Sue letter**

140.    Plaintiff has obtained a Notice of Right to Sue letter as to both BOCES and the Union from the U.S. EEOC.  *See*, Complaint Exhibits "1" and "2", attached.

**Supplemental (new) facts**

141.    In mid-January 2016, work was given to a male technician which, as a result, created additional overtime work for other male employees.

142.    This work could have been given to Plaintiff, to be performed at a "straight time" rate rather than an overtime rate.

143.    Thus, it would have been economically advantageous to give Plaintiff this additional work, who was fully qualified to perform such work, rather than giving this work to her male colleagues.

144.    My client believes this decision-making involves gender discrimination and additional reprisal against Plaintiff.

**New EEOC Right to Sue letter**

145.    Plaintiff received a new Notice of Right to Sue letter from the U.S. EEOC on or about December 1, 2016.  *See*, Complaint <u>Exhibits</u> "3", attached.

FIRST CLAIM FOR RELIEF—<br>
for Unpaid Wages and Overtime, and Retaliation, in Violation of the<br>
Fair Labor Standards Act of 1938,<br>
29 U.S.C.A. § 207(a)(1)("FLSA")

146.    Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

147.    Plaintiff was not paid for work she performed for Defendant BOCES.

148.    Specifically, Plaintiff was not paid for various hours of "straight" time that she worked, and also was not paid for various hours of overtime work (beyond 40 hours per week) that she worked.

149.    Plaintiff was damaged thereby, in the sum of $80,455.64, including liquidated

damages.

150. Plaintiff complained to BOCES about not being paid wages and overtime.

151. Defendant responded with retaliation, by taking adverse action against Plaintiff through reducing Plaintiff's hours from full-time with benefits, to part-time without benefits—a *de facto* job termination.

152. Plaintiff was further damaged thereby, and is also entitled to a mandatory award of attorney's fees under the FLSA.

153. Plaintiff was damaged thereby.

### SECOND CLAIM FOR RELIEF—
### GENDER DISCRIMINATION AND RETALIATION
### IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e

154. Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

155. Plaintiff was wrongfully discriminated against and retaliated against Plaintiff, and adverse job action taken against her, on account of her gender.

156. Plaintiff has been damaged thereby.

### THIRD CLAIM FOR RELIEF—
### AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE
### AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

157. Plaintiff hereby repeats and reiterates each of the allegations above as if full repeated here at length.

158. Upon information and belief, "but for" Plaintiff's age, Defendant would not have had such animus regarding Plaintiff.

159. Plaintiff has been damaged thereby.

**FOURTH CLAIM FOR RELIEF—**
**SUPPLEMENTAL CLAIM UNDER NEW YORK HUMAN RIGHTS LAW AND LABOR LAW**

160.     Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

161.     Defendants violated the State law provisions of the N.Y.S. Human Rights Law, by discriminating against Plaintiff on the basis of her gender and age.

162.     Defendants violated the State law provisions of the N.Y.S. Human Rights Law, by discriminating against Plaintiff on the basis of her age.

163.     Defendants violated the State law provisions of the N.Y.S. Human Rights Law, by discriminating against Plaintiff on the basis of her gender.

164.     Defendants violated the State law provisions of the N.Y.S. Human Rights Law, by retaliating against her on the basis of her gender, her age, and complaining about not being paid required overtime wages.

165.     Defendant violated the State law provisions of the N.Y.S. Labor Law, by failing to pay Plaintiff earned wages and overtime.

**DEMAND FOR JURY**
*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment containing the following relief:

1.  An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay compensating plaintiff for loss of past and future salary and benefits;

2.  An award of damages to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3.  An award of punitive and liquidated damages;

4.  An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's full-time employment and benefits with Defendant BOCES;

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated: Stony Point, New York
      February 28, 2017

                    Respectfully submitted,

                       /S/

                    MICHAEL D. DIEDERICH, JR.
                    *Attorney for Plaintiff   MD 2097*
                    361 Route 210
                    Stony Point, NY 10980
                    (845) 942-0795
                    Mike@DiederichLaw.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Marri Furk**<br>**1892 Route 211 East**<br>**Middletown, NY 10941** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2015-03496** | **Debra L. Richards,**<br>**Investigator** | **(212) 336-3768** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin Berry*

**Kevin J. Berry,**
**District Director**

11/20/15

*(Date Mailed)*

Enclosures(s)

cc:

| | |
|---|---|
| **Director of Human Resources**<br>**ORANGE ULSTER BOCES**<br>**53 Gibson Road**<br>**Goshen, NY 10924** | **Michael D. Diederich, Jr.**<br>**LAW OFFICE OF MICHAEL D DIEDRICH, JR.**<br>**361 Route 210**<br>**Stony Point, NY 10980** |

COMPLAINT EXHIBIT 1

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Marri Furk<br>1892 Route 211 East<br>Middletown, NY 10941 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2016-00196** | **Debra L. Richards,**<br>**Investigator** | **(212) 336-3768** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin Berry*
_____
**Kevin J. Berry,**
**District Director**

11/20/15
_____
*(Date Mailed)*

Enclosures(s)

cc:

**Director of Legal Affairs**
**UNITED PUBLIC SERVICE EMPLOYEE'S UNION**
**3555 Veterans Highway, Suite H**
**Ronkonkoma, NY 11779**

COMPLAINT EXHIBIT 2

EEOC Form 161 (11/16)   **U.S. E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

## D**ISMISSAL AND** N**OTICE OF** R**IGHTS**

| To:  **Marri Furk** **1892 Route 211 East** **Middletown, NY 10941** | From:  **New York District Office** **33 Whitehall Street** **5th Floor** **New York, NY 10004** |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |  |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| **520-2017-00386** | **Debra L. Richards,** **Investigator** | | **(212) 336-3768** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|  |  |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [X] | Other **CP currently in court** |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed _WITHIN 90 DAYS_ of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred _more than 2 years (3 years)_ before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Kevin J. Berry,**
**District Director**

NOV 2 9 2016

*(Date Mailed)*

cc:   **Attn: Director of Human Resources**
**ORANGE ULSTER BOCES**
**53 Gibson Road**
**Goshen, NY 10924**

**Michael D. Diederich, Jr.**
**MICHAEL D. DIEDERICH, JR  ATTORNEY AT LAW**
**361 Route 210**
**Stony Point, NY 10980**

COMPLAINT EXHIBIT 3

EXHIBIT "6"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
MARRI FURK,

                              Plaintiff,

                                **AMENDED COMPLAINT**

   -against-

                                15 Civ. 6594  (NSR)

ORANGE-ULSTER BOCES, and
UNITED PUBLIC SERVICE EMPLOYEES'
UNION ("UPSEU"),

                              Defendants.
------------------------------------------------------------

Plaintiff Marri Furk, through the undersigned counsel Michael D. Diederich, Jr.,

complains of the Defendant as follows:

## Prefatory Statement

1.   This is an action for damages and injunctive relief against defendant Orange-Ulster

BOCES ("Defendant"), for its discriminatory reduction of hours and *de facto* termination of

plaintiff's employment, in violation of, *inter alia,* Title VII of the Civil Rights Act of 1964, the

Age Discrimination in Employment Act ("ADEA"), and the nonpayment of wages and overtime,

in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207("FLSA"), and parallel

state law.

## THE PARTIES

2.   Plaintiff Marri Furk is, and was at all times relevant herein, citizen of the United

States and a resident of the City of Middletown, County of Orange, State of New York.

3.   Defendant Orange-Ulster BOCES (hereinafter "Defendant" or "BOCES"), upon

information and belief, is and at all times relevant herein was a business corporation organized

and existing under the laws of the State of New York, with headquarters in Goshen, New York.

4.   Defendant United Public Service Employees' Union ("UPSEU" or "Union"), upon information and belief, is a union organized and existing under the laws of the State of New York, with headquarters located at 3555 Veterans Highway, Suite H, Ronkonkoma, NY 11779 .

5.   Defendant is an employer within the meaning of 42 U.S.C. § 2000e-(b).

6.   Upon information and belief, Defendant has, at all times herein relevant, been authorized to conduct business in New York State.

## JURISDICTION AND VENUE ALLEGATIONS

7.   This court has jurisdiction over this action under 29 U.S.C. § 207, 42 U.S.C. § 2000e-5(f), 29 U.S.C. § 207 *et seq*., and under 28 U.S.C. § 1331 and § 1343(4).

8.   Venue is proper in this Court.

## FACTUAL ALLEGATIONS

**Overview as to non- wage claims**

9.   Plaintiff became an employee of the BOCES in 2001. Plaintiff has been an employee of BOCES for over 14 years.

10. Plaintiff's date of hire by BOCES was April 2, 2001.

11. Plaintiff is a 55 year old woman.

12. Plaintiff is a union member, namely, a member of the United Public Service Employees' Union ("UPSEU" or "Union").

13. Plaintiff had an exemplary and unblemished employment record during the whole period of time of her employment, to the present.

14. Yet Plaintiff has been treated adversely, and on July 1, 2015, changed by BOCES from a full-time employee (40 hours per week plus health insurance and other benefits) to a part-time employee (16 hours per week with no health insurance or benefits).

15. Upon information and belief, this demotion was based upon unlawfully

2

Pages 3 - 16 omitted

given access to work on the surveillance camera systems, servers, and internet content filtering systems.

134.     Thereafter, Plaintiff was told that her skill set needed improvement (even though BOCES management was deliberately depriving her of the opportunity for skill set improvement), and, ostensibly, that she cannot be utilized in the school districts because of her skill set.

135.     Thus, the younger male technicians kept a strangle hold on who had access to all systems in BOCES and to the work needed by the school districts.

136.     When proposed layoffs in the Technology department threatened one higher level technician's and the lowest ranking CNS level technician's (Mr. Engineer) positions, Plaintiff was demoted from her position on campus in Special Education where she was performing very well.

137.     She was then transferred to working as a "help desk technician" in another location.

138.     Mr. Engineer who was hired as BOCES "help desk technician" (TA-Technical Assistant title) was given Plaintiff's position in Special Ed.

139.     BOCES, namely Mr. Vyas, since that time, has continued to give Plaintiff almost only low level, menial and physically exhausting, labor intensive work.

**EEOC Right to Sue letter**

140.     Plaintiff has obtained a Notice of Right to Sue letter as to both BOCES and the Union from the U.S. EEOC.  *See*, Complaint Exhibits "1" and "2", attached.

**Timeline**

141.  Plaintiff has attached a timeline of events, and incorporates the timeline by reference.  *See*, Complaint Exhibit "3", attached.

### FIRST CLAIM FOR RELIEF—
### FOR UNPAID WAGES AND OVERTIME, AND RETALIATION, IN VIOLATION OF THE
### FAIR LABOR STANDARDS ACT OF 1938,
### 29 U.S.C.A. § 207(a)(1)("FLSA")

142.  Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

143.  Plaintiff was not paid for work she performed for Defendant BOCES.

144.  Specifically, Plaintiff was not paid for various hours of "straight" time that she worked, and also was not paid for various hours of overtime work (beyond 40 hours per week) that she worked.

145.  Plaintiff was damaged thereby, in the sum of $80,455.64, including liquidated damages.

146.  Plaintiff complained to BOCES about not being paid wages and overtime.

147.  Defendant responded with retaliation, by taking adverse action against Plaintiff through reducing Plaintiff's hours from full-time with benefits, to part-time without benefits—a *de facto* job termination.

148.  Plaintiff was further damaged thereby, and is also entitled to a mandatory award of attorney's fees under the FLSA.

149.  Plaintiff was damaged thereby.

**SECOND CLAIM FOR RELIEF—**
**GENDER DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e**

150.    Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

151.    Plaintiff was wrongfully discriminated against and retaliated against Plaintiff, and adverse job action taken against her, on account of her gender.

152.    Plaintiff has been damaged thereby.

**THIRD CLAIM FOR RELIEF—**
**AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**

153.    Plaintiff hereby repeats and reiterates each of the allegations above as if full repeated here at length.

154.    Upon information and belief, "but for" Plaintiff's age, Defendant would not have had such animus regarding Plaintiff.

155.

156.    Plaintiff was wrongfully discriminated against and retaliated against Plaintiff, and took adverse job action taken against her, because of her age.

157.    Plaintiff has been damaged thereby.

**FOURTH CLAIM FOR RELIEF—**
**SUPPLEMENTAL CLAIM UNDER NEW YORK HUMAN RIGHTS LAW AND LABOR LAW**

158.    Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

159.    Defendants violated the State law provisions of the N.Y.S. Human Rights Law, by discriminating against Plaintiff on the basis of her gender and age.

160.    Defendant violated the State law provisions of the N.Y.S. Labor Law, by failing to pay Plaintiff earned wages and overtime.

### FIFTH CLAIM FOR RELIEF— SUPPLEMENTAL CLAIM UNDER ARTICLE 78 OF THE NEW YORK CPLR AND N.Y.S. HUMAN RIGHTS LAW

161.    Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

162.    The Defendant BOCES's administrative action in reducing Plaintiff's hours, and *de facto* terminating her employment and *de facto* constructive discharge, was arbitrary, capricious, an abuse of discretion and contrary to law.

163.    The Defendant Union's action in not pursuing a grievance, to arbitration, of BOCES's reduction of Plaintiff's hours and *de facto* terminating her employment and *de facto* constructive discharge, was arbitrary, capricious, an abuse of discretion and contrary to law.

164.    Plaintiff requests that this Court exercise its supplemental jurisdiction, and grant mandamus, injunctive and *certiorari* relief, against both BOCES and the Union, as is available under the provisions of Article 78 of the New York Civil Practice Rules (CPLR).

165.    Plaintiff was damaged thereby, and seeks equitable relief in this Court.

### DEMAND FOR JURY
*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment containing the following relief:

1.  An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay compensating plaintiff for loss of past and future salary and benefits;

2.  An award of damages to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3.  An award of punitive and liquidated damages;

4.  An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's full-time employment and benefits with Defendant BOCES;

5.  Writ of mandamus, injunction or *certiorari* under N.Y.S. CPLR Article 78 (supplemental claim);

6.  An award of reasonable attorneys' fees and the costs of this action; and

7.  Such other and further relief as this Court may deem just and proper.

Dated:  Stony Point, New York
   December 4, 2015

        /S/
        MICHAEL D. DIEDERICH, JR.
        *Attorney for Plaintiff   MD 2097*
        361 Route 210
        Stony Point, NY 10980
        (845) 942-0795
        Mike@DiederichLaw.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Marri Furk**<br>**1892 Route 211 East**<br>**Middletown, NY 10941** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2015-03496** | **Debra L. Richards,**<br>**Investigator** | **(212) 336-3768** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☐ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☒ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☒ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin Berry*                                              11/20/15

**Kevin J. Berry,**                                         *(Date Mailed)*
**District Director**

Enclosures(s)

cc:
| **Director of Human Resources**<br>**ORANGE ULSTER BOCES**<br>**53 Gibson Road**<br>**Goshen, NY 10924** | **Michael D. Diederich, Jr.**<br>**LAW OFFICE OF MICHAEL D DIEDRICH, JR.**<br>**361 Route 210**<br>**Stony Point, NY 10980** |
|---|---|

COMPLAINT EXHIBIT 1

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Marri Furk<br>1892 Route 211 East<br>Middletown, NY 10941 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2016-00196** | **Debra L. Richards,**<br>**Investigator** | **(212) 336-3768** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐    More than 180 days have passed since the filing of this charge.

☒    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin Berry*      11/20/15

Enclosures(s)

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

cc:

**Director of Legal Affairs**
**UNITED PUBLIC SERVICE EMPLOYEE'S UNION**
**3555 Veterans Highway, Suite H**
**Ronkonkoma, NY 11779**

COMPLAINT EXHIBIT 2

# OUBOCES / MARRI FURK ---  TIMELINE

- 2011 -  Layoff's in OUBOCES Technology Department threatened one higher level tech (DCS) and one CNS level tech position

- 2011 – March   Bhargav Vyas, Directory of Technology started employment with OUBOCES

- 5/17/2011   BOCES and possibly UPSEU revised a "DATE OF HIRE" document for BOCES Technology staff  (Plaintiff given a copy of this revised document by Gary Hickey of UPSEU)  * * **There are confirmed incorrect "hire dates" for a few Technicians on this document** AT the time that BOCES Technology staff was placed with UPSEU, UPSEU obtained a list of correct "hire dates" directly from all members of BOCES Technology Department

- 9/19/2011   The Orange County Civil Service  created a Layoff/Work Reduction roster for  - Unit:  BOCES    Layoff Title:  Computer Network Specialist (CNS)  requested by BOCES – Plaintiff obtained copy of this document from Gary Hickey, UPSEU

- 9/19/2011   Plaintiff's standing on CNS CIVIL SERVICE roster manipulated to rank lower than John Swendsen who has a later hire date (1/6/03) than Plaintiff (4/2/01). Mr. Swendsen should actually ranks lower on the CNS Layoff/Work Reduction roster with a later hire date. This was the method used for ALL other CNS technicians on this roster at the time the roster was created. As Mr. Swendsen ranks lower than Plaintiff on CNS roster, reduction of Plaintiff's work schedule/hours is in violation of the N.Y.S. Civil Service Law

- 9/20/2011   Email from the Orange County Civil Service Department to BOCES denying "Veteran's status" for CNS Technician:  John Swendsen. This was due to lack of documentation to qualify him. Plaintiff obtained copy of this document from Gary Hickey, UPSEU

- FEBRUARY 2012   Marguerite Flood, former Assistant Superintendent for Human Resources of BOCES and Bhargav Vyas, Director of Technology met with Plaintiff to notify her that her work schedule/hours "might" be reduced July 1, 2012.  Marguerite told Plaintiff:  "Bhargav came up with a wonderful idea to keep any technicians from being laid off this year. He suggested cutting 3 technicians' hours instead of laying off one tech position."  Marguerite then told Plaintiff (CNS) that her hours, as well as Perry Walsh's (CNS tech) and Apurva Engineer's (CNS tech) hours "MIGHT" be reduced in July 2012.  Marguerite told Plaintiff that this would be determined by the outcome of the school budget votes in May 2012. Marguerite had a copy of CNS layoff roster at this meeting.

- MARCH 1, 2012  Plaintiff Sent letter to Diane Hayden, Director of Human Resources of ORANGE COUNTY CIVIL SERVICE requesting copy of CNS Layoff Roster and questioning the reduction of Plaintiff's work hours due to her CNS Competitive Class Title and not ranking lowest on the CNS Layoff Roster

- MARCH 6, 2012  Response from Diane Hayden, Director of Human Resources of ORANGE COUNTY CIVIL SERVICE to Plaintiff

1

COMPLAINT EXHIBIT 3

- APRIL 11, 2012 Email from Plaintiff to Gary Hickey, UPSEU, requesting copy of CNS Layoff Roster and "DATE OF HIRE" document and questioning her standing on CNS Layoff roster and proposed reduction of hours

- MAY 2012 (first week of MAY) -One week before Orange County School budgets were voted on: Marguerite Flood notified Plaintiff, Mr. Walsh and Mr. Engineer about their reduction of work hours/schedule to a 32 hour work week beginning on July 1, 2012

- MAY 8, 2012 Plaintiff still had not received response from Gary Hickey, UPSEU, regarding her requests for CNS Layoff Roster and "Date of Hire" documents and answers to her questions. Plaintiff sent email to Gary on May 8, 2012 about not receiving documents. Eventually, in May or June 2012, Plaintiff received documents from Gary Hickey, UPSEU, but no answers to questions regarding Plaintiff's standing on the CNS Layoff Roster and proposed reduction of hours

- SEPTEMBER 2012 Perry Walsh (CNS Tech) provisionally promoted to SNS title (also ranking lower than Plaintiff)

- July 1, 2012 through June 30, 2013 Plaintiff's work schedule reduced to 32 hour work week from 40 hour week - while another member (Apurva Engineer and Perry Walsh) were ranked lower on CNS layoff roster - in violation of the N.Y.S. Civil Service Law

- July 1, 2013 through June 30, 2014 Plaintiff's work schedule restored to 40 hour work week

- January 31, 2014 Plaintiff injured at work, right shoulder and elbow injury

- March 6, 2014 Plaintiff out on medical leave (FMLA / WORKERS' COMP) for eight weeks.

- MARCH or APRIL 2014 Apurva Engineer (CNS) provisionally promoted to SNS title

- MAY 6, 2014 Plaintiff returned to work from medical (FMLA) LEAVE

- JUNE 24, 2014 Plaintiff notified her work schedule to be reduced to 32 hour work week on July 1, 2014

- JUNE 24, 2014 Plaintiff emailed Gary Hickey/Michael Wilson, UPSEU, questioning reduction of hours

- JUNE 30, 2014 Plaintiff emailed Gary Hickey/Michael Wilson, UPSEU, questioning reduction of hours

- JUNE 30, 2014 Gary Hickey, UPSEU response to Plaintiff

- July 1, 2014 through September 1, 2014 Plaintiff's work schedule reduced to 32 hour work week

- July 22, 2014 Last filing date for SNS Civil Service Exam for Apurva Engineer / He took exam in AUG or SEPT/OCT – no "specific date" according to Civil Service document, obtained from the Orange County Civil Service Department by Plaintiff

- OCTOBER 2, 2014 Plaintiff complained to BOCES and UPSEU of nonpayment of overtime

2

- November 2014  Apurva Engineer – permanent status to SNS title,  reclassified from CNS title in which he had been the lowest ranking member (Plaintiff's work schedule reduced to 32 hours while she was not the lowest ranking member in the CNS title  -in violation of the N.Y.S. Civil Service Law)

- APRIL 16, 2015  Plaintiff worked overtime for an event at BOCES

- APRIL 17, 2015  Plaintiff emailed her superior, Bhargav Vyas about working overtime on April 16/ then not paid for overtime

- APRIL 22, 2015   Plaintiff required to meet with Debra Heppes, Assistant Superintendent for Finance, Bhargav Vyas, Director of Technology and Michael Wilson, UPSEU.  Plaintiff reprimanded for working after hours on APRIL 16, 2015 and accused of owing BOCES 10 ½ hours of time.

- May 26, 2015  Plaintiff notified of her work schedule to be reduced from full time position (40 hours) to 16 hours per week with no benefits

- MAY 28, 2015  Plaintiff emailed UPSEU (Gary Hickey and Michael Wilson) asking how she is lowest ranking member in CNS Layoff Unit  and questioning ranking of other CNS members  - Copy enclosed

- JUNE 16, 2015  Plaintiff mailed copy of this email to UPSEU  -  certified mail

- July 1, 2015  Plaintiff's full time position (40 hours) reduced to part-time (16 hours per week) with no benefits

- JULY 30, 2015  Plaintiff sent email and certified letter to UPSEU asking to file Grievance

- AUGUST 10, 2015 Response from UPSEU to Plaintiff refusing Grievance to Arbitration

- AUGUST 20, 2015  Plaintiff/Counsel Michael Diederich, Jr. filed EEOC Complaint and Federal Complaint against OUBOCES

- SEPTEMBER 18, 2015 Bhargav Vyas, Directory of Technology, last day of employment with BOCES

EXHIBIT "7"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARRI FURK
               Plaintiff,

          -against-

ORANGE-ULSTER BOCES
            Defendant.
------------------------------------------------------------X

Civil Action No.
15 cv 6594 (NSR)

**THIRD AMENDED
COMPLAINT**

     Plaintiff, MARRI FURK, by her attorney, Bernard Weinreb, as and for her
Complaint against Defendant, ORANGE-ULSTER BOCES, alleges as follows:

## I. NATURE OF CLAIM

1.     This is an action for damages on behalf of Plaintiff, MARRI FURK (the
"Plaintiff"), pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.
sections 207, 216(b) and 260 ("FLSA"), to remedy violations by Defendant, ORANGE-
ULSTER BOCES (the "Defendant," the "Employer" or "OUBOCES") who deprived her
of her lawful wages and overtime pay to which she is entitled under such laws. In
addition, Plaintiff claims she was discriminated against on the basis of her gender, age
and/or nationality in that OUBOCES reduced her hours, failed to return her to 1.0 FTE
(full-time, 40 hours per week) when positions became available, failed to offer her a
deserved promotion and gave her menial jobs instead of jobs appropriate for her
experience, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000e *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 42
U.S.C. § 621 *et seq,* Section 102 of the Family and Medical Leave Act of 1993
("FMLA"), 29 U.S.C. Section 2615. Plaintiff is also seeking damages suffered by her on
account of the retaliation by OUBOCES against her for complaining about the
discriminatory acts and/or reduction of her hours under these laws. Plaintiff also seeks
relief under the New York Labor Law sections 190-99, 652 and 663 including the wage

order entitled "Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. Section 142-3.2 ("New York Labor Law"), N.Y. Exec. L. Sections 290-301 (the "New York Human Rights Law"), and other State Laws that are parallel to the Federal Laws set forth in this paragraph.

## II. JURISDICTION

2.      The jurisdiction of this Court to adjudicate Plaintiffs' First, Third, Fifth and Seventh claims are invoked pursuant to 28 U.S.C. sections 1331 and 29 U.S.C. section 216(b), this being a suit authorized and instituted pursuant to Title VII, the ADEA and the FLSA.

3.      The jurisdiction of this Court to adjudicate Plaintiff's Second, Fourth and Sixth claims for relief are invoked pursuant to 28 U.S.C. section 1367(a), as the First, Third, Fifth and Seventh claims are so related as to form part of the same case or controversy.

## III. PARTIES AND VENUE

4.      At all times relevant to this action, Plaintiff resided in Orange County, New York.

5.      Plaintiff, Marri Furk, is, and was at all times relevant to this Complaint, a citizen of the United States and a resident of the City of Middletown, County of Orange, State of New York.  Ms. Furk was at the time of the commencement of this action approximately 55 years old.  She commenced working as an employee of OUBOCES, as a Civil Service Employee with the competitive class title of Computer Network Specialist ("CNS").  At all times relevant to this Complaint, she was an "employee" and was otherwise covered under each of the statutes described in paragraph 1 of this complaint above.

6.      The Employer is located in Orange County, New York.  The Employer is an "employer" and is otherwise covered under each of the statutes described in paragraph 2 of this complaint above.

## IV. FACTS

7.     Plaintiff, was at the time of the commencement of this action approximately 55 years old.  She commenced working as an employee of OUBOCES, as a Civil Service Employee with the competitive class title of Computer Network Specialist ("CNS"), on April 2, 2001.

8.     Plaintiff is a member of the United Public Service Employees' Union ("UPSEU" or "Union").

8.     Plaintiff has had an exemplary and unblemished employment record during her entire period of employment with the Employer.

9.     On May 26, 2015, Plaintiff was called into a meeting with Ms. Deborah Heppes, Assistant Superintendent for Finance (a senior supervisor in the same line as Plaintiff), Pam Rourke (Assistant Superintendent for Human Resources), Bhargav Vyas (Director of Technology) and Michael Wilson (Union representative), and was informed that OUBOCES is, effective as of July 1, 2015, demoting Plaintiff from full-time (1.0 FTE) to part time (.4 FTE) employment by reducing her hours from 40 hours per week to 16 hours per week.  As a result of this change, Plaintiff's health insurance coverage was terminated, vacation and sick time accrual was reduced and her New York State retirement system contributions were reduced.

10.     Upon information and belief, this reduction in Plaintiff's hours was illegally imposed by the Employer because of her age, gender, national origin and/or in retaliation for her complaining about the discriminatory behavior by the Employer against her and/or on account of her complaints of the illegal non-payment of wages and/or overtime pay as described below in this Complaint.

11.     In addition to the above, OUBOCES discriminated against Plaintiff and/or retaliated against her by taking the following adverse actions against Plaintiff.   On August 4, 2015, a full-time co-worker of Plaintiff in a CNS title position passed away. As a result of this employee's death, a full time CNS position, a position that Plaintiff held, could have been filled by Plaintiff.  Plaintiff inquired of Ms. Heppes and Mr. Vyas as to the possibility of returning Plaintiff to full-time status as a CNS since such full time

CNS position now became available. Although Plaintiff was told that they will look into restoring her to a full time position, they did not do so.

12.    A promotional position became available in March/April 2014, while Plaintiff was out on medical leave. Mr. Vyas filled this position while Plaintiff was out on medical leave.

12A.    Mr. Vyas, who is a male of Indian descent, failed to interview Plaintiff for this position. Instead, Mr. Vyas interviewed and promoted a younger male colleague, Apurva Engineer, an Indian male in his late 30's or early 40's who was much less experienced and less qualified than Plaintiff, as well as being less qualified and skilled than two older CNS titled employees who interviewed for this position.

12B.    Mr. Engineer was promoted to the SNS level position on April 4, 2014.

12C.    Upon information and belief, Mr. Engineer was promoted to become a SNS to remove him from his CNS position where he ranked lowest in title. Had Mr. Engineer stayed at the CNS level, he would have been the first employee to suffer a work hour reduction or layoff.

12D.    Notwithstanding Mr. Engineer's promotion to the SNS level, he remained in his position in the Special Education Division performing only CNS level work. Thus, Mr. Engineer's SNS promotion has served no purpose for OUBOCES.

12E.    When SNS vacancies opened in 2016, Mr. Engineer was not transferred to any of those positions in the school districts to provide such SNS services, which commanded more revenue for the OUBOCES Technical Services Division. Those vacancies were not filled even though the districts had already paid for the services. In fact, at the end of their contract, those districts did not renew services with OUBOCES for the following year.

12F.    Upon information and belief, had Mr. Engineer filled those SNS vacancies that opened in 2016 for the contracted five days per week, or even for three days per week, Plaintiff could have returned to full time status, taking over the CNS work that had been performed by Mr. Engineer in the Special Education Division until then. From July 1, 2015 through May/June 2016, Plaintiff's hours were reduced to 16 hours per week,

thus making her available to pick up the additional work. Plaintiff had supported the Special Ed Division as a CNS for the past six years.

13. Additionally, Plaintiff's hours were reduced from 40 to 32 hours per week on another occasion, from July 1, 2014 through September 1, 2014.

14. Upon information and belief, the reason OUBOCES reduced Plaintiff's hours from 40 hours per week to 32 hours per week, as described in paragraph 13, was because Plaintiff complained to her supervisors at OUBOCES that she was not given the opportunity to interview for promotion while she was out on medical leave, as described in paragraphs 11 and 12 of the Complaint.

15. Furthermore, OUBOCES has engaged in a pattern of discrimination, including limiting her to menial jobs below her experience level and refusing her requests to permit her to work on current technology, even though Plaintiff was qualified to do so.

16. Besides the discrimination and retaliation claims outlined above, OUBOCES did not pay Plaintiff straight time and overtime for her working through her lunch period, and working beyond her normal hours for OUBOCES. Specifically, Plaintiff was not paid for approximately 272 hours of straight time for her work for OUBOCES during the period August 2012 through December 31, 2012; she was not paid for approximately 258 hour of straight time and 7 hours of overtime for her work for OUBOCES during the period January 1, 2013 through December 31, 2013; she was not paid for approximately 239 hour of straight time and 24 hours of overtime for her work for OUBOCES during the period January 1, 2014 through December 31, 2014; and she was not paid for approximately 128 hour of straight time and 17 hours of overtime for her work for OUBOCES during the period January 1, 2015 through December 31, 2015. In sum, the total unpaid straight time hours between August 2012 and December 31, 2015 is approximately 897 hours and the total unpaid overtime hours during this period is approximately 48 hours. As a result, Plaintiff is entitled to recover such unpaid straight time and overtime pay, along with liquidated damages and interest, pursuant to the FLSA and the New York Labor Law.

17. Upon information and belief, in addition to OUBOCES not paying for straight time and overtime during the period since August 21, 2012 as described in

paragraph 16 of the Complaint, OUBOCES also failed to pay Plaintiff for a significant amount of her straight time and overtime time during the three year period commencing August 21, 2009 thorough August 20, 2012, and Plaintiff is entitled to recover such unpaid straight time and overtime, along with liquidated damages, under the Federal and State Labor Laws.

18.  During the three years ending August 20, 2015, Plaintiff's hourly rate of pay was approximately $41.53, calculated as follows: Plaintiff's annual salary during those years was $78,083, multiplied by 47 weeks multiplied by 40 hours per week.

19.  Plaintiff had complained to her supervisors at OUBOCES about not being paid the wages due her, including complaining to Pam Rourke, Assistant Superintendent for Human Resources (including a complaint to her on or about October 2, 2014), and to Mr. Vyas on several occasions. Not only did these supervisors not correct this situation and have OUBOCES compensate Plaintiff for what was owed to her, but she was in fact reprimanded for staying overtime on one occasion on April 22, 2015, and was otherwise retaliated against as described above in the Complaint.

20.  After one such complaint by Plaintiff to Mr. Vyas on or about April 17, 2015, relating to Plaintiff working overtime for an event on April 16, 2015 for which she was not compensated, Mr. Vyas and Ms. Heppes had Plaintiff "counseled" by Union representative, Michael Wilson, about working "unauthorized" overtime. In fact, Mr. Vyas was specifically aware that Plaintiff could not have completed her work at the event on April 16 without working the overtime. Although Mr. Vyas had been aware on an ongoing basis that Plaintiff was working through her lunch period and was working overtime, Mr. Vyas was fully aware that the workload was such that it took working through lunch periods and beyond normal work hours to complete.

21.  Approximately four weeks after Plaintiff's April 17 complaint to Mr. Vyas about not being paid for her overtime during the April 16 event, Plaintiff was demoted from being a full-time employee to a part-time employee. Upon information and belief, this demotion was in retaliation for her April 17 complaint to Mr. Vyas, and/or on account of Mr. Vyas' negative attitude towards her on the basis of her gender, age and national origin.

22.    The discrimination and retaliation is continuing against Plaintiff by OUBOCES as of the date of this Third Amended Complaint. Two examples:

A.  Over the past two years, three senior level (two SNS Title and one DCS Title), male technicians, have been contracted to the Special Education Division on OUBOCES' campus. One of these three technicians is Mr. Engineer.  Although compensated on the higher SNS level, Mr. Engineer and one of the two other senior level technicians, have been performing only CNS level work for these past two years.  Upon information and belief, the third technician has worked on only one short term project performing SNS level work, but otherwise had been performing only CNS level work. This work performed by these three technicians could have been performed by Plaintiff at great savings to OUBOCES, if she had been returned to work as a full time employee (1.0 FTE), as Plaintiff was very experienced in this CNS level work and she had performed this CNS work for the Special Ed division for the past six years.  It is obvious that OUBOCES is doing everything to avoid reinstating Plaintiff to full-time (1.0 FTE) status for no good reason.  The only rationale reason for this treatment that OUBOCES is discriminating against her on the basis of her age, gender and/or national origin and/or retaliating against her for complaining about the reduction in her hours and/or demotion and/or the illegal nonpayment of wages.

B.  Since July 1, 2016, OUBOCES had been contracted to provide its services to three school districts to support School Dude IT Direct and Maintenance Direct Systems (which provides additional revenue to OUBOCES' Technical Services Division). Although Plaintiff had been assigned to support these systems for the districts paying for these services, as well as supporting the same systems on OUBOCES' campus, Plaintiff was not returned to full-time status. It is apparent that OUBOCES is doing everything in its power to prevent Plaintiff from being returned to full-time status (1.0 FTE – 40 hours per week).

23. The Board of Directors of OUBOCES appointed Mr. Engineer to his SNS title on a permanent basis on June 24, 2014 before the SNS Civil Service Eligibility List was established. This SNS Civil Service Eligibility List was established on November 14, 2014. Under Civil Service Law, a candidate must be selected from a Civil Service

Eligibility List before appointing such candidate as a permanent employee to classified service. As a consequence of the unlawful and improper placement of Mr. Engineer by OUBOCES in the SNS title ahead of Plaintiff, her standing on the CNS Civil Service Layoff roster was adversely affected, causing her demotion in standing on the CNS layoff roster and thus subjecting her to a reduction in her work hours.

## V.  AS AND FOR FIRST CLAIM FOR RELIEF
## (UNPAID WAGES AND OVERTIME/FLSA)

24.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 22, as if set forth fully herein.

25.    As described above in the Complaint, Plaintiff was not paid for approximately 897 hours of straight time and 48 hours of overtime for the period August 2012 through December 31, 2015.  Applying her hourly rate of $41.53, as described above in the Complaint, Plaintiff is owed approximately $37,258 of straight time and $2,971 of overtime, totaling $40,228, for such period of time.  In addition, Plaintiff is owed liquidated damages under the FLSA in the same amount, approximately $40,228. Thus, the total pay and liquidated damages relating to the period August 2012 through December 31, 2015 is equal to $80,455.   Furthermore, Plaintiff is entitled to interest on such amounts due from the date such amounts should have been paid.

26.    The Employer's practice of failing to compensate Plaintiff for all of her hours worked is in violation of 29 U.S.C. section 206.

27.    The practice of failing to compensate Plaintiff at the proper rate of one-and-one half (1.5) times her regular hourly rate is in violation of 29 U.S.C. section 207.

28.    The Employer's failure to compensate Plaintiff in accordance with Sections 206 and 207 of the FLSA was willful.

29.    As a result of the violations of the FLSA, Plaintiff has suffered damages by not receiving thousands of dollars in compensation due her during this period of employment by the Employer.  In addition to the amount of unpaid wages due and owing, Plaintiff is entitled to receive an additional, equal amount as liquidated damages pursuant to 29 U.S.C. section 216(b), and/or prejudgment interest.

30.     Plaintiff, is also entitled to an award of attorneys' fees and costs pursuant to 29 U.S.C. section 216(b).

## VI.  AS AND FOR SECOND CLAIM FOR RELIEF
## (UNPAID WAGES AND OVERTIME/NY LABOR LAW)

31.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 30, as if set forth fully herein.

32.     OUBOCES owes Plaintiff approximately $80,456 under the New York Labor Law on account of unpaid wages during the period August 20, 2012 through December 31, 2015, plus prejudgment interest, in the same manner as calculated above in paragraph 25 of the Complaint, as the New York Labor Law provision relating the failure to pay wages, and the entitlement to liquidated damages equal to the amount of the unpaid wages, is identical to the Federal Law.  However, as the statute of limitations under the New York Labor Law is six years, as opposed to only three years under the FLSA, Plaintiff is also entitled to recover under the New York Labor Law unpaid wages, overtime, liquidated damages and interest with respect to such unpaid wages and overtime for the additional three year  period August 20, 1999 through August 19, 2012 in addition to the amounts covering the later period, as described in the previous sentence relating to her right to recover amounts under the FLSA.  Such additional amount due Plaintiff under the New York Labor Law is to be determined by the Court or by a jury.

33.     The effect of the Employer's actions against Plaintiff outlined above deprived Plaintiff of wages and overtime pay to which she was entitled.

34.     The practice of failing to compensate Plaintiff at the proper rate of one-and-one half (1.5) times her regular hourly rate is in violation of the wage order entitled "Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. Section 142-3.2, under the New York Labor Law.

35.     The Employer's failure to compensate Plaintiff in accordance with the overtime provisions of the New York Labor Law was willful.

36.     As a result of the violation of the New York Labor Law, Plaintiff has suffered damages by not receiving thousands of dollars in compensation due her during her period of employment by the Employer.  In addition to the amount of unpaid wages

due and owing, Plaintiff is entitled to receive an additional amount as liquidated damages pursuant to the New York Labor Law, and prejudgment interest.

## VII. AS AND FOR A THIRD CLAIM FOR RELIEF
## AGE, GENDER AND NATIONAL ORIGIN DISCRIMINATION/TITLE VII

37.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 36 as is set forth fully herein.

38.     As described above in this complaint, Plaintiff was continuously discriminated against during her employment at the Employer by her Employer, and in particular by her Indian male supervisor, because she was an older non-Indian female in violation of Title VII.

39.     Plaintiff had her hours wrongfully reduced, was repeatedly denied deserved promotions and opportunities, and was otherwise treated worse than other employees and discriminated against on account of her gender, age and/or national origin.

40.     Plaintiff has suffered personal injuries including, but not limited to, physical, emotional distress, humiliation, mental anguish, financial hardship/duress and loss of enjoyment of life as a result of the Employer's unlawful discrimination, and is entitled to compensatory damages.

41.     Upon information and belief, the discrimination by Defendant was wanton, willful and in patent disregard of Plaintiff's rights, and the Defendant should be punished by the payment of punitive damages.

## VIII. AS AND FOR A FOURTH CLAIM FOR RELIEF
## AGE, GENDER AND NATIONAL ORIGIN DISCRIMINATION/NY HUMAN
## RIGHTS LAW

42.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 as is set forth fully herein.

43.     As described above in this complaint, Plaintiff was continuously discriminated against during her employment at the Employer by her Employer, and in particular by her Indian male supervisor, because she was an older non-Indian female in violation of Title VII.

44.     Plaintiff had her hours wrongfully reduced and was repeatedly denied deserved promotions and opportunities, and was otherwise treated worse than other employees and discriminated against on account of her gender, age and/or national origin.

45.     Plaintiff has suffered personal injuries including, but not limited to, physical, emotional distress, humiliation, mental anguish, financial hardship/duress and loss of enjoyment of life as a result of defendants' unlawful discrimination, and are entitled to compensatory damages.

## IX. AS AND FOR A FIFTH CLAIM FOR RELIEF
### RETALIATION/ FLSA

46.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein.

47.     Upon information and belief, the Employer reduced Plaintiff's hours at work, demoted her and otherwise discriminated against her as described above in the Complaint following, and in retaliation for, her complaints of not being paid for all of her hours of work and overtime.

48.     As a result of these discriminatory actions described in this Fifth Claim for Relief, Plaintiff has suffered and continues to suffer, personal injuries including, but not limited to, physical, emotional distress, humiliation, mental anguish, financial hardship/duress and loss of enjoyment of life as a result of Defendant's unlawful discrimination, and is entitled to compensatory damages.

49.     Upon information and belief, the discrimination by Defendant was wanton, willful and in patent disregard of Plaintiff's rights, and the Defendant should be punished by the payment of damages available for retaliation under the FLSA.

## X. AS AND FOR A SIXTH CLAIM FOR RELIEF
### RETALIATION/ NEW YORK LABOR LAW

50.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 49 as if set forth fully herein.

51.     Upon information and belief, the Employer reduced Plaintiff's hours at work, demoted her and otherwise discriminated against her as described above following, and in retaliation for, her complaints of not being paid for all of her hours of work.

48.     As a result of these Defendant's discriminatory actions described in this Fifth Claim for Relief, Plaintiff has suffered and continues to suffer, personal injuries including, but not limited to, physical, emotional distress, humiliation, mental anguish, financial hardship/duress and loss of enjoyment of life as a result of Defendant's unlawful discrimination, and is entitled to compensatory damages.

49.     Upon information and belief, the discrimination by Defendant was wanton, willful and in patent disregard of Plaintiff's rights, and the Defendant should be punished by the payment of damages available for retaliation under the New York Labor Law.

## XI. AS AND FOR A SEVENTH CLAIM FOR RELIEF
### FAMILY AND MEDICAL LEAVE ACT ("FMLA")

50.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 49 as is set forth fully herein.

51.     Plaintiff had a "serious health condition" within the meaning of the FMLA in that she took eight weeks medical leave under the FMLA on account of a right shoulder and elbow injury. Plaintiff was given a directive by Mr. Vyas to lift and pack approximately 40 pieces of oversized and heavy pieces of equipment by herself. At such time, other available male co-workers were given such work as assembling TV carts. Plaintiff was prescribed 8 weeks of rehabilitative therapy.

52.     As discussed above in this Complaint, while Plaintiff was out on this medical leave, Mr. Vyas interviewed Mr. Engineer, a younger and less qualified individual, for a position that Mr. Vyas knew Plaintiff would be interested in, did not notify Plaintiff that he was seeking to fill this position, and promoted Mr. Engineer. Mr. Engineer is a younger male of Indian descent.  Upon information and belief, Mr. Vyas did this while Plaintiff was out on FMLA leave so as to preclude Plaintiff from obtaining this position.

53. Plaintiff had worked more than 1,250 hours in the twelve months prior to her FMLA leave, thereby making her an eligible employee within the meaning of the FMLA.

54. In violation of 29 U.S.C. Sections 2614 and 2615, OUBOCES caused Plaintiff to lose the promotion and the additional pay she would have earned in such position on account of her FMLA leave. Thus, Plaintiff lost this opportunity for promotion in violation of the FMLA, 29 U.S.C. Section 2615(a)(2).

55. The conduct of Defendant was willful. As a result of Defendant's willful conduct, Plaintiff has suffered loss of income.

## X. PRAYER FOR RELIEF

1. Plaintiff requests that the Court award Plaintiff the following relief:

### ON THE FIRST CLAIM FOR RELIEF

A. Actual damages for loss of wages and overtime pay, in an amount to be determined at trial, plus interest;

B. Liquidated damages equal to the amount of wages and overtime pay found to be due;

C. Prejudgment Interest;

D. Reasonable attorney's fees.

### ON THE SECOND CLAIM FOR RELIEF

A. Actual damages for loss of overtime pay, in an amount to be determined at trial, plus interest;

B. Liquidated damages in an amount equal to the total amount of wages and overtime pay found to be due;

C. Prejudgment Interest;

D. Reasonable attorney's fees.

## ON THE THIRD CLAIM FOR RELIEF

A.    Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

B.    Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

C.    Punitive damages, in an amount to be determined at trial;

D.    Reasonable attorneys' fees.

## ON THE FOURTH CLAIM FOR RELIEF

A.    Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

B.    Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

## ON THE FIFTH CLAIM FOR RELIEF

A.    Actual damages for lost wages, in an amount to be determined at trial, plus interest;

B.    Liquidated damages in an amount equal to the total amount of wages found to be due;

C.    Reasonable attorney's fees.

## ON THE SIXTH CLAIM FOR RELIEF

A.    Actual damages for loss of wages and benefits, in an amount to be determined at trial, plus interest;

B.    An additional amount as liquidated damages equal to the sum of the amount described in A;

C.    Reasonable attorneys' fees.

ON THE SEVENTH CLAIM FOR RELIEF

   A. Actual damages for loss of wages and benefits, in an amount to be determined at trial, plus interest;

   B. An additional amount as liquidated damages equal to the sum of the amount described in A;

   C. Compensatory damages,

   D. Reasonable attorneys' fees.

ON ALL CLAIMS

2. Award Plaintiff the costs of this action.

3. An order enjoining Defendant from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's full-time (1.0 FTE – 40 hours per week) employment and full benefits with Defendant OUBOCES.

4. Grant Plaintiff such other and further relief as may be deemed necessary, just and proper by this Court.

XIV. JURY DEMAND

   Plaintiff demands trial by jury on all issues in this action properly triable before a jury.

Dated: Spring Valley, New York
   July 13, 2017

            Bernard Weinreb, Esq.
            Attorney for Plaintiff
            2 Perlman Drive, Suite 301
            Spring Valley, New York 10977
            (845) 369-1019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------------X    ECF CASE
MARRI FURK,
          Plaintiff,                             Civil Action No.
                                             15-cv-06594(NSR)(PED)

      -against-

ORANGE-ULSTER BOCES,                    **RESPONSE TO RULE 56.1**
          Defendant.                        **STATEMENT**
--------------------------------------------------------------X

       Plaintiff, Marri Furk, has the following responses to the Statement Pursuant to Rule 56.1

filed by Defendant, Orange-Ulster BOCES; the numbered responses below correspond to the

numbered statements set for in Defendant's Rule 56.1 Statement.

1.  Admit

2.  Admit

3.  Admit

4.  Admit

5.  Admit

6.  Admit

7.  Admit

8.  Admit

9.  Deny accuracy of the Statement. Plaintiff sent an email chain in which she indicated

    that she worked through lunch but she did not follow up with additional

    documentation after the date indicating the dates when she worked through lunch, the

    times when she worked through lunch and a request for payment, because she did not

    believe that she will be paid. See Exhibit "J" lines 1 through 13.

10.     Admit

11.     Admit

12.     Admit

13.     Admit

14.     Admit

15.     Plaintiff responded that she did not recall.  See Exhibit "J" page 162, line 2.

16.     Plaintiff responded that she did not recall, page 162 lines 3-8

17.     Plaintiff lacks knowledge or information relating to this statement.

18.     Plaintiff lacks knowledge or information relating to this statement.

19.     Admit

20.     Admit

21.     Admit

22.     Admit

23.     Admit

24.     Admit

25.     Admit

26.     Admit

27.     Admit

28.     Admit

29.     Admit

30.     Admit

31.     Plaintiff admits that her hours were reduced from full-time to .8 status from July
        1, 2014 to September 1, 2014, as she states at Exhibit "I" at p.3d lines 3-6.  But she

denies that her hours were reduced at that time for budgetary reasons or that such reduction of hours was not discriminatory or retaliatory.

32.　　Admit

33.　　Admit

34.　　Plaintiff stated that she did not complain about this in a document.  Exhibit "J" at p. 156, lines 7 through 9.

35.　　Plaintiff testified that she did not recall and that she may, in fact, have made such complaints.   Exhibit J, at p. 160, line 14 through p. 161, line 14.

36.　　Plaintiff testified that she did not recall and that she may, in fact, have made such complaints.   Exhibit J, at p. 160, line 14 through p. 161, line 14.

37.　　Admit.

38.　　Admit

39.　　Admit

40.　　Admit

41.　　Plaintiff testified that she did not recall.  Exhibit J, at p. 158, line 18.

42.　　Plaintiff testified that she did not recall.  Exhibit J, at p. 58, line 24

43.　　Admit

44.　　Admit

45.　　Admit.  She did not make reference to discrimination or retaliation in the email.

46.　　Admit

47.　　Admit

48.　　Admit

49.　　Plaintiff lacks sufficient knowledge and information relating to this statement

50.    Admit

51.    Admit

52.    Admit

53.    Admit

54.    Admit

55.    Plaintiff lacks sufficient knowledge and information relating to this statement

56.    Admit

57.    While at the time of the deposition Ms. Furk was not aware of anyone else, besides herself, who complained about not being paid for their straight time hours, Plaintiff has since the date of the deposition learned of [two employees], Joe Slomka and [      ], who complained about needing to work through lunchtime and not being paid for such time.

58.    While at the time of the deposition Ms. Furk was not aware of anyone else, besides herself, who complained about not being paid for their straight time hours, Plaintiff has since the date of the deposition learned of [two employees], NAMES, who complained about needing to work through lunchtime and not being paid for such time.

59.    Admit

60.    Deny.  All Plaintiff testified to at those lines of her deposition was that *she does not have in her possession* other payroll tiem sheets/Federal activity logs that she submitted to Orange-Ulster BOCES.

61.    Admit

4

62.     Admit.  But it was reduced to .6 effective September 1, 2017.  Exhibit J, at p. 127, lines 6-13.

63.     Admit

64.     Deny.  At those lines of the deposition, Plaintiff responded that she did not recall.

65.     Deny.  At those lines of the deposition, Plaintiff responded that she did not recall.

66.     Deny.  At those lines of the deposition, Plaintiff responded that she did not recall.

67.     Admits that she did not recall submitting documentation.  But Ms. Furk testified at Exhibit J, at p. 139, lines 6 through 8 that she "had some conversations."   Thus, she informed she complained to Orange-Ulster BOCES, at least verbally, about not being paid for overtime hours worked.

68.     Admits that she did not recall submitting documentation.  But Ms. Furk testified at Exhibit J, at p. 139, lines 6 through 8 that she "had some conversations."   Thus, she informed she complained to Orange-Ulster BOCES, at least verbally, about not being paid for overtime hours worked.

69.     Admit

70.     Admit

71.     Admit

72.     Admit

73.     Admit

74.     Plaintiff lacks knowledge and information regarding this Statement.

75.     Plaintiff lacks knowledge and information regarding this Statement

76.     Plaintiff lacks knowledge and information regarding this Statement.

77.     Admit

Respectfully Submitted

Bernard Weinreb
on behalf of Marri Furk, Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MARRI FURK

              Plaintiff,                        Civil Action No.
                                            15 Civ. 6594 (NSR)  -

      against-

ORANGE ULSTER BOCES
                Defendant.
--------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Bernard Weinreb
Attorney at Law
2 Perlman Drive - Suite 301
Spring Valley, New York 10977

———

(845) 369-1019

# TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………………….…………..(i)

Preliminary Statement.....................................................................................1

STATEMENT OF FACTS………………………………………………..1

ARGUMENT

A.   Standard to Defeat Motion for Summary Judgment Under Rule 56……..……..8

B.   BOCES Must Pay for Overtime Even if Plaintiff did not Use BOCES
     Mechanism to Request Additional Straight Time and Overtime Pay…………..9

C.   The Case Cannot be Dismissed as There is a Question of Fact as to
     Whether There Was Discrimination……………………………………13

D.   Responses to Specific Arguments Relating to Discrimination Claims…………13

E.   The Retaliation Claims are Viable……………………………………...17

     CONCLUSION.....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970).......................................................................8

*Butts v. City of New York Dep't of Hous. Pres. & Dev.,*
    990 F.2d 1397 (2d Cir. 1993)...............................................16, 17

*Chao v. Gotham Registry, Inc.,*
    514 F.3d 280, 2008 US App LEXIS 1327 (2d Cir. 2008)............10, 11, 12

*Chin v. Port Auth of N.Y. & N.J.,*
    685 F.3d 135 (2d Cir. 2011)................................................14

*Forrester v. Roth's I.G.A. Foodliner, Inc.,*
    646 F2d 413 (9th Cir. 1991).............................................11, 12, 13

*Holzapfel v. Town of Newburgh,*
    145 F.3d 516, 1998 US App LEXIS 10477 (2d Cir. 1997).................11

*Joza v. WW JFK LLC,*
    2010 WL 3619551 (EDNY 2010)........................................12, 13

*Kosakow v. New Rochelle Radiology Assocs.,*
    274 F.3d 706 (2d Cir. 2001)...............................................11

*Reich v. Stewart,*
    121 F.3d 400 (8th Cir. 1997)...............................................11

## REGULATIONS

    29 C.F.R. Section 785.11-.12,,,.............................................11

## **Preliminary Statement**

Plaintiff, Marri Furk, respectfully submits this memorandum of law in opposition to motion for summary judgment filed by Defendant. Orange-Ulster BOCES (hereinafter referred to as "BOCES" or the "Employer" or "Defendant"). As discussed in this memorandum of law, the issues in this case are questions of fact that should be determined at trial, not by summary judgment.

## **STATEMENT OF FACTS**

The facts of the case, as set forth in the Third Amended Complaint (Def. Exhibit G) and in the Affidavit of Marri Furk are as follows:

Plaintiff, was at the time of the commencement of this action approximately 55 years old. She commenced working as an employee of BOCES, as a Civil Service Employee with the competitive class title of Computer Network Specialist ("CNS"), on April 2, 2001. Plaintiff is a member of the United Public Service Employees' Union ("UPSEU" or "Union").

Plaintiff has had an exemplary and unblemished employment record during her entire period of employment with the Employer.

On May 26, 2015, Plaintiff was called into a meeting with Ms. Deborah Heppes, Assistant Superintendent for Finance (a senior supervisor in the same line as Plaintiff), Pam Rourke (Assistant Superintendent for Human Resources), Bhargav Vyas (Director of Technology) and Michael Wilson (Union representative), and was informed that OUBOCES is, effective as of July 1, 2015, demoting Plaintiff from full-time (1.0 FTE) to part time (.4 FTE) employment by reducing her hours from 40 hours per week to 16 hours

per week.  As a result of this change, Plaintiff's health insurance coverage was terminated, vacation and sick time accrual was reduced and her New York State retirement system contributions were reduced.

Based on the circumstances described below, it appears that this reduction in Plaintiff's hours was illegally imposed by BOCES because of her age, gender, national origin and/or in retaliation for her complaining about the discriminatory behavior by BOCES against her and/or on account of her complaints of the illegal non-payment of wages and/or overtime pay as described below.

In addition to the above, BOCES discriminated against Plaintiff and/or retaliated against her by taking the following adverse actions against Plaintiff.   On August 4, 2015, a full-time co-worker of Plaintiff in a CNS title position passed away.  As a result of this employee's death, a full time CNS position, a position that Plaintiff held, could have been filled by Plaintiff.  Plaintiff inquired of Ms. Heppes and Mr. Vyas as to the possibility of returning Plaintiff to full-time status as a CNS since such full time CNS position now became available. Although Plaintiff was told that they will look into restoring her to a full time position, they did not do so.

A promotional position became available in March/April 2014, while Plaintiff was out on medical leave.  Mr. Vyas filled this position while Plaintiff was out on medical leave.

Mr. Vyas, who is a male of Indian descent, failed to interview Plaintiff for this position.  Instead, Mr. Vyas interviewed and promoted a younger male colleague, Apurva Engineer, an Indian male in his late 30's or early 40's who was much less experienced and less qualified than Plaintiff, as well as being less qualified and skilled than two older CNS titled employees who interviewed for this position.   Mr. Engineer was promoted to

the SNS level position on April 4, 2014. See pages 40 through 45 of the Furk deposition attached to Plaintiff's motion papers as Exhibit B.

It seems that Mr. Engineer was promoted to become a SNS to remove him from his CNS position where he ranked lowest in title. Had Mr. Engineer stayed at the CNS level, he would have been the first employee to suffer a work hour reduction or layoff.

Notwithstanding Mr. Engineer's promotion to the SNS level, he remained in his position in the Special Education Division performing only CNS level work. Thus, Mr. Engineer's SNS promotion has served no purpose for BOCES.

When SNS vacancies opened in 2016, Mr. Engineer was not transferred to any of those positions in the school districts to provide such SNS services, which commanded more revenue for the BOCES Technical Services Division. Those vacancies were not filled even though the districts had already paid for the services. In fact, at the end of their contract, those districts did not renew services with BOCES for the following year.

Had Mr. Engineer filled those SNS vacancies that opened in 2016 for the contracted five days per week, or even for three days per week, Plaintiff could have returned to full time status, taking over the CNS work that had been performed by Mr. Engineer in the Special Education Division until then. From July 1, 2015 through May/June 2016, Plaintiff's hours were reduced to 16 hours per week, thus making her available to pick up the additional work. Plaintiff had supported the Special Ed Division as a CNS for the past six years.

Additionally, Plaintiff's hours were reduced from 40 to 32 hours per week on another occasion, from July 1, 2014 through September 1, 2014.

It appears, based on the timing, that the reason BOCES reduced Plaintiff's hours from 40 hours per week to 32 hours per week, as described in the previous paragraph,

was because Plaintiff complained to her supervisors at BOCES that she was not given the opportunity to interview for promotion while she was out on medical leave, as described in the Complaint.

Furthermore, BOCES has engaged in a pattern of discrimination, including limiting her to menial jobs below her experience level and refusing her requests to permit her to work on current technology, even though Plaintiff was qualified to do so.

Besides the discrimination and retaliation claims outlined above, BOCES did not pay Plaintiff straight time and overtime for her working through her lunch period, and working beyond her normal hours for BOCES. Specifically, Plaintiff was not paid for approximately 272 hours of straight time for her work for BOCES during the period August 2012 through December 31, 2012; she was not paid for approximately 258 hour of straight time and 7 hours of overtime for her work for BOCES during the period January 1, 2013 through December 31, 2013; she was not paid for approximately 239 hour of straight time and 24 hours of overtime for her work for BOCES during the period January 1, 2014 through December 31, 2014; and she was not paid for approximately 128 hour of straight time and 17 hours of overtime for her work for BOCES during the period January 1, 2015 through December 31, 2015. In sum, the total unpaid straight time hours between August 2012 and December 31, 2015 is approximately 897 hours and the total unpaid overtime hours during this period is approximately 48 hours. As a result, Plaintiff is entitled to recover such unpaid straight time and overtime pay, along with liquidated damages and interest, pursuant to the FLSA and the New York Labor Law.

In addition to BOCES not paying for straight time and overtime during the period since August 21, 2012 as described in paragraph 16 of the Complaint, BOCES also failed to pay Plaintiff for a significant amount of her straight time and overtime time during the

three year period commencing August 21, 2009 thorough August 20, 2012, and Plaintiff
is entitled to recover such unpaid straight time and overtime, along with liquidated
damages, under the Federal and State Labor Laws.

During the three years ending August 20, 2015, Plaintiff's hourly rate of pay was
approximately $41.53, calculated as follows:  Plaintiff's annual salary during those years
was $78,083, multiplied by 47 weeks multiplied by 40 hours per week.

Plaintiff had complained to her supervisors at BOCES about not being paid the
wages due her, including complaining to Pam Rourke, Assistant Superintendent for
Human Resources (including a complaint to her on or about October 2, 2014), and to Mr.
Vyas on several occasions.  Not only did these supervisors not correct this situation and
have BOCES compensate Plaintiff for what was owed to her, but she was in fact
reprimanded for staying overtime on one occasion on April 22, 2015, and was otherwise
retaliated against as described above in the Complaint.

Although Plaintiff is aware that there is a formal procedure to request overtime
pay (which she used on a couple of occasions), she did not submit document seeking to
get paid for the times she worked during her lunch breaks on almost a daily basis.  It was
apparent to Plaintiff that, not only was this work time not going to be paid, but that such
request would result in her being disciplined for not completing her work load during her
scheduled working hours, even though it would have been impossible (and Mr. Vyas
knew it would be impossible) for her to complete her work load during the scheduled
work hours without her working through her lunch time.  (In fact, as described above, she
was disciplined for working "unauthorized" overtime.)

Other employees, such as Joseph Slomka, were also required to work through
their lunch breaks without being paid.  Mr. Slomka told Plaintiff that he was very

unhappy about the fact that he was not being paid for his working through his lunch periods. Attached as Plaintiff's Exhibit A is a copy of Mr. Slomka's time sheets, provided to her by Mr. Slomka. These time sheets indicate several occasions where he was required to work through his lunch time. Mr. Slomka advised Plaintiff that he was not paid for the time that he worked during his lunch time. In addition, Plaintiff knows that John Swendsen and William Wiand worked overtime and were not paid for such time worked.

After one such complaint by Plaintiff to Mr. Vyas on or about April 17, 2015, relating to Plaintiff working overtime for an event on April 16, 2015 for which she was not compensated, Mr. Vyas and Ms. Heppes had Plaintiff "counseled" by Union representative, Michael Wilson, about working "unauthorized" overtime. In fact, Mr. Vyas was specifically aware that Plaintiff could not have completed her work at the event on April 16 without working the overtime. Although Mr. Vyas had been aware on an ongoing basis that Plaintiff was working through her lunch period and was working overtime, Mr. Vyas was fully aware that the workload was such that it took working through lunch periods and beyond normal work hours to complete.

Approximately four weeks after Plaintiff's April 17 complaint to Mr. Vyas about not being paid for her overtime during the April 16 event, Plaintiff was demoted from being a full-time employee to a part-time employee. Upon information and belief, this demotion was in retaliation for her April 17 complaint to Mr. Vyas, and/or on account of Mr. Vyas' negative attitude towards her on the basis of her gender, age and national origin.

The discrimination and retaliation continued against Plaintiff by OUBOCES as of the date of this lawsuit commenced. Two examples:

A.  Over the past two years, three senior level (two SNS Title and one DCS Title), male technicians, have been contracted to the Special Education Division on OUBOCES' campus. One of these three technicians is Mr. Engineer.  Although compensated on the higher SNS level, Mr. Engineer and one of the two other senior level technicians, have been performing only CNS level work for these past two years.  Upon information and belief, the third technician has worked on only one short term project performing SNS level work, but otherwise had been performing only CNS level work.  This work performed by these three technicians could have been performed by Plaintiff at great savings to OUBOCES, if she had been returned to work as a full time employee (1.0 FTE), as Plaintiff was very experienced in this CNS level work and she had performed this CNS work for the Special Ed division for the past six years.  It is obvious that OUBOCES is doing everything to avoid reinstating Plaintiff to full-time (1.0 FTE) status for no good reason.  The only rationale reason for this treatment that OUBOCES is discriminating against her on the basis of her age, gender and/or national origin and/or retaliating against her for complaining about the reduction in her hours and/or demotion and/or the illegal nonpayment of wages.

B.  Since July 1, 2016, BOCES had been contracted to provide its services to three school districts to support School Dude IT Direct and Maintenance Direct Systems (which provides additional revenue to BOCES' Technical Services Division).  Although Plaintiff had been assigned to support these systems for the districts paying for these services, as well as supporting the same systems on BOCES' campus, Plaintiff was not returned to full-time status. It is apparent that BOCES is doing everything in its power to prevent Plaintiff from being returned to full-time status (1.0 FTE – 40 hours per week).

The Board of Directors of BOCES appointed Mr. Engineer to his SNS title on a permanent basis on June 24, 2014 before the SNS Civil Service Eligibility List was established. This SNS Civil Service Eligibility List was established on November 14, 2014. Under Civil Service Law, a candidate must be selected from a Civil Service Eligibility List before appointing such candidate as a permanent employee to classified service. As a consequence of the unlawful and improper placement of Mr. Engineer by BOCES in the SNS title ahead of Plaintiff, her standing on the CNS Civil Service Layoff roster was adversely affected, causing her demotion in standing on the CNS layoff roster and thus subjecting her to a reduction in her work hours.

## ARGUMENTS

### A.   <u>Standard to Defeat Motion for Summary Judgment under Rule 56</u>.

To support a motion for summary judgment, "the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

In the present case, Plaintiff, as well as other employees, have complained that Mr. Vyas and other supervisors at the Employer were aware that they worked through their lunch time.  While the Employer denies this claim, it is still a question of fact that needs to be determined at trial.

Furthermore, based on the short time between the date Plaintiff complained about her wages and/or her position and the date she was either demoted or had her hours cut, this can lead a jury to reasonably decide that such adverse action was taken by the Employer on account of her complaints regarding her overtime or position.  Furthermore, a jury has sufficient basis to conclude that as Mr. Vyas and Mr. Engineer were both of

Indian descent, he favored Mr. Engineer over Plaintiff by putting Mr. Engineer in a position to be promoted ahead of Plaintiff, even though Mr. Engineer was much junior to Plaintiff. In fact, Mr. Engineer did not even do the senior level SNS work after his promotion. The jury can reasonably conclude that Mr. Vyas to these favorable actions with respect to Engineer, to the detriment of Plaintiff, on account of his favoritism of a fellow Indian (or some other discriminatory reason) and to assure that Mr. Engineer would no longer be at the top of the layoff list. Now, after Mr. Engineers promotion to the SNS position, Plaintiff took over the top spot on the layoff list.

**B.    BOCES Must Pay for Overtime Even if Plaintiff did not Use BOCES Mechanism to Request Additional Straight Time and Overtime Pay**

Plaintiff claims in her Third Amended Complaint that she worked through her lunchtimes – and on page 111, lines 17 through 22 of her deposition (Plantiff Exhibit B) she testified that she worked through most of her lunch times throughout the years. Joe Slomka and other witnesses saw her working through her lunchtime (page 113, lines 12 of the Furk Depo, Plaintiff Exhibit B).

On page 133, lines 12 through 16, of the second part of the Furk deposition (Plaintiff Exhibit C) Plaintiff testified that she started complaining about not getting paid for working through her lunch time in 2012. Plaintiff claims in paragraphs 19 and 20 of her Third Amended Complaint (attached as Exhibit G to Defendant's motion papers) that Mr. Vyas was aware that she worked through her lunchtimes. Furthermore, Plaintiff claims in her complaint, and stated in her deposition, at page 80 lines 1-6 and on page 108 line 10 through page 110 line 21 (Plaintiff Exhibit B) that she had a meeting with Pam Rourke and Michael Wilson in October of 2014 to let them know that she had worked overtime throughout the years on some occasions and worked through many

9

lunch hours and was not paid. An example of an incident in which Mr. Vyas rejected Plaintiff's claim for pay for overtime because she did not have prior approval is set forth at page 106, line 15 through page 107, line 11 of the Furk deposition at Plaintiff Exhibit B.

BOCES argues at pages 7 through 11 of its memorandum of law that Plaintiff's overtime claims should be denied because BOCES provided plaintiff with a mechanism and procedure for obtaining payment of any additional straight time and overtime worked, the Plaintiff knew and availed herself of these procedures, the Plaintiff was paid for additional straight-time worked and overtime worked when she requested this, and her wage claim was for wages she never sought or asked for prior to the commencement of the lawsuit.

This argument by BOCES totally misses the mark. Under well-established case law, employers are required to pay employees for overtime of which the employer is aware even if the employee violated the employer's policy prohibiting working such overtime.

Thus, in <u>Chao v Gotham Registry, Inc.</u>, 514 F.3d 280, 2008 U.S. App. LEXIS 1327 (2d Cir. 2008), the Second Circuit ruled that the employer's policy which required advance notice and authorization for overtime (such as what is claimed by BOCES in this case) did not absolve the employer from paying time and a half wages for overtime hours worked by employees who did not follow such policy. Thus, the Second Circuit ruled, that the employer's policy of not paying time and a half for such unauthorized overtime was in violation of the Fair Labor Standards Act, 29 USCS section 201, et seq. in that the unauthorized overtime constituted work in that the employer permitted the employees to

perform the work and it had knowledge from their time sheets that the nurses regularly worked the overtime and failed to properly compensate them.

An employer who has knowledge that the employee is working, and who does not desire the work to be done, has a duty to make every effort to prevent its performance. Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F2d 413, 414 (9th Cir. 1991)(this case, cited by Defendant, in fact supports Plaintiff's claim that the employer must pay straight time and overtime pay if it is aware that the employee did the work and the employer who has such knowledge "cannot stand idly by and allow the employee to perform overtime work without proper compensation."); Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997)

"This duty arises even where the employer has not requested the overtime be performed or does not desire he employee to work, or where the employer fails to report his overtime hours." Chao, supra, at **17. See, also, Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 718 (2d Cir. 2001); Holzapfel v. Town of Newburgh, 145 F.3d 516,524, 1998 U.S. App. LEXIS 10477 (2d Cir. 1997); 29 CFR sections 785.11-.12.

Although Plaintiff is aware that there is a formal procedure to request overtime pay (which she used on a couple of occasions), she did not submit document seeking to get paid for the times she worked during her lunch breaks on almost a daily basis. It was apparent to Plaintiff that, not only was this work time not going to be paid, but that such request would result in her being disciplined for not completing her work load during her scheduled working hours, even though it would have been impossible (and Mr. Vyas knew it would be impossible) for her to complete her work load during the scheduled work hours without her working through her lunch time. (In fact, as described above,

Plaintiff was disciplined for working "unauthorized" overtime.)  See page 114, lines 4 through 17 of the Furk deposition, Plaintiff Exhibit B.)

Other employees, such as Joseph Slomka, were also required to work through their lunch breaks without being paid.  Mr. Slomka told Plaintiff that he was very unhappy about the fact that he was not being paid for his working through his lunch periods.  Attached as Plaintiff's Exhibit A is a copy of Mr. Slomka's time sheets, provided to Plaintiff by Mr. Slomka.  These time sheets indicate several occasions where Mr. Slomka was required to work through his lunch time.  Mr. Slomka advised Plaintiff that he was not paid for the time that he worked during his lunch time.

Joza v. WW JFK LLC, 2010 WL 3619551 (EDNY 2010) and Forrester, *supra*, , relied on heavily by BOCES at pages 8 through 11 of its memorandum of law to have the overtime and straight time causes of action dismissed on the basis that Plaintiff did not follow BOCES procedure to request overtime and additional straight time is inapplicable here, as those cases stand for the proposition that in a situation in which the employee failed to follow the employer's procedure to request overtime, and as a result the employer was unaware that the employee was working overtime, the employer would not be liable to pay for time worked of which it was unaware.

In our case, Plaintiff is claiming that Mr. Vyas was aware that she had been working through her lunchtime and discouraged her from seeking reimbursement for such work during her lunch time.   In fact, the Forrester opinion on which Defendant relies explains, at 414, that the knowledge by the employer that the employees is working through her lunchtime affords the employer to comply with the FLSA.

And, even Chao, *supra,* on which we are relying in support of the conclusion that the employer is liable to pay for hours worked of which it is aware, specifically states at

**15 that "It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."

Such legal conclusion as stated in <u>Joza</u> and <u>Forrester</u> are totally consistent with our conclusion that in a situation, such as ours, in which the employer is aware of the fact that the Plaintiff worked during her lunch time, the employer must pay for such time.

**C.      The Case Cannot be Dismissed as There is a Question of Fact as to Whether there Was Discrimination**

Based on the short interval between Plaintiff complaining about illegal activity against her with respect to her wages or position and her either being demoted or having her hours cut, this can lead a jury to reasonably decide that such adverse action was taken on account of her complaints regarding her overtime.  Furthermore, a jury has sufficient information regarding this case to have it decide that as Mr. Vyas and Mr. Engineer were both Indians and Mr. Vyas was able to put Mr. Engineer in a position to be promoted ahead of Plaintiff, even though he was much junior to Plaintiff, and Mr. Engineer did not even do the senior level work after his promotion, the reason for Mr. Vyas' actions with respect to Engineer was on account of his favoritism of a fellow Indian (or some other discriminatory reason).

**D.      Responses to Specific Arguments Relating to Discrimination Claims**

As discussed in the previous section, there is a question of fact to be determined by a jury as to whether Plaintiff was subjected to adverse treatment by the employer for discriminatory and/or retaliatory reasons or whether BOCES had a legitimate basis for its actions in cutting Plaintiff's hours and demoting her.

Set forth below are our responses to specific arguments made by Defendant regarding the discrimination issues set forth in Defendant's memorandum commencing at page 11.

At pages 11 and 12, Defendant states that claims under Title VII and the ADEA arising from acts that occurred more than 300 days prior to the Plaintiff's EEOC filing are time-barred.  Although this statement is correct, Plaintiff may still raise at trial claims preceding such 300 day period for two reasons.  First, claims under the New York State Human Rights Law has a three-year statute of limitations.  Furthermore, as stated in Chin v. Port Auth of N.Y & N.J., 685 F.3d 135, 150 (2d Cir. 2011), "so long as at least one alleged adverse employment action … occurred within the applicable filing period…evidence of an earlier alleged retaliatory act may constitute relevant background evidence in support of a timely claim."  Therefore, "Title VII's statute of limitations … did not prohibit admission of the plaintiffs' evidence of discrimination before [the statute of limitations liability cutoff period.]"

The past earlier discriminatory demotions and/or reduction in hours of Plaintiff by BOCES is admissible evidence that the adverse actions taken against Plaintiff's within the statute of limitations period were on account of discriminatory reasons.  This responds to Defendant's comment in the first paragraph of page 12 of its memorandum that the Plaintiff did not provide "a scintilla of evidence demonstrating that the reduction in hours occurred for discriminatory reasons," and of the continuing discussion of this issue by BOCES on page 13.

Besides the evidence of the timing of the discriminatory/retaliatory actions against her after she complained about her rights, in this case Plaintiff has made a showing that a similarly situated employee to her, Apurva Engineer, received a promotion that she

should have received instead based on her seniority.  A jury can reasonably conclude that Mr. Engineer, an Indian, received this favorable treatment by Plaintiff's supervisor, Bhargav Vyas, also an Indian on account of their common national origin, to the detriment of Plaintiff, a Caucasian.  This responds to Defendant's argument on pages 13 and 14 of its memorandum of law.  See page 32, lines 18 through 20 and lines 23 through 25 of the Furk deposition at Plaintiff Exhibit B.

In fact, in 2014 when Mr. Engineer was higher on the layoff roster than Plaintiff (meaning that in the event of a layoff, Mr. Engineer would have been laid off and had his hours reduced if necessary before Plaintiff), he was provisionally appointed to an SNS position at the behest of Vyas which effectively protected Mr. Engineer from a future layoff or reduction in hours.  See page 40 of the Furk deposition, line 14 through page 45 line 22 of the Furk deposition at Plaintiff Exhibit B.

Although Defendant claims that it reduced Plaintiff's hours for budgetary reasons, this claim is not necessarily true.  Plaintiff claims the reduction was based on discriminatory reasons.

In fact, Plaintiff claims that the reason she now ended up being the first on the CNS layoff list is on account of the manipulation by Defendant, and particularly Mr. Vyas, in causing Engineer to be promoted under unusual circumstances.   Had Mr. Engineer not received the promotion, Mr. Engineer would have been the first on the CNS layoff list.

Defendant also argues at page 14 that since Ms. Heppes who was responsible for the alleged adverse action was in the same class as Plaintiff, as Ms. Heppes is a female of non-Indian descent who is over 40, there is unlikely to be discrimination in this case.  The response to this argument is that Ms. Heppes' actions is based on the negative direction

and/or information about Plaintiff provided to her by Mr. Vyas, who was the discriminator against Plaintiff.

While, as Defendant argues at pages 15 and 16 of its memorandum that being given less desirable jobs does not necessarily establish an adverse action, nevertheless, it would seem to be relevant to show a discriminatory animus towards Plaintiff by Defendant, which animus would bolster her discrimination claim.

Similarly, the underutilization of Plaintiff's skills complained of by Plaintiff in the Complaint, while this in itself may not necessarily establish an adverse action standing alone (as Defendant argues at page 17 of its memorandum of law), nevertheless, it would seem to be relevant to show a discriminatory animus towards Plaintiff by Defendant, which animus would bolster her discrimination claim.

Defendant makes arguments at pages 16 through 20 of its memorandum of law that certain incidents mentioned in the complaint by Plaintiff may not be brought into the lawsuit because these incidents were not specifically raised in the EEOC charge filed by her. To this claim we have the following responses:

First, even if these incidents may not be raised for purposes of Title VII, they may be raised for purposes of the New York State Human Rights Law, which claims can be brought without filing an EEOC charge.

Furthermore, claims not expressly raised in an EEOC charge may be tried in court as long as those claims are reasonably related to the claims raised in the EEOC charge. Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397 (2d Cir. 1993).

Finally, the incidents discussed in these pages of the memorandum of law happened after the EEOC charge was filed in 2015, so these could not be included in the charge filed in 2015. It certainly is not contemplated that the complaints file EEOC

charges over and over again for discriminatory events occurring after the EEOC charge was filed. In any case, as stated earlier, a charge would not be needed to be filed for these newer incidents in light of <u>Butts</u>, as these incidents are reasonably related to the earlier acts of discrimination set forth in the EEOC charge.

Another point made by Defendant regarding the incidents set forth on these pages of the memorandum of law is that BOCES provided official reasons why they took the action they did with respect to the situations discussed in these pages of the memorandum of law. However, in light of the many negative actions taken against Plaintiff by BOCES against Plaintiff, as described in the Third Amended Complaint, which would support Plaintiffs' claim that she was being discriminated against or retaliated against (and these additional allegations should not be considered in a vacuum), there is no reason for the Court to blanketly accept BOCES' explanation for its decision as being the truth. Therefore, these claims are factual issues that must be determined by the trier of fact at trial

### E. The Retaliation Claims are Viable

Defendant argues at pages 20 through 21, that in order for the Plaintiff to establish a valid retaliation claim, it would have been necessary for Plaintiff to specifically state to the employer that it is violating the law and following such explicit statement the Plaintiff suffers an adverse action.

None of the cases cited by Defendant set forth such a requirement of needing to make an explicit statement to the employer. In fact, all that is required is that the employee asserts his legal rights under the FLSA or one of the discrimination laws, without specifying to the employer that such law is being implicated. Then, if the employer takes an adverse action in response to such complaint to the employer of being

treated wrong relating to this wage or discrimination claim, the employee will have made out a bona fide retaliation claim. (See the requirements to make out a valid retaliation claim set forth in the last full paragraph on page 17 of Defendant's memorandum of law.)

Therefore, in the present case, since Plaintiff complained about not being paid for all her hours of work (which was a formal complaint, as she formally approached her superiors to complain about this as set forth in her Affidavit, in the deposition transcript and in the complaint) and then her hours were cut shortly thereafter, she made out a valid FLSA retaliation claim even if she did specifically warn the employer that by not paying her for her work during her lunch time it was in violation of the FLSA.

Also, while Defendant argues at pages 21 and 22 of its memorandum of law that there was too long of a gap to have a viable retaliation claim, even if this argument is valid in most cases, since there were so many discriminatory acts against Plaintiff by Defendant, this particular incident should not be looked at in a vacuum and should be considered to be discriminatory and/or retaliatory as were the other incidents complained of by the Plaintiff.

And, in this case, as stated by Defendant on the last paragraph on page 22 of its memorandum of law, there was only a little more than a two month gap between Plaintiff's complaint about working overtime in April of 2015 and her reduction of hours in early July.

The responses to the other arguments made by Defendant set forth on pages 23 and 24 that Deborah Heppes made the decision regarding the reduction in hours and that BOCES had a legitimate reason to cut Plaintiff's hours, are the same as set forth above in this memorandum of law.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment should

be denied in its entirety.

Dated: Spring Valley, New York
September 4, 2018

Respectfully submitted,

s/ Bernard Weinreb

BERNARD WEINREB
2 Perlman Drive, Suite 301
Spring Valley, New York 10977
(845) 369-1019

To:     Adam Rodd, Esq.
        Drake Loeb, PLLC
        555 Hudson Valley Avenue – Suite100
        New Windsor, NY 12553

EXHIBIT "8"

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARRI FURK,

                                        Plaintiff,

        -against-

ORANGE-ULSTER BOCES,

                                        Defendant.

No. 15-cv-6594 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Marri Furk ("Plaintiff") brings this action against Defendant Orange-Ulster

BOCES ("BOCES" or "Defendant") asserting claims under the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 207, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*,

New York Labor Law ("NYLL"), and New York State Human Rights Law ("NYSHRL").[1] (Third

Am. Compl., ECF No. 39.)

        Presently before the Court is Defendant's Motion for Summary Judgment (the "Motion").

(ECF No. 65.) Upon the conclusions set forth below, the Motion is GRANTED in part and

DENIED in part.

## BACKGROUND

        The following facts are drawn from the parties' Rule 56.1 statements, declarations, and

affidavits, and are not in dispute unless otherwise noted.

        Plaintiff is a white female of non-Indian descent and is approximately 58 years old. (Def.'s

---

[1] Plaintiff's Amended Complaint asserted claims under Title VII, the ADEA, FLSA, and parallel state laws against
BOCES and a second defendant, the United Public Service Employees' Union ("UPSEU"). (ECF No. 16.) On
November 2, 2016, this Court granted BOCES' and UPSEU's motions to dismiss all Title VII and ADEA claims
preceding Plaintiff's August 20, 2015 EEOC filing by more than 300 days, as well as Plaintiff's Article 78 claims,
and dismissed all of Plaintiff's claims against UPSEU. (ECF No. 28.) Plaintiff subsequently filed a Second
Amended Complaint (ECF No. 39), and then a Third Amended Complaint (ECF No. 52), the latter of which
removed UPSEU as a defendant in this action.

56.1 Statement ¶ 1, ECF No. 75; Def.'s Ex. I at 9:22-23, ECF No. 73-9.) On April 2, 2001, Plaintiff

began working as a Computer Network Specialist ("CNS") at BOCES. (Def.'s 56.1 Statement ¶¶

3-4; Def.'s Ex. I at 13:8-13.) This CNS position is a civil service position in the competitive class

in accordance with the Orange County Civil Service Rules. (Def.'s Statement ¶ 26; Fisk Aff. ¶ 8.)

Layoff lists for civil service positions in Orange County are determined and promulgated by the

Orange County Department of Human Resources. (Def.'s Statement ¶ 25; Heppes Aff. ¶ 22; Vyas

Aff. ¶ 20.) Upon commencing her employment at BOCES, Plaintiff worked full-time; her regular

hours were from 8 a.m. to 4 p.m., including a one-hour lunch break that could be taken at any time.

(Def.'s 56.1 Statement ¶¶ 5-7; Def.'s Ex. I at 13:14-14:3; Heppes Aff. ¶ 13, ECF No. 68; Vyas

Aff. ¶ 11, ECF No. 72.) Plaintiff has consistently asserted that, at all times, her hourly wage was

approximately $41.52, which exceeds any applicable minimum wage requirements. (Def.'s

Statement ¶ 77; Def.'s Ex. G.)

Plaintiff's claims in this action arise from three categories of incidents: Defendant's failure

to promote Plaintiff on two occasions; Defendant's reduction of Plaintiff's hours; and Defendant's

failure to compensate Plaintiff for time she spent working during lunch or otherwise above her

regular hours. Each category is described in more detail below.

### 1. Failure to Compensate Plaintiff for Lunchtime or Overtime Work

On May 9, 2013, Plaintiff submitted a written request to be paid for straight hours worked

on April 17, 2013 beyond her scheduled hours. (Def.'s Statement ¶ 53; Def.'s Ex. I at 96:16-97:23;

Def.'s Ex. O, ECF No. 73-11 at 9-10; Vyas Aff. ¶ 7; Heppes Aff. ¶ 10.) Plaintiff was paid for this

extra straight-time as requested. (Def.'s Statement ¶ 54; Def.'s Ex. I at 98:4-8; Vyas Aff. ¶ 7;

Heppes Aff. ¶ 10.) Plaintiff did not submit any other requests for extra straight-time hours worked.[2]

---

[2] Plaintiff states that she lacks sufficient knowledge or information about this statement. (Pl.'s Resp. Def.'s
Statement ¶ 55.)

(Def.'s Statement ¶ 55; Heppes Aff. ¶ 10; Vyas Aff. ¶ 7.) According to Plaintiff, her supervisor, Burghav Vyas ("Vyas"), was aware that Plaintiff's workload was such that it required working through lunch periods and beyond normal work hours to complete, and was continuously aware that Plaintiff was working those additional hours. (Furk Aff. ¶ 7.)

On February 28, 2014, Plaintiff submitted a request to be paid for two hours of overtime work that she performed on January 31, 2014. (Def.'s Statement ¶ 46; Def.'s Ex. I at 83:8-84:8; Def.'s Ex. P, ECF No. 73-11 at 11-12.) Vyas approved this request and Plaintiff was paid accordingly. (Def.'s Statement ¶ 47; Def.'s Ex. I at 84:18-85:3; Def.'s Ex. P; Heppes Aff. ¶ 11; Vyas Aff. ¶ 8.) Plaintiff could not recall at her deposition whether she requested overtime pay on any other occasions. (Def.'s Statement ¶ 48; Def.'s Ex. I at 99:3-12.) According to Defendants, she did not. (Def.'s Statement ¶ 49; Vyas Aff. ¶ 8; Heppes Aff. ¶ 11.)

Plaintiff was aware that she was required to submit a written request for payment to BOCES whenever she worked beyond her regularly scheduled hours and/or overtime. (Def.'s Statement ¶¶ 50, 56; Def.'s Ex. I at 85:4-86:4; *id.* 98:9-13.) According to Defendant, Plaintiff did not submit any requests to BOCES seeking payment for extra hours worked other than the request relating to extra straight time hours worked on April 17, 2013 and the request relating to overtime hours worked on January 31, 2014. (Def.'s Statement ¶ 60; Def.'s Ex. J at 197:21-198:3.) Plaintiff denies this statement, noting that all she testified to at her deposition was that she did not have in her possession other time sheets or Federal activity logs that she submitted to BOCES. (Pl.'s Resp. Def.'s Statement ¶ 60.) Plaintiff testified that she could not recall whether she submitted any documentation to BOCES advising that she had worked during her lunch between 2009 and 2013 or that she was not paid for overtime hours worked between 2009 and 2014. (Def.'s Statement ¶ 67; Def.'s Ex. J at 138:10-20.) She also testified, however, that she had

3

conversations with people at BOCES on the topic and thus verbally informed them about nonpayment for overtime.[3] (Pl.'s Resp. Def.'s Statement ¶ 67; Def.'s Ex. J at 138:21-139:17.)

Plaintiff likewise asserts that she made a complaint to Vyas and Deborah Heppes, who oversees payroll matters at BOCES, on April 17, 2015 in connection with overtime work she had performed for an event on April 16, 2015. (Furk Aff. ¶ 7.) Plaintiff asserts that Vyas and Heppes subsequently had her "counseled" by a Union representative about working unauthorized overtime, notwithstanding the fact that Vyas knew that Plaintiff could not have completed her work at that event without working overtime. (*Id.*)

Plaintiff testified at her deposition that she knew of no other employees at BOCES who complained to the company about lack of payment for straight time or overtime hours. (Def.'s Statement ¶¶ 57-58; Def.'s Ex. J at 143:17-144:2.) In her Response to Defendant's 56.1 Statement, however, Plaintiff states that she has learned since her deposition that two employees complained about needing to work through lunchtime without compensation. (Pl.'s Resp. Def.'s 56.1 Statement ¶¶ 57-58; Furk Aff. ¶ 10; Pl.'s Ex. A.)

### 2. Failure to Promote

In March 2014 a position became available for a Senior Computer Network Specialist ("SNS") at BOCES. (Def.'s Statement ¶ 23.) Plaintiff was out on medical leave at the time and never informed anyone at BOCES that she did not have access to her e-mail during this period.[4] (Def.'s 56.1 Statement ¶ 20; Def.'s Ex. I at 51:6-9.) Plaintiff never applied for this position and it was eventually filled by Plaintiff's colleague, Apurva Engineer ("Engineer"). (Def.'s Statement ¶¶

---

[3] *Plaintiff never informed BOCES in writing that she had worked certain overtime hours without pay, nor did she ever file any grievance through her Union relating to nonpayment of overtime. (Def.'s Statement ¶¶ 51-52; Def.'s Ex. I at 86:18-19; id. 96:5-9.)*

[4] Plaintiff was out on medical leave from March 6, 2014 until approximately May 8 or May 10, 2014. (Def.'s 56.1 Statement ¶ 19; Def.'s Ex. I at 51:10-18.)

4

21-23; Def.'s Ex. I at 34:21-23; *id.* 47:22-24; *id.* 55:15-18; Heppes Aff. ¶ 18; Vyas Aff. ¶16.) According to Plaintiff, Engineer is a younger male of Indian descent who was less qualified than Plaintiff and two older CNS employees who interviewed for the position. (Affidavit of Marri Furk ("Furk Aff.") ¶ 15, ECF No. 79.) Plaintiff asserts that Vyas, who is also a male of Indian descent, promoted Engineer in order to remove him from the CNS position, where he would have remained the first employee to suffer a work hour reduction or layoff according to the civil layoff list. (*Id.* ¶ 17.) She further asserts that, even after Engineer was promoted to the SNS level, he continued to perform only CNS level work, which indicated that his promotion served no purpose for BOCES. (*Id.* ¶ 18.)

On August 4, 2015, while Plaintiff was working 16 hours per week, a co-worker named Steven Kox ("Kox"), who held a CNS position, passed away. (Def.'s Statement ¶ 73; Rossitto Aff. ¶ 2, ECF No. 70; Heppes Aff. ¶ 31; Vyas Aff. ¶ 28.) In the wake of this death, the school at which Kox was assigned to work informed BOCES that it did not wish to replace him with another BOCES employee and was instead planning to hire its own employee to perform those functions.[5] (Def.'s Statement ¶ 74; Rossitto Aff. ¶ 2; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.) As there was thus no need to replace Kox's hours, the CNS position previously held by him was not filled by any BOCES employee.[6] (Def.'s Statement ¶ 75; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.)

Plaintiff likewise raises an incident that occurred in 2016, after she commenced this action. Specifically, she asserts that, when SNS vacancies opened at various school districts in 2016, Engineer was not transferred to any of those positions and that had Engineer filled those vacancies for even three days per week, Plaintiff could have returned to full-time status by taking over the

---

[5] Plaintiff states that she lacks knowledge or information regarding this statement. (Pl.'s Resp. Def.'s Statement ¶ 74.)

[6] Plaintiff states that she lacks knowledge or information regarding this statement. (Pl.'s Resp. Def.'s Statement ¶ 75.)

CNS work that had been performed by Engineer until then. (Furk Aff. ¶ 20.)

Plaintiff has no documentation of any complaints she made to anyone at BOCES concerning the company's failure to interview her for the position or promoting Engineer. (Def.'s Statement ¶ 29; Def.'s Ex. J at 146:7-11.) During her deposition, Plaintiff did not recall complaining to anyone at BOCES that Engineer's promotion to the SNS position was due to discrimination based on Plaintiff's age, gender, or national origin. (Def.'s Statement ¶ 71; Def.'s Ex. J at 141:16-23.) Plaintiff likewise had no recollection of complaining to anyone from BOCES that her position or change in position on the civil service layoff roster was undertaken on account of her age, gender, or national origin. (Def.'s Statement ¶¶ 30, 71; 141:4-9; *id.* at 192:21-193:1; Def.'s Ex. FF.)

Vyas never made any derogatory comments about Plaintiff's age, and Plaintiff could not recall at her deposition whether she heard him make derogatory comments about her gender or national origin. (Def.'s Statement ¶¶ 63-64; Pl.'s Resp. Def.'s Statement ¶ 64; Def.'s Ex. J at 128:1-4; *id.* at 130:19-24.) Plaintiff similarly testified at her deposition that she could not recall whether Heppes or Pamela Rourke ("Rourke"), who worked in Human Resources, ever made any derogatory comments about her age, gender, or national origin. (Def.'s Statement ¶¶ 65-66; Def.'s Ex. J at 131:11-18.)

Plaintiff contends that BOCES failed to promote her on these occasions because of her age, gender, and national origin, and in retaliation for her complaints regarding the nonpayment of wages, as discussed *infra*.

### 3. Reduction of Plaintiff's Hours

On July 12, 2012, Plaintiff's hours were reduced from full-time (40 hours per week) to part-time (32 hours per week). (Def.'s 56.1 Statement ¶ 14; Def.'s Ex. J at 161:15-20.) Other

BOCES employees in the CNS position likewise had their hours reduced at this time.[7] (Def.'s 56.1 Statement ¶ 17; Vyas Aff. ¶ 22; Heppes Aff. ¶24.) Following the 2012 Reduction, BOCES received complaints from several employees.[8] (*Id.*) Based on these complaints, layoffs and reductions in hours were applied to the highest ranking member on the CNS layoff list, which was promulgated by Orange County Civil Service, in order to minimize the disruption of services to several of the users of the CNS position.[9] (Def.'s 56.1 Statement ¶ 18; Vyas Aff. ¶ 22; Heppes Aff. ¶ 24.)

From July 1, 2014 to September 1, 2014, Plaintiff's hours were again reduced from full-time to part-time status. (Def.'s Statement ¶ 31; Pl.'s Resp. Def.'s Statement ¶ 31.) According to Defendant, this reduction was implemented for budgetary reasons. (Def.'s 56.1 Statement ¶ 31; Def.'s Ex. I at 35:3-6; Fisk Aff. ¶ 10; Heppes Aff. ¶ 24; Vyas Aff. ¶ 22.) Plaintiff disputes this characterization, and asserts that her hours were in fact reduced during this period because she complained that she had not been given the opportunity to interview for the SNS position while on medical leave. (Pl.'s Resp. Def.'s Statement ¶ 31; Def.'s 56.1 Statement ¶ 32; Def.'s Ex. G ¶ 14.) On September 1, 2014, Plaintiff was restored to full-time status. (Def.'s Statement ¶ 37; Def.'s Ex. I at 37:9-11.)

On May 26, 2015, Plaintiff was advised that her hours were going to be reduced again, this time to 16 hours per week. (Def.'s Statement ¶ 40; Def.'s Ex. I at 67:24-68:2.) On May 28, 2015, Plaintiff e-mailed her Union representatives complaining about this reduction. (Def.'s Statement ¶ 43; Def.'s Ex. FF.) The e-mail stated Plaintiff's belief that she was not the lowest-ranking

---

[7] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 17, ECF No. 83.)
[8] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 17.)
[9] Plaintiff states that she lacks knowledge or information relating to this statement. (Pl.'s Resp. Def.'s 56.1 Statement ¶ 18.)

7

technician in her title, but e- made no reference to discrimination or retaliation. (Def.'s Statement ¶¶ 44-45; Def.'s Ex. FF.)

In May 2016, Plaintiff's hours were increased from 16 hours per week to 21 hours per week. (Def.'s Statement ¶ 61; Def.'s Ex. J at 125:20-126:10.) On July 1, 2017, Plaintiff's hours were increased to 40 hours per week (full time), but they were reduced to 21 hours again on September 1, 2017. (Def.'s Statement ¶ 62; Pl.'s Resp. Def.'s Statement ¶ 62; Def.'s Ex. J at 126:21-127:13.)

Plaintiff testified at her deposition that she did not recall submitting any complaints to BOCES suggesting that this temporary reduction in hours was based on discriminatory reasons or in retaliation for any complaints she made regarding non-payment of wages. (Def.'s 56.1 Statement ¶¶ 35-36; Pl.'s Resp. Def.'s 56.1 Statement ¶¶ 35-36; Def.'s Ex. J at 160:14-161:14.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment will not lie where there is a "dispute[] over facts that might affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter[.]'" *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Moreover, in deciding a motion

8

for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotation marks omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v*, 477 U.S. at 252.

## DISCUSSION

## I. Discrimination and Retaliation Claims

### a. Applicable Law

Plaintiff's Title VII, the ADEA, and NYSHRL discrimination claims are analyzed at the summary judgment stage according to the burden-shifting framework set forth in *McDonnell*

9

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 529 (S.D.N.Y. 2011) ("The framework for analyzing NYSHRL . . . discrimination claims is essentially the same as under Title VII and the ADEA.") Under this framework, Plaintiff "bears the initial burden of establishing a prima facie case of discrimination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). This requires Plaintiff to adduce sufficient evidence for a reasonable juror to conclude that (1) she is a member of a protected class; (2) she was qualified for the job at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (citation omitted).

Plaintiff's retaliation claims under FLSA, NYLL, and FMLA are analyzed according to the same burden-shifting framework as her discrimination claims. *See, e.g.*, *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013); *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010); *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). To make out a prima facie case of retaliation sufficient to withstand summary judgment, she must adduce evidence that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Summa v. Hofstra Univ.*, 708 F. 3d 115, 125 (2d Cir. 2013) (citation omitted).

If Plaintiff makes a prima facie showing of either discrimination or retaliation, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *See, e.g.*, *McDonnell*, 411 U.S. at 802; *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). If Defendant points to such a rationale, the burden returns to Plaintiff to show that the employer's proffered

reason was pretextual, *i.e.*, that discrimination was the real reason. *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

### b. Application

Plaintiff's discrimination and retaliation claims are premised upon: (i) BOCES' failure to promote her to the SNS position in 2014; (ii) BOCES' reduction of her hours in July 2014; (iii) BOCES' reduction of her hours in July 2015; and (iv) BOCES' failure to elevate her to a full-time position upon the death of Kox, another CNS, in August 2015.

As for BOCES' failure to promote Plaintiff in 2014,[10] Plaintiff has not proffered sufficient evidence to infer discriminatory intent. Plaintiff has conceded that Vyas never made any derogatory comments about Plaintiff's age, and Plaintiff could not recall at her deposition whether she heard him make derogatory comments about her gender or national origin. (Def.'s Statement ¶¶ 63-64; Pl.'s Resp. Def.'s Statement ¶ 64; Def.'s Ex. J at 128:1-4; *id.* at 130:19-24.) Plaintiff contends that a reasonable juror could nonetheless find that the discriminatory intent may be inferred by the fact that Vyas and Engineer were both Indian; Vyas was in a position to promote Engineer; Engineer was higher on the civil layoff roster than Plaintiff at the time that he was promoted, meaning that his promotion saved him from being fired; and Engineer was promoted, even though he was much more junior than Plaintiff. (Pl.'s Mem. Opp. at 15 (citing Pl.'s Ex. B at 32:18-25; 40:14-45:22.) However, Plaintiff has conceded that she was notified of the SNS vacancy

---

[10] As noted in this Court's prior Opinion, any of Plaintiff's federal discrimination claims arising from actions that occurred more than 300 days prior to her filing of the EEOC charge on August 20, 2015 are time-barred. (Op., Nov. 2, 2015, at 9, ECF No. 28.) Here, that necessarily includes BOCES' failure to promote Plaintiff to the SNS position in the spring of 2014 and its reduction of her hours in the summer of 2014. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996); *Brodsky v. City Univ. of N.Y.*, 56 F.3d 8, 9 (2d Cir. 1995). Accordingly, to the extent her Title VII or ADEA claims are based upon these events, those claims are dismissed. However, because the timeliness of claims under the NYSHRL is not determined by the date on which Plaintiff filed her EEOC charge, but rather by a three-year statute of limitations, the Court still discusses BOCES' failure to promote Plaintiff to the SNS position in 2014 and its reduction of her hours in 2014.

but never even applied for the position. (*See* Heppes Aff. ¶ 17; Vyas Aff. ¶ 15; Def.'s Ex. Z; Def.'s Ex. AA; Def.'s Ex. I at 34:21-23; *id.* 47:22-24; Def.'s 56.1 Statement ¶¶ 21-22.) As a result, her discrimination and/or retaliation claims based on BOCES' promotion of Engineer in 2014 fails. *See, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (noting that employee bringing failure-to-promote claim must allege that she applied for a specific position and was rejected therefrom) (citations omitted).

Similarly unsuccessful are Plaintiff's claims arising from BOCES' reduction of her hours and its failure to elevate her to full-time status in August 2015 after Kox's passing. According to Plaintiff, these actions were taken in retaliation for complaints she made about BOCES' failure to promote her to the SNS position in 2014 and various complaints she made regarding BOCES' nonpayment of wages. However, assuming *arguendo* that Plaintiff could establish a prima facie case of discrimination or retaliation in connection with these events, her claims fail because she has failed to adduce sufficient evidence to suggest that Defendant's actions were taken for unlawful reasons. Here, Defendant has proffered legitimate, non-discriminatory reasons for its actions. Specifically, Defendant has submitted evidence that (i) it reduced Plaintiff's hours in 2014 and 2015 because there was a decreased need for CNS services in the summer and Plaintiff was the highest-ranking CNS employee on the layoff list (Heppes Aff. ¶¶ 28-29; Vyas Aff. ¶¶ 26-27; Fisk Aff. ¶ 11; Def.'s Exs. BB, CC, X); and (ii) it did not elevate Plaintiff to full-time status in 2015 because the client for which Kox worked prior to his death decided to stop using BOCES' services at that time, meaning there was no need to fill Kox's position Def.'s Statement ¶ 75; Vyas Aff. ¶ 28; Heppes Aff. ¶ 31.) *Cf. Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) (accepting budgetary concerns as legitimate business reason for terminating employee).

Plaintiff has not cited specific facts that could raise a genuine dispute as to whether these reasons are pretextual. Instead, she merely asserts her belief that these actions were taken for discriminatory or retaliatory reasons (Furk Aff. ¶¶ 8, 12), and states that "in light of the many negative actions taken against Plaintiff by BOCES . . . there is no reason for the Court to . . . accept BOCES' explanation for its [actions] as being the truth." (Pl.'s Mem. Opp. at 17.) But Plaintiff's personal disagreements with Defendant's staffing decisions, or personal beliefs surrounding the motive, are insufficient to rebut Defendant's legitimate, non-discriminatory reasons for reducing Plaintiff's hours and maintaining her part-time status after Kox's death. *See, e.g.*, *Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("[A plaintiff's] feelings and perceptions of being discriminated against are not evidence of discrimination.") (internal quotation marks and citation omitted); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("[Courts] do not sit as a super-personnel department that reexamines an entities business decisions.") (citations omitted).

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiffs' discrimination and retaliation claims is granted.

## II.    Plaintiff's Claims for Unpaid Straight-Time Wages Under FLSA[11]

### a.    Applicable Law

"[T]he text of FLSA requires only payment of minimum wages and overtime wages."

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) (citing 29

U.S.C. §§ 201-19)). Accordingly, this Circuit has held that, "[s]o long as an employee is being

paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the

40-hour threshold, even if the employee also works overtime hours the same week." *Id.*

### b.    Application

Here, Plaintiff has conceded that her average hourly wage was greater than the federal

minimum wage. (Def.'s 56.1 ¶ 77.) Defendant is therefore entitled to summary judgment on

Plaintiff's FLSA claims for straight-time wages.

## III.    Plaintiff's Claims for Unpaid Overtime Wages Under FLSA and NYLL

FLSA and NYLL mandate that an employee must be compensated at a rate of no less than

one and one-half times the regular rate of pay for any hours worked in excess of forty per week.

*See* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2.

To establish liability under FLSA on a claim for unpaid overtime, a plaintiff "must prove that

he performed work for which he was not properly compensated, and that the employer had actual

or constructive knowledge of that work." *Kuebel v. Black & Decker*, 643 F.3d 352, 361 (2d Cir.

2011). Because FLSA requires employers to maintain records of their employees' wages and

---

[11] Defendant's papers address only the viability of Plaintiff's claim for straight-time wages under FLSA, without mention of Plaintiff's parallel claims under state law. (*See* Def.'s Mem. Supp. at 9 n.3 ("[T]o the extent that [Plaintiff] seeks to recover for unpaid 'straight-time' hours, this claim is barred *under the FLSA* since the plaintiff does not allege, and cannot prove, that her hourly wage was less than the minimum *federal* hourly wage.") (emphasis added); Def.'s Reply Mem. at 8 ("[T]o the extent that [Plaintiff] asserts that she was not paid for certain "straight time," as opposed to overtime hours, worked . . . any such claims are not viable *under the FLSA*.") (emphasis added).)  The Court therefore concludes that Defendant has not moved for summary judgment with respect to Plaintiff's straight-time claim under NYLL.

hours, *see* 29 U.S.C. § 211(c), the easiest way for an employee to satisfy this burden is to secure

the production of such records from the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 687 (1946). If, however, the employer's records are not accurate, an employee satisfies

her burden if she presents "sufficient evidence to show the amount and extent of that work as a

matter of just and reasonable inference." *Id.* "[A]n employee's burden in this regard is not high"

and a plaintiff may meet this burden "through estimates based on his own recollection." *Kuebel*,

643 F.3d at 362. "A similar standard to *Anderson* is applied in deciding overtime claims under

New York law." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380

(E.D.N.Y. 2012)

### a. Application

In *Keubel*, the Second Circuit held that the *Anderson* standard applied even where the

employee was responsible for the inaccuracy of his timesheets records because "the employee's

falsifications were carried out at the instruction of the employer or the employer's agents." 643

F.3d at 363. A comparable situation is presented here. Plaintiff has testified that she did not seek

pre-approval to work through lunch because she was told it would be denied (Def.'s Ex. I at

114:4-17), and that she did not follow the formal procedure for requesting overtime

compensation because it was apparent to her that any such request would be denied (Def.'s Ex. I

at 155:1-10). Plaintiff also testified that there were times when she verbally requested payment

for overtime for specified hours but those requests were denied. (Pl.'s Ex. B at 98:17-21; *id.* at

107:7-9.) This testimony is echoed in Plaintiff's affirmation, in which she notes an incident in

2015 when Vyas and Heppes called her into a meeting during which she was "counseled" by a

Union representative about working "unauthorized" overtime. (Furk Aff. ¶¶ 7, 9.) "While

ultimately a factfinder might or might not credit this testimony, that is a determination for trial,

not summary judgment." *Kuebel*, 643 F.3d at 363. Plaintiff is therefore entitled to the benefit of *Anderson*'s "just and reasonable inference" standard.

Plaintiff has demonstrated the amount of her uncompensated work as a matter of just and reasonable inference. Plaintiff testified that she worked through lunch most days over the years. (Pl.'s Ex. B at 111:17-22.) In her affidavit, she delineates the precise number of hours of straight time and overtime work she performed without compensation from August 2012-December 2015, with those estimates broken down by year. (Furk Aff. ¶ 4.) While Defendant may be correct that Plaintiff has failed to identify the specific days or weeks during which she worked more than forty hours, or the number of hours she worked during such weeks, the *Anderson* standard does not erect a high hurdle. *Kuebel*, 643 F.3d at 362 (noting that "the dispute as to the precise amount of [a plaintiff's] uncompensated work is one of fact for trial" and that "[t]he *Anderson* test simply addresses whether there is a reasonable basis for calculating damages"). Based on Plaintiff's evidence, a reasonable jury could conclude that Plaintiff has met her burden of proof under *Anderson*, thus shifting the burden to BOCES to present evidence that clarifies the precise amount of work she performed or refutes the reasonable inference created by Plaintiff's evidence.[12] *See, e.g.*, *Sherald v. Embrace Tech., Inc.*, No. 11 Civ. 939 (TPG), 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (plaintiff specified with reasonable particularly the amount of off-the-clock work he performed where he claimed that he was not paid for thirty minutes of pre-shift work on the majority of days he was employed; various lunchtime meetings that allegedly occurred about ten times per year; and interruptions in his lunch calls of variable duration);

---

[12] To the extent Defendant argues that the existence of its policies requiring formal requests for straight time/overtime compensation negates the inference that Plaintiff worked beyond her regularly scheduled hours, such evidence does not entitle Defendant to summary judgment. *See Kuebel*, 643 F.3d at 365 (holding that evidence of employer's policies requiring accurate timekeeping "raises factual and credibility questions for trial, but it does not afford a basis for summary judgment" in light of plaintiff's testimony that he was encouraged by his managers not to record all of his hours).

*Shang Shing Chang v. Wang*, No. 15 Civ. 4385 (FB), 2018 WL 1258801, at *2 (E.D.N.Y. Mar. 12, 2018) (plaintiffs' averments in depositions and declarations were "sufficient to both trigger and satisfy" *Anderson*'s standard where they asserted "that they worked somewhere between fifty and sixty hours per week, but received no overtime payments . . . [and] that they were required to record breaks . . . even if they worked during that time"); *Aponte v. Modern Furniture Mfg. Co., LLC*, No. 14 Civ. 4813 (ADS), 2016 WL 5372799, at *11 (E.D.N.Y. Sep. 26, 2016) (recognizing that "it is well settled that a general estimate based on an employee's recollection gives rise to a just and reasonable inference of uncompensated work" sufficient to satisfy plaintiff's burden under *Anderson*); *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 426-27 (E.D.N.Y. 2017) (denying motion for summary judgment even though plaintiff's allegations "lack[ed] specificity as to certain weeks during her employment when she did not work Saturdays, or certain weeks when she worked fewer than 57 hours").

 Second, Plaintiff has raised a genuine dispute of material fact as to whether BOCES had actual or constructive knowledge that she was working beyond her regularly scheduled hours. Defendant asserts that an employee such as Plaintiff "who wholly fails to abide by an employer's promulgated procedure for obtaining payment of overtime or extra hours worked, and who does not otherwise show that the employer was placed on notice of specific [uncompensated] hours worked" cannot establish a claim for unpaid wages. (Def.'s Mem. Supp. at 8-9.) This argument is unavailing, however.

For one, Plaintiff is not required at this stage to demonstrate that she placed Defendant on notice of specific hours worked. *See Kuebel*, 643 F.3d at 365 ("At summary judgment, [a plaintiff] need not demonstrate exactly how much off-the-clock work was performed with [the employer's] knowledge"). Plaintiff testified that she met with Rourke in October 2014 to inform

her that she had "worked overtime throughout the years on some occasions and that she had worked through many lunch hours and hadn't gotten paid[.]" (Pl.'s Ex. B at 80:2-6.) She likewise testified that the specific context of this meeting was to "notify them that [she] had been working through lunch hours and working passed her clock-out time." (Pl.'s Ex. B at 110:6-22.) In her affirmation, Plaintiff states that she complained to Vyas on "several occasions." (Furk Aff. ¶ 6.) This is enough to successfully oppose Defendant's Motion. *See, e.g.*, *Kuebel*, 643 F.3d at 365 (triable issue of fact as to whether employer knew plaintiff was working overtime existed where plaintiff testified that, on several occasions, he complained to his supervisor that he was working more than forty hours per week but recording only forty).

Moreover, the Second Circuit has stated that, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Id.* at 363. As just discussed, Plaintiff has proffered sufficient evidence to suggest that Defendant knew or should have known about her uncompensated work. Thus, her failure to utilize BOCES' established process for reporting and seeking compensation for overtime hours does not entitle Defendant to summary judgment on the unpaid wages claims.[13] *See, e.g.*, *Sherald,* 2013 WL 126355, at *6 (concluding that "the fact that plaintiff never sought compensation for the unpaid work is not dispositive" where defendants' actual or constructive knowledge that plaintiff was working overtime could be inferred in the circumstances); *Perry v. City of N.Y.*, No. 13 Civ. 1015 (VSB), 2018 WL 1474401 (S.D.N.Y. Mar. 26, 2018) (finding evidence that plaintiffs failed to report overtime pursuant to

---

[13] Defendant appears to rely on cases such as *Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y. Sep. 10, 2010), and *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), for the proposition that an employer is not liable for unpaid wages where a plaintiff declined to avail herself of the employer's established overtime reporting process—even if the employer learned about the uncompensated work through other means. (*See* Def.'s Mem. at 8-10.) That argument is, however, foreclosed by the binding Second Circuit case law discussed herein.

defendant's established policy insufficient to warrant summary judgment in light of evidence suggesting employer knew that plaintiffs were working overtime); *Seward v. Int'l Bus. Machines Corp.*, No. 08 Civ. 3976 (VSB), 2013 WL 142006, at *3 (S.D.N.Y. Jan. 2, 2013) (stating that the "key issue" in FLSA unpaid wages claim—"regardless of whether plaintiff followed [defendant's] policy about recording overtime"—was whether the evidence demonstrated defendant had actual or constructive knowledge that plaintiff engaged in uncompensated overtime work).

In sum, Plaintiff's has presented triable issues of fact with respect to her claim for overtime under FLSA and NYLL.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 65. The parties are directed to appear in court on October 17, 2019 at 11:30 a.m. for a pre-trial conference.

Dated:  September 27, 2019                              SO ORDERED:
             White Plains, New York

_____

                              NELSON S. ROMÁN

                              United States District Judge

19

EXHIBIT "9"

## RETAINER AGREEMENT

TO: MICHAEL D. DIEDERICH, JR., ESQ.

The undersigned, MARRI FURK ("Client"), residing at 1892 Route 211 East, Middletown, NY 10941, hereby retains you to prosecute, compromise or adjust all claims against ORANGE-ULSTER BOCES, and its officers, agents, directors and employees, and any other persons, arising from my dispute with my employer regarding my employment. The undersigned hereby gives you the exclusive right to take all legal steps to enforce my claims, including conducting negotiations on my behalf, and I hereby further agrees not to settle this matter in any manner without ~~your written consent.~~ /first discussing with you In consideration of the services rendered and to be rendered by you, the undersigned hereby agrees to pay you out of any moneys paid by reason of your making and/or pursuing a claim on my behalf, and you are hereby entitled and authorized to be paid out of proceeds, as follows: The greater of—

MD

    a.    Thirty three and one-third percent (33-1/3%) of any sums recovered, whether recovered by suit, settlement or otherwise; or

    b.    The attorney's actual accrued fees, which fee shall be based upon an hourly rate of $400.

Client also agrees to pay to the attorney $100 per hour toward attorney's accrued attorney's fee, payable when billed, which partial fee shall, when paid, be deemed a credit toward the attorney's fee referenced above. This is an obligation of the client regardless of whether or not there is a recovery.

The client understands and agrees that disbursements or estimated expenses for investigations, service of process, filing fees, depositions, computer searches including Lexis or Westlaw, charges for reports and transcripts, photocopying, faxing, telephone, travel, and other charges or expenses shall be prepaid by the client, and that toward these amount the client will forward an expenses retainer in an initial amount of $1,000, and such additional amounts as the attorney shall request for the reasonable prosecution of the matter. Client also agrees that all papers and work product generated are, and shall be deemed, the personal property of the attorney. Client may have the right to arbitration of a fee dispute under Part 137 of the Rules of the Chief Administrator of the NYS Courts. Client agrees to pay the reasonable costs of collection, including attorneys' fees, if Client breaches the fee obligations.

In the event the matter proceeds to litigation, the attorney reserves the right to seek a court award of attorney's fees to be paid directly to the attorney by the defendant(s) or its attorney, or to negotiate same directly with the defendant, and the client agrees that the client will not impair or waive the attorney's ability to request and recover a court award of attorney's fees.

Unless otherwise agreed in writing, the foregoing fee agreement does not require the attorney to undertake any court proceedings, trial, appeal, review proceeding, or retrial, though this may be agreed upon mutual consent. The undersigned agrees to all of the terms of this retainer agreement.

Dated: July 21, 2015

_____
MARRI FURK

# EXHIBIT "10"

**Mike Diederich, Esq.**

**From:**        marrif@frontiernet.net
**Sent:**        Monday, January 30, 2017 1:17 PM
**To:**          Mike Diederich
**Subject:**     Invoice

INVOICE

After reviewing your most recent invoice, I have found that a few payments have been excluded from the total payments received.

I am disputing these discrepancies, as I have copies of my bank statements reflecting the signed and cancelled checks by you.

I am hoping for this to be an amicable resolution.

Thank you.

EXHIBIT "11"

## Mike Diederich, Esq.

| | |
|---|---|
| **From:** | Mike Diederich <mike@diederichlaw.com> |
| **Sent:** | Wednesday, March 1, 2017 10:22 PM |
| **To:** | marrif@frontiernet.net |
| **Subject:** | Furk litigation-- Diederich services |
| **Attachments:** | Timeslips  --Furk--  1March 2017 w full hourly rate fee.pdf |

Marri,

   Attached is my itemization of time at my full hourly rate for my work to date in your lawsuit.  It totals $28,925.

   If you do not wish to proceed forward with your lawsuit (either with me or with some other attorney), then I would like to be paid for the value of my services to date.   I don't mind reducing the above total, but I do need to be paid some reasonable amount for my work.   If we cannot agree on an amount, we can arbitrate the amount, as that is your right.  If you do not wish to arbitrate, another option is for me to file an attorney's fees lawsuit against you.

   Let me know how you would like to proceed.   My preference is simply to get your cooperation, and get paid my partial fees until we can get a hopefully favorable resolution of your pending lawsuit.   I filed a Second Amended Complaint for you, as otherwise you were about to lose a potential claim.

   Let's discuss.

      Mike D


**Michael Diederich, Jr., Esq.**
**Diederich Law Office**
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795/0796(fax)**
**www.DiederichLaw.com**
**Practice concentrating in employment law and civil rights.**

---

  This email has been checked for viruses by Avast antivirus software.
www.avast.com

EXHIBIT "12"

UCS 137-1 (11/01)

## NOTICE OF CLIENT'S RIGHT TO ARBITRATE

## A DISPUTE OVER ATTORNEYS FEES

The amount of $ __$28,925__ is due and owing for the provision of legal services with respect to:

Legal representation by Michael Diederich, Jr., Esq., in connection with your employment at Orange-Ulster BOCES.

If you dispute that you owe this amount, you have the right to elect to resolve this dispute by arbitration under Part 137 of the Rules of the Chief Administrator of the Courts.  To do so, you must file the attached Request for Fee Arbitration within 30 days from the receipt of this Notice, as set forth in the attached instructions.      If you do not file a Request for Fee Arbitration within 30 days from the receipt of this Notice, you waive the right to resolve this dispute by arbitration under Part 137, and your attorney will be free to bring a lawsuit in court to seek payment of the fee.

Dated:___April 26, 2017___

_____/s/_____

_____

(Attorney's Signature)

[print Attorney's name, address and telephone number below]

MICHAEL D. DIEDERICH, JR.
Attorney at Law
361 Route 210
Stony Point, NY 10980
(845) 942-0795

**CERTIFIED MAIL**



MICHAEL D. DIEDERICH, JR.
Attorney at Law
361 Route 210
Stony Point, NY 10980

7016 2710 0000 9372 3927



U.S. POSTAGE
PAID
STONY POINT, NY
10980
APR 26, 17
AMOUNT
**$7.22**
R2305K134731-01

1000        10941

RETURN RECEIPT REQUESTED

**Ms. Marri Furk**
**1892 Route 211 East**

UNCLAIMED 

EXHIBIT "13"

**Mike Diederich, Esq.**

| | |
|---|---|
| **From:** | Mike Diederich <mike@diederichlaw.com> |
| **Sent:** | Friday, May 19, 2017 12:47 PM |
| **To:** | 'Bernard Weinreb, Attorney at Law' |
| **Cc:** | marrif@frontiernet.net |
| **Subject:** | Diederich-Furk correspondence |
| **Attachments:** | Furk--unclaimed Diederich certif mail.pdf |

Mr. Weinreb:

  This confirms our telephone conversation of today, wherein you agreed you would discuss with Ms. Furk whether she will authorize you to accept service of the certified mail that I sent to her.  If easier for her and you, I am also willing via email as PDFs the contents of the envelope to you (of Ms. Furk authorizes that) or directly to Ms. Furk, or both.

  The matter concerns my itemization of attorney time, expenses and payments (matter than I hope I can reach agreement with Ms. Furk).

  Thank you.

    Mike D

PRIOR EMAIL:

Mr. Weinreb,

  My certified mail to Ms. Furk was returned "unclaimed" by Ms. Furk.  I request that you be authorized to accept this correspondence on behalf of Ms. Furk.  Otherwise, I believe that the court rules require that I hire a process server to personally serve her.  I will do this if necessary.

  Please advise.

  Thank you.

    Mike D

**Michael Diederich, Jr., Esq.**
**Diederich Law Office**
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795/0796(fax)**
**www.DiederichLaw.com**

 Virus-free. www.avast.com