UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   5/22/2023
```

---

MARRI FURK,

                    Plaintiff,

    -against-

ORANGE-ULSTER BOCES,

                    Defendant.

---

No. 15-cv-6594 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Marri Furk ("Plaintiff") brought this action against Defendant Orange-Ulster BOCES ("BOCES" or "Defendant") asserting claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., New York Labor Law ("NYLL"), and New York State Human Rights Law ("NYSHRL"). (Third Am. Compl., ECF No. 39.) On September 27, 2019, the Court granted Defendant's motion for summary judgment in part, dismissing Plaintiff's Title VII, ADEA, and NYSHRL claim, but denied dismissal as to Plaintiff's FLSA and NYLL claims. (ECF No. 19.) The parties thereafter entered into mediation, and around June 2021, the parties reached a settlement.

Plaintiff's former counsel, Mr. Michael Deiderich ("Mr. Deiderich") has now filed a motion to enforce his charging lien pursuant to N.Y. Judiciary Law § 475 in order to receive attorneys' fees from the settlement proceeds, which will compensate him for his work representing Plaintiff from the outset of the lawsuit until he was discharged in or around May 2017. (ECF No. 96.) Plaintiff, through her current counsel, Bernard Weinreb ("Mr. Weinreb") opposes Mr. Deiderich's motion for attorneys' fees and filed a counter-motion to disgorge Mr. Deiderich of the

1

f$5,600 in attorneys' fees which he had already received from Plaintiff during the course of his representation on the case.  (ECF No. 109.)

For the reasons discussed below, the Court DENIES Plaintiff's request to disgorge Mr. Deiderich of the $5,600 attorneys' fees he received from Plaintiff.  In addition, the Court finds that Mr. Diederich has already been adequately compensated in the amount of $5,600, and therefore DENIES his request to seek additional fees through a charging lien.

## BACKGROUND

The Court assumes familiarity with the factual background of this case as described in the Court's summary judgment opinion, issued on September 27, 2019.  *See Furk v. Orange-Ulster BOCES*, No. 15-CV-6594 (NSR), 2019 WL 4739140, at **1–4 (S.D.N.Y. Sept. 27, 2019). Procedural facts are provided to the extent they are relevant to the instant motions.

Plaintiff, through her then-counsel Mr. Diederich, filed a complaint on August 20, 2015. (ECF No. 1.)  An amended complaint was filed on December 5, 2015 (ECF No. 16) and Defendant filed a motion to dismiss on March 2, 2016.  (ECF No. 18.).  Plaintiff, through Mr. Diederich, opposed the motion to dismiss, which was granted in part and denied in part by the Court's Order and Opinion, dated November 2, 2016.  Defendant filed an answer to the amended complaint on December 2, 2016, and the parties proceeded to discovery.  Plaintiff, through Mr. Diederich, filed a second amended complaint on March 1, 2017.

On March 2, 2017, Mr. Diederich wrote a letter to the Court seeking relief to withdraw as counsel.  (ECF No. 41.)  In the letter, Mr. Diederich stated that "[m]y client and I have previously discussed her locating an attorney closer to her residence," and that Mr. Diederich would assist Plaintiff's new attorney to accomplish a smooth transition.  (*Id.*)  Mr. Diederich also gave notice of his charging lien in the action.  On March 6, 2016, the Court stayed the proceeding until April 3, 2017 to allow Plaintiff to obtain new counsel.  (ECF No. 44.)  On May 10, 2017, Magistrate

Judge Paul E. Davison granted Plaintiff's letter to substitute Mr. Diederich with her new counsel, Mr. Weinreb.  (ECF No. 48.)

Plaintiff, through Mr. Weinreb, filed a third amended complaint on July 19, 2017 (ECF No. 52.). The parties thereafter filed an amended civil discovery plan and scheduling order (ECF No. 53) and proceeded to discovery.  The parties engaged in motion practice on Defendant's motion for summary judgment, which was denied in part and granted in part in the Court's Order and Opinion, dated September 27, 2019.  The parties then engaged in mediation.

Though not reflected on the docket (as the parties failed to inform the Court), the parties' papers in the instant motions indicate that they reached a settlement agreement on or about June 30, 2021.  (ECF No. 100, Weinreb Decl., Exh. B.)  Under the settlement agreement, Plaintiff is entitled to receive $20,000 in retirement incentive pay.  (Weinreb Decl., ¶ 9 & Exh. B.) She will also receive medical insurance through her employer from June 30, 2021 through February 25, 2025 (which Mr. Weinreb represents is worth between $40,000 and $50,000).  (Weinreb Decl., ¶ 9 & Exh. B.)  In addition, Plaintiff is being paid her accrued sick time in the amount of $7,350, vacation pay in the amount of $9,141, vacation excess days in the amount of $540, and longevity pay in the amount if $262. (Weinreb Decl., ¶ 9 & Exh. B.)  Mr. Weinreb declares that he kept track of his time from April 2017 to February 10, 2020, where he logged 165 hours of time.  (Weinreb Decl., ¶ 17 & Exh. F.)  Though Mr. Weinreb's retainer agreement required a 40% contingency fee in the event of a favorable resolution, Mr. Weinreb only charged Plaintiff $10,000 from the settlement proceeds in light of the modest settlement proceeds.  (Weinreb Decl., Exhs. E & F.)

On July 1, 2021, Mr. Diederich filed a letter stating that he attempted to amicably resolve his charging lien with Mr. Weinreb and opposing counsel, but that both were unwilling to inform him of Plaintiff's amount in recovery.  (ECF No. 90).  On July 13, 2021, Mr. Diederich requested

permission to file an application to enforce his charging lien, following unsuccessful attempts to negotiate with the parties.  (ECF No. 91.)

On July 20, 2021, the Court granted Mr. Diederich leave to file an application to enforce his charging lien. (ECF No. 94.)  On September 17, 2021, the Court granted Plaintiff leave to file a cross-motion. (ECF No. 107.)  Both motions were fully briefed on January 12, 2022.

## DISCUSSION

Mr. Diederich asserts a charging lien under N.Y. Judiciary Law § 475 in order to receive unpaid attorney's fees for his work representing Plaintiff in this instant action before he was discharged and replaced by her present attorney, Bernard Weinreb, Esq.  Mr. Diederich specifically seeks $28,925.00, which purportedly reflects his 80 hours of work at a rate of $400 per hour, minus payment that he acknowledges that he already received from Plaintiff.  (*See* ECF Nos. 96 and 96-1 (Diederich Decl.), Exh 4.)  Plaintiff opposes Mr. Diederich's motion and filed a counter-motion to disgorge Mr. Diederich from the $5,600 in attorneys' fees which he has already been paid while representing Plaintiff in this instant action.  The Court will examine the two motions in turn.

### I.    Whether the Court should grant Mr. Diederich's attorney's fees through a charging lien

Mr. Diederich asserts a charging lien under N.Y. Judiciary Law § 475 in order to receive attorneys' fees for his work representing Plaintiff in this instant action before he was discharged and replaced by her present attorney, Bernard Weinreb, Esq.  Mr. Diederich claims a charging lien in the amount of $28, 925 (ECF No. 96-1, Diederich Decl., ¶ 23). This amount is purportedly based on the 79.99 hours worked by Mr. Diederich, multiplied by a $400 fee per hour, minus payment already provided to Mr. Diederich by the Plaintiff.  (*See* ECF No. 96-2, Exh. 4, Time Sheet).

"[T]he lien created by [N.Y. Judiciary Law § ] 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir.1991).

N.Y. Judiciary Law § 475 provides, in pertinent part:

> From the commencement of an action ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor.... The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475.

"A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action . . . ." C*hadbourne & Parke, LLP v. AB Recur Finans*, 18 A.D.3d 222, 223, 794 N.Y.S.2d 349, 350 (1st Dep't. 2005) (internal citation omitted). "[A]n attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); *see Itar–Tass*, 140 F.3d at 451. However, "[i]t is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." *Petition*, 957 F. Supp. at 48; see Marrero, 575 F. Supp. at 840 (denying motion to fix a lien where law firm withdrew "without adequate justification").

First, the parties dispute whether Mr. Diederich was dismissed as counsel for good cause. Under N.Y. Judiciary Law § 475, "an attorney dismissed without cause is entitled to liens in his favor to secure payment of reasonable fees and costs incurred prior to the date of substitution of counsel." *Sequa Corp. v GBJ Corp.*, 156 F.3d 136, 147 (2d Cir. 1998).   While an attorney discharged "for cause" — occasioned by "a significant breach of legal duty" or the like — is not

entitled to a charging lien, "[d]ischarge on account of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by . . . the lawyer, does not amount to discharge 'for cause.'" *Ruiz v. Keratin Bar Inc.*, No. 17-CV-2216 (VEC), 2020 WL 7079904, at *4 (S.D.N.Y. Dec. 3, 2020) (citing *Kovach v. City Univ. of N.Y.*, No. 13-CV-7198, 2015 WL 3540798, at *6 (S.D.N.Y. June 4, 2015). In addition, while New York law does not explicitly define "cause," there are several factors courts may consider in making this determination:

> "[T]he courts have been fairly consistent in finding just cause to exist where one or more of the following elements is present in the factual picture: (1) the attorney's failure to perform under the employment contract; (2) his lack of diligence in so performing; (3) his lack of ordinary skill or care in so performing; (4) his making of demands on the client which violate the terms or exceed the scope of the contract; (5) his taking of actions contrary to the client's interests or objectives; (6) his indulging in some sort of unprofessional conduct while handling the client's affairs; (7) his venting of personal or economic hostility toward the client; and (8) his loss of the client's trust and confidence."

*Chen v. LJC Trading N.Y.*, Inc., No. 19 Civ. 3276 (SJF) (AKT), 2020 WL 10574176, at *5–6 (E.D.N.Y. Nov. 20, 2020) (quoting *Holcombe v. US Airways Grp., Inc.*, No. 08-CV-1593 (SLT) (JO), 2017 WL 10084142, at *10–11 (E.D.N.Y. Aug. 4, 2017)).

Here, the record is unclear regarding whether Plaintiff fired Mr. Diederich for cause. In her papers, Plaintiff argues that Mr. Diederich was indeed fired for cause, pointing to the fact that Plaintiff had filed N.Y.S. Appellate Division grievances against Mr. Diederich to complaint about his representation. (ECF No. 101 at 16.) Though Plaintiff admits that no violations were found with respect to the grievances filed, she argues that the fact that she had to file a grievance indicates that she terminated the attorney-client relationship for cause. (*Id*. at 9.) Plaintiff also states in her affidavit that she fired Mr. Diederich because he was "abusive towards her." (ECF No. 100-3; Furk Decl., ¶ 3; *see also* ECF No. 100-2 (Weinreb Decl.), Exh. K (Plaintiff's emails to attorneys

stating "Diederich has been very abusive with me while he was my attorney"). Moreover, a review of the emails provided as exhibits show a hostile relationship between Mr. Diederich and Plaintiff. (*See* ECF No. 115-1 (Diederich Cross-Motion Decl.), Exh. 1.)  In addition, Plaintiff states in her affidavit that Mr. Diederich had asked Plaintiff to draft some of her own documents, with Mr. Diederich providing revisions and feedback.  (Furk Decl., ¶ 3; *see also* Weinreb Decl., Exh. L (showing Plaintiff providing draft EEOC charge to Mr. Diederich and receiving feedback from him.).

On the other hand, certain email exhibits show that Mr. Diederich himself had recommended that Plaintiff seek new counsel when they disagreed on case strategy.  (*See* ECF No. 100-2, Weinreb Decl., Exh. G. (Mr. Diederich emailing Plaintiff on February 3, 2016 to state "I think it is perhaps time for you to start looking for a new lawyer, since 1) you cannot pay me as agreed and 2) you don't seem to like my legal advice or opinions as to the strengths and weaknesses of your case.").

It is Plaintiff's burden to show that she discharged Mr. Diederich for cause.  *See Love & Madness, Inc. v. Claire's Holdings, LLC*, No. 21CIV1913ATSLC, 2021 WL 4554058, at *4 (S.D.N.Y. Oct. 4, 2021); *see also Farb v. Baldwin Union Free Sch. Dist.*, No. CV 05-0596 JS ETB, 2011 WL 4465051, at *9 (E.D.N.Y. Sept. 26, 2011) ("It is the client's burden to establish that the attorney was discharged for valid cause.").  While the exhibits do suggest that Mr. Diederich was fired for cause in light of his hostile treatment of Plaintiff, the Court is unwilling to say so definitively as there are no exhibits clearly indicating why Plaintiff fired Mr. Diederich. Moreover, a hearing is generally required in instances where there are factual disputes regarding whether an attorney was fired for cause.  *See Mason v. City of New York*, 67 A.D.3d 475, 889

N.Y.S.2d 24, 25 (App. Div. 1st Dep't 2009); *Doviak v. Finkelstein & Partners*, LLP, 90 A.D.3d 696, 699, 934 N.Y.S.2d 467, 471 (2011).

The Court need not hold a hearing in this instance.  For the reasons discussed below, the Court finds that the $5,600 already paid to Mr. Diederich should sufficiently satisfy payment for his legal services, and the $28,925 that Mr. Diederich requests through a charging lien is unreasonable.

Even if there is a valid charging lien, the Court must still assess the value of the charging lien.  The charging lien should be fixed at "the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*." *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 CIV 2042 (NSR), 2021 WL 5180832, at *7 (S.D.N.Y. Nov. 8, 2021) (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010). "[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court," *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149 (2d Cir. 1998) (citation omitted), and the Court of Appeals has instructed that "[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted).  Moreover, in assessing the amount of a charging lien on a quantum meruit basis, a court should consider: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained (to the extent known)." *Sequa*, 156 F.3d at 148; *see also Antonmarchi v. Consol. Edison Co.*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010).  "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may

decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497(RJS) (HBP), 2008 WL 4525372, at *6 (S.D.N.Y. Oct. 2, 2008) (quoting *Santa Fe Natural Tobacco Co. v. Spitzer*, Nos. 00 Civ. 7274(LAP), 00 Civ. 7750(LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998) ("If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" (internal quotation marks and citation omitted)).

The Court has reviewed Mr. Diederich's time sheet and considered the relevant factors in assessing the amount of lien to enforce on a *quantum meruit* basis.  The Court agrees with Plaintiff that Mr. Deiderich's attempt to collect $28, 925.00, is unreasonable.  "Ultimately, because a charging lien is equitable nature, 'the overriding criterion for determining the amount of a charging lien is that it is fair.'" *Margolies v. Cty. Of Putnam N.Y.*, No. 09 CIV. 2061 RKE GAY, 2011 WL 721698, at *1 (S.D.N.Y. Feb. 23, 2011) (quoting *Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006)).  Here, Plaintiff recovered a modest amount from the settlement: $20,000 in retirement incentive pay; $7,350 in accrued sick time; $9,141 for vacation days; $540 for vacation excess days; longevity pay in the amount if $262 for longevity pay; and health care from June 30, 2021 to February 25, 2023. (Weinreb Decl., ¶ 9 & Exh. B.)   The amount that Mr. Deiderich seeks would wipe away most of the cash proceeds that Plaintiff is supposed to receive under the settlement agreement.

 Plaintiff's current counsel received $10,000 for his approximately 165 hours of work – an amount that is much lower than what could have been due under Plaintiff's retainer agreement with her current counsel. (*See* Weinreb Decl., ¶ 17 & Exhs. E & F.)  Mr. Diederich worked a little

less than half as many hours as Plaintiff's current counsel.  (*See* Diederich Decl., Exh 4.)  The Court therefore finds that the $5,600 already provided to Plaintiff is proportional and fair in light of the amount recovered by Plaintiff in the settlement and the amount provided to her current counsel.  Mr. Diederich should not expect to recover any more through a charging lien.

### II.    Plaintiff's counter-motion – whether the Court should disgorge Mr. Diederich from his fees paid to-date.

In her counter-motion, Plaintiff seeks reimbursement of the $5,600 she paid to Mr. Diederich throughout his representation on the case, arguing that (i) Mr. Diederich was abusive towards Plaintiff throughout his representation; (ii) Mr. Diederich performed poorly on her behalf; and (iii) Mr. Diederich's retainer agreement is "unenforceable, unconscionable, and unethical." (*See* ECF No. 101 at 1.)

First, the Court deems Plaintiff's request to disgorge Mr. Diederich of his fees paid to-date because he was "abusive" as essentially a request to impose sanctions.  Plaintiff has not properly moved for sanctions against Mr. Diederich.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd*., 682 F.3d 170, 175 (2d Cir. 2012) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").  In addition, though the papers demonstrate a hostile relationship between Mr. Diederich and Plaintiff, with signs of unprofessionalism by Mr. Diederich, the Court is not prepared to make a finding that Mr. Diederich was "abusive" towards Plaintiff based on the papers submitted.

Second, Plaintiff complains that Mr. Diederich performed poorly on her behalf.  Her allegation is belied by the fact that Mr. Diederich adequately defended Plaintiff on the motion to dismiss, which was denied in part on November 2, 2016.  The exhibits also show that Mr.

Diederich properly recommended that Plaintiff consider hiring another attorney once they reached an impasse as to case strategy. (*See* Weinreb Decl., Exh. G.)

Finally, Plaintiff's argument that Mr. Diederich should receive no compensation for his work because his retainer agreement was "unenforceable" is too overreaching.  "Under New York law, a private retainer agreement is viewed as presumptively fair 'in the absence of fraud, deceit, overreaching, or undue influence.'" *Uy v. Bronx Municipal Hosp. Ctr.*, 182 F.3d 152, (2d Cir.1999) (citation omitted).  Plaintiff argues that Mr. Diederich's retainer agreement is "unenforceable, unconscionable, and unethical" because it seeks to recover the greater of 1/3 of the recovery of $400 per hour of work, which is purportedly not standard practice.  In other words, Plaintiff avers that a hybrid fee structure like the one in Mr. Diederich's retainer agreement is invalid, and that therefore, Plaintiff owes no fees to Mr. Diederich.  (*See* ECF No. 8.)  As Mr. Diederich correctly points out, Plaintiff fails to point to any clear legal authority to support this point.  (*See* ECF No. 103 at 5.)

In any event, as indicated above, the Court will not award Mr. Diederich the fees he seeks under his retainer agreement, as doing so would lead to an unreasonable fee award in light of the modest settlement proceeds.  But the Court will also not disgorge Mr. Diederich for the work he provided throughout his representation.  The Court finds that the $5,600 that was already paid to him is sufficient and fair.[1]

---

[1]    Mr. Diederich argues in his opposition to Plaintiff's cross-motion that the Court should consider imposing Rule 11 sanctions against Plaintiff's current counsel for "bad faith" arguments made in the motion papers as well as comments regarding Mr. Diederich's reputation, character, and integrity.  (*See* ECF No. 116 at 17–18.)  "A pleading, motion or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith."   *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 411 (S.D.N.Y. 2003).  Moreover, "the decision as to whether to award sanctions pursuant to Rule 11 is subject to the Court's discretion." *Id.* (citing *Ulla–Maija, Inc. v. Kivimaki*, No. 02 Civ. 3640(AGS), 2003 WL 169777, at *8 (S.D.N.Y. Jan. 23, 2003)).  Mr. Diederich has not properly filed for sanctions under Rule 11.  *See Lorber v. Winston*, 993 F. Supp. 2d 250, 252 (E.D.N.Y. 2014) ("Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'") (citing *Star*

**CONCLUSION**

For the reasons discussed, the Court finds that Mr. Diederich has already been adequately compensated in the amount of $5,600, and therefore DENIES his request to seek additional fees through a charging lien.  The Court DENIES Plaintiff's motion to disgorge Mr. Diederich of the $5,600 in fees she paid him throughout the course of his representation.

As there are no other open issues in this matter, the Clerk of the Court is directed to lift the stay on the action, terminate the motion at ECF No. 96, and also terminate the action.

Dated:   May 22, 2023                                      SO ORDERED:
         White Plains, New York

                                                _____
                                                      NELSON S. ROMÁN
                                                United States District Judge

---

*Mark Mgmt., Inc.*, 682 F.3d at 175.  Court therefore exercises its discretion to decline considering Mr. Diederich's request for Rule 11 sanctions against Plaintiff and her counsel.